# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF TEXAS
(Sherman Division)

| | |
|---|---|
| Vicki Baker,<br><br>         *Plaintiff*,<br><br>     *v.*<br><br>City of McKinney, Texas<br><br>        *Defendant*. | Case No.: _____ |

## COMPLAINT FOR COMPENSATORY DAMAGES

**INSTITUTE FOR JUSTICE**

Jeffrey Redfern (D.C. Bar No. 1018046)
  *Lead Attorney*
Suranjan Sen (Tenn. Bar No. 038830)
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
Email: jredfern@ij.org; ssen@ij.org

*Attorneys for Plaintiff*

**INTRODUCTION**

1.      This lawsuit seeks compensation, under the United States and Texas Constitutions, for the intentional destruction of private property for public use by the City of McKinney.

2.      Plaintiff Vicki Baker owned a house at 3600 Vista Verde Trail, in McKinney, Collin Country, Texas. She was in the process of selling that house to finance her retirement when, on July 25, 2020, an armed fugitive showed up at her door, accompanied by a teenage girl, seeking a place to hide. Baker's adult daughter Deanna Cook was the only person at the house when the fugitive arrived. She answered the door and recognized him as a handyman who had done work at the house in the past, though she had not seen him in over a year. Deanna knew that he was on the run because she had read about it earlier in the day. Frightened that he might be armed, she allowed him and the teenage girl into the house. She then left the house and called the police.

3.      The McKinney police arrived at the house and surrounded it, attempting to negotiate with the fugitive. The teenage girl eventually left the house unharmed, but the fugitive wouldn't come out. Eventually, the police stormed the house, causing massive damage. They broke windows, knocked down the garage door and the backyard fence, and fired dozens of explosive tear gas cannisters. By the time they entered the house, the fugitive had committed suicide. The damage cost over $50,000, which was excluded from insurance coverage because it was caused by the government.

4.      Defendant City of McKinney also refused to compensate Ms. Baker. But when the government intentionally destroys an innocent person's private property in order to accomplish a public good, like apprehending a dangerous fugitive, both the United States and Texas Constitutions require the government to compensate the property owner for that damage.

## JURISDICTION AND VENUE

5.      Plaintiff brings this civil-rights lawsuit pursuant to the Fifth and Fourteenth Amendments to the United States Constitution; Article I, Section 17 of the Texas Constitution, and 28 U.S.C. § 1983.

6.      Under *Knick v. Township of Scott*, 139 S. Ct. 2162, 2179 (2019), this claim is ripe, and Plaintiff is not required to exhaust state remedies prior to filing this action.

7.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

8.      Venue lies in this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

9.      Plaintiff Vicki Baker is a citizen of the State of Montana.

10.     Defendant City of McKinney is a municipal corporation in Collin County, Texas.

## FACTUAL ALLEGATIONS

11.     Plaintiff Vicki Baker owned a house in McKinney, Texas, located at 3600 Vista Verde Trail. She purchased the home in 2007, and she lived in it until she moved to Montana for her retirement in 2020.

12.     In 2018 and 2019, two of Vicki's adult children also lived with her in the house.

13.     In 2018, Vicki hired a handyman named Wesley Little to do odd jobs around the property.

14.     Eventually, some of Little's behavior and statements started to make Vicki's children feel uncomfortable. They asked Vicki to tell Little not to come by the house again, which she did. The last time any of them saw Little—prior to July 25, 2020—was in May 2019.

15.     By July 2020, Vicki and her children had all moved out of the house. Vicki moved to Montana and decided to sell the house in order to finance her retirement.

16.     During the month of July 2020, while Vicki was in Montana, her daughter Deanna prepared the house for sale.

17.     On July 25, 2020, Deanna saw a post on Facebook from a woman who said that Little had run off with her fifteen-year-old daughter. She called Vicki to tell her what had happened. At this point, Deanna had not seen Little in over a year.

18.     Later that day, Deanna was at the house on Vista Verde Trail when Little and the girl appeared at the door. Little said that he needed to park his car in the garage and stay at the house for a little while.

19.  Deanna was terrified that Little might be armed. She told Little that she was going to the store, and that he could park his car in the garage after she left.

20.  After Deanna got away from the house, she parked her car in a Walmart parking lot and called Vicki. Together they called the McKinney police and told them that Little was at the house with the girl.

21.  The McKinney police met Deanna at the Walmart, and she gave them the code to enter the house and the garage door opener.

22.  The McKinney police then proceeded to the house and surrounded it. A standoff ensued. After a few hours, the teenaged girl left the house unharmed, but Little refused to leave the house. The girl said that Little had seven firearms and that he insisted he would not leave the house alive.

23.  Eventually, the McKinney police decided to storm the house, using highly destructive tactics. They knocked down the backyard fence with a BearCat (essentially a tank). They fired approximately 30 tear gas cannisters through the windows of the house. They knocked down the front door and the garage door.

24.  Inside the house, they found that Little had taken his own life.

25.  The damage to the house was extensive. Every window needed to be replaced. A hazmat remediation team needed to clean the entire house because of the tear gas. Appliances were destroyed. The front door and garage needed to be replaced. Tear gas cannisters had smashed through the drywall. Carpets, blinds, and ceiling fans needed to be replaced. The damage totaled at least $50,000.

4

26. The house had been under contract to be sold, but after the destruction, the buyer terminated the agreement.

27. Vicki's insurance provider told her that most of the damage would not be covered because her policy—like most homeowners' policies—excludes damage caused by the government.

28. She requested compensation from the City of McKinney, but the City denied the request, stating that there was "no liability on the part of the City or any of its employees."

29. Some generous individuals and local businesses made private donations of cash or building materials to help defray the cost of repairing the house, but Vicki still spent tens of thousands of dollars repairing the house so it could be put back on the market.

## INJURY TO PLAINTIFF

30. The damage to Vicki Baker's house cost over $50,000 to repair, much of which she had to take out of her 401(k).

## CLAIMS

## Count I

### (28 U.S.C. § 1983; Fifth Amendment to the U.S. Constitution: Taking of Private Property Without Just Compensation)

31. The Fifth Amendment to the U.S. Constitution provides that "private property [shall not] be taken for public use, without just compensation."

5

**32.**   This requirement has been incorporated against the states via the Fourteenth Amendment. *Chicago Burlington and Quincy R.R. v. City of Chicago*, 166 U.S. 226 (1897).

33.   The Just Compensation Clause does not only apply to government action that directly appropriates private property for public use; it also applies to government action that destroys private property for public use. *Pumpelly v. Green Bay & Miss. Canal Co.*, 80 U.S. (13 Wall.) 166 (1871).

34.   The Just Compensation Clause ensures that government does not force "some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

**35.**   Apprehending a dangerous, armed fugitive is in the public interest, and "in all fairness and justice," the cost of apprehending such fugitives should be born by the public, and not by an unlucky and entirely innocent homeowner.

36.   This constitutional claim is brought under both 28 U.S.C. § 1983 and the Fifth Amendment itself, which is self-executing. *Knick v. Township of Scott*, 139 S. Ct. 2162, 2171 (2019).

### Count II

**(Article I, Section 17 of the Texas Constitution: Taking or Damaging Public Property without Just Compensation.)**

37.   Article I, Section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made."

**38.** When the police intentionally destroy an innocent person's property in order apprehend a dangerous, armed fugitive, that property is both "taken" and "damaged" within the meaning of the Texas Constitution. *Steele v. City of Houston*, 603 S.W.2d 786, 790 (Tex. 1980).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request relief as follows:

A. Compensatory damages as this Court may deem just and proper.

B. All further legal and equitable relief as the Court may deem just and proper.

DATED: March 3, 2021                    Respectfully Submitted:

/s/ Jeffrey Redfern
Jeffrey Redfern (D.C. Bar No. 1018046)
   *Lead Attorney*
Suranjan Sen (Tenn. Bar No. 038830)
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
Email: jredfern@ij.org; ssen@ij.org

*Attorneys for Plaintiff*