UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| VICKI BAKER, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-0176-ALM |
| | § | |
| CITY OF McKINNEY, TEXAS, | § | |
| Defendant. | § | |

### AFFIDAVIT OF EDWIN P. VOSS, JR.

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Edwin P. Voss, Jr., who, being of lawful age and duly sworn upon his oath, deposed and stated as follows:

1.     My name is Edwin P. Voss, Jr.  I am over 18 years of age, I have never been convicted of any felony or other crime involving dishonesty or moral turpitude, and I am fully competent to testify regarding the matters stated herein.  I am counsel for Defendant City of McKinney in the above-styled case.  I have personal knowledge of the facts stated herein.  I make this Affidavit in support of Defendant City of McKinney's Response to Plaintiff's Motion for Partial Summary Judgment ("City's Response").

2.     Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, discovery is needed in this case, if the court determines that subject-matter jurisdiction exists, in order for the City to be able to fully respond to Plaintiff's Motion for Partial Summary Judgment, and present facts essential to its opposition to Plaintiff's motion.  To date, the only discovery that has occurred in this case is the parties' exchange ~~of initial disclosures~~ that was performed in May 2021 in accordance with the court's Order Governing Proceedings, filed April 23, 2021 (ECF



Doc. No. 8).  Defendant City of McKinney's Rule 12(b)(1) and Rule 12(b)(6) Motion to

Dismiss, and Brief, was filed April 14, 2021 (ECF Doc. No. 6) and has not been decided by the

court.  In the City's dismissal motion, the City asserts, *inter alia*, that the court is without

subject-matter jurisdiction to hear Plaintiff's claims.

       3.      If the court determines that subject-matter jurisdiction exists in this case, the City

needs to conduct discovery regarding information to support the City's defenses in this case,

including: (a) factual details from Plaintiff regarding the request for police assistance during the

underlying events giving rise to this case and other matters related to the issues of consent and

intent, under takings jurisprudence; (b) factual details regarding the relationship between Mr.

Little and Plaintiff and Plaintiff's family members; (c) factual details regarding the value of

Plaintiff's residential property, both before the incident and after the incident, in order to

determine the proper measure of damages in takings claims asserted under federal law and state

law; and (d) factual details regarding financial contributions and other offsets Plaintiff may have

received from any organizations, insurance companies, friends, family, and other sources.  I

anticipate at this time needing to depose Plaintiff, Plaintiff's daughter, the under-age minor who

was detained/held hostage by Mr. Little, and any other neighbors and witnesses to the events

giving rise to this case, as to discoverable factual information.  The above information is

necessary in order to provide a full response by the City to Plaintiff's allegations and motion for

partial summary judgment in this case.

       3.      Attached to this Affidavit are copies of the following documents referenced in the

City's Response: (1) Defendant City of McKinney's Rule 12(b)(1) and Rule 12(b)(6) Motion to

Dismiss, and Brief, filed April 14, 2021 (ECF Doc. No. 6) with attachments; (2) Defendant City

of McKinney's Reply to Plaintiff's Response to Defendant's Rule 12(b)(1) and Rule 12(b)(6)

Motion to Dismiss, filed May 5, 2021 (ECF Doc. No. 10); and (3) Defendant City of McKinney's Response to Plaintiff's Supplemental Authority, filed June 25, 2021 (ECF Doc. No. 16).  The copies of these documents are from my case file regarding this matter, and are true and correct copies of said documents as they exist in my file.

4.     Further, Affiant sayeth not.



Edwin P. Voss, Jr.

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned notary public in and for Dallas County, Texas, on the 12th day of October, 2021, to certify which witness my hand and official seal of office.

Notary Public in and for Dallas County, Texas

My Commission Expires:

DEBRA LYNCH
My Notary ID # 11469939
Expires January 31, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| VICKI BAKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-0176-ALM |
| | § | |
| CITY OF McKINNEY, TEXAS, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## DEFENDANT CITY OF McKINNEY'S
## RULE 12(b)(1) AND RULE 12(b)(6) MOTION TO DISMISS, AND BRIEF

Edwin P. Voss, Jr.
State Bar No. 20620300
evoss@bhlaw.net

Michael L. Martin
State Bar No. 24108956
mmartin@bhlaw.net

BROWN & HOFMEISTER, L.L.P.
740 East Campbell Road, Suite 800
Richardson, Texas  75081
214-747-6100 (Telephone)
214-747-6111 (Telecopier)

ATTORNEYS FOR DEFENDANT
CITY OF McKINNEY, TEXAS

April 14, 2021



## TABLE OF CONTENTS

Table of Contents ..................................................................................................................... i

Index of Authorities ............................................................................................................... ii

I.      Introduction ............................................................................................................. 1

II.     Statement of the Issues to be Decided by the Court ............................................... 1

III.    Baker's Allegations ................................................................................................. 2

IV.     Arguments and Authorities ..................................................................................... 3

        A.      Rule 12(b)(1) Motion: The Appropriate Legal Standards ......................... 3

                1.      The Complaint Fails to Establish the Existence of a Federal Question ....... 4

                2.      The Complaint Fails to Establish Supplemental Jurisdiction ................... 10

        B.      Rule 12(b)(6) Motion: The Appropriate Legal Standards ....................... 11

                1.      The Complaint Fails to Establish
                        Municipal Liability Under Section 1983 ..................................... 13

                2.      The Complaint Fails to Establish the Existence of a
                        Fifth Amendment Violation ............................................................ 16

                3.      Baker's Takings Claim Under the
                        Texas Constitution Should Be Dismissed ........................................ 17

                        A.      Baker Alleges a Tort Claim ............................................. 20

                        B.      Baker's Reliance on *Steele v. City of Houston* is Misguided ......... 21

                4.      The Court Should Decline to Exercise Supplemental Jurisdiction ............ 23

V.      Conclusion       .......................................................................................................... 23

Signature Block    ........................................................................................................ 24

Certificate of Service   ................................................................................................ 24

## INDEX OF AUTHORITIES

**Cases**

*Ahearn v. Charter Twp. of Bloomfield,* 100 F.3d 451 (6th Cir. 1996)............................................ 10

*AmeriSource Corp. v. United States,* 525 F.3d 1149 (Fed. Cir. 2008) .................................. 7, 8, 9

*Armstrong v. United States,* 364 U.S. 40 (1960) ................................................................... 9, 17

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ............................................................................... 12, 13

*Bachmann v. United States,* 134 Fed.Cl. 694 (Fed. Cl. 2017) ..................................................... 6, 7

*Barnes v. United States,* 538 F.2d 865 (1976) .............................................................................. 19

*Bd. of Comm'rs of Bryan County v. Brown,* 520 U.S. 397 (1997) ............................................. 13

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) .................................................................. 11, 12

*Bennett v. City of Slidell,* 728 F.2d 762 (5th Cir. 1984), *cert. denied,* 472 U.S. 1016 (1985)...... 13

*Bennis v. Michigan,* 516 U.S. 442 (1996)................................................................................. 5, 7, 9

*Brown & Gay Eng'g, Inc. v. Olivares,* 461 S.W.3d 117 (Tex. 2015)........................................... 18

*Castro Romero v. Becken,* 256 F.3d 349 (5th Cir. 2001).......................................................... 15-16

*Chavarin v. City of El Paso,* 2011 WL 13234975 (W.D. Tex., No. EP-10-CV-0339-KC, Apr. 25, 2011) ........................................................................................................................ 15, 16

*Chicago Burlington and Quincy R.R. v. City of Chicago,* 166 U.S. 226 (1897) ........................... 8

*Cinnel v. Connick,* 15 F.3d 1338 (5th Cir. 1994), *cert. denied,* 513 U.S. 1338 (1994) ............... 12

*City of Waco v. Williams,* 209 S.W.3d 216 (Tex.App.-Waco 2006, pet. denied)........................ 18

*Columbia Basin Orchard v. United States,* 132 F.Supp. 707 (1955) ........................................... 19

*Culbertson v. Lykes,* 790 F.3d 608 (5th Cir. 2015)..................................................................... 13

*Davis v. Bayless,* 70 F.3d 367 (5th Cir. 1995) ........................................................................... 12

*Drury v. U.S. Dept. of Army, New Orleans Dist. Corps of Engineers,* 902 F.Supp. 107 (E.D. La. 1995).................................................................................................................. 19, 20

*Drury v. United States,* 52 Fed.Cl. 402........................................................................................ 19, 21

*Enochs v. Lampasas Cty.*, 641 F.3d 155 (5th Cir. 2011) ............................................................. 10

*Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375 (5th Cir. 2005).................................. 14

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1 (1983) ....................... 5

*Freeman v. U.S.*, 556 F.3d 326 (5th Cir. 2009) ........................................................................... 4

*Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591 (Tex.2011) .................... 17

*Gonzalez v. Kay*, 577 F.3d 600 (5th Cir. 2009) .......................................................................... 12

*Goodman v. Harris*, 571 F.3d 388 (5th Cir. 2009) ..................................................................... 18

*Halmekangas v. State Farm Fire and Cas. Co.*, 603 F.3d 290 (5th Cir. 2010) ........................... 10

*Harris Cty. v. Cabazos*, 177 S.W.3d 105 (Tex.App.-Houston [1st Dist.] 2005, no pet.) ............. 18

*Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006 (5th Cir. 1998)........................................................................................................................................ 4

*Huong v. City of Port Arthur*, 961 F.Supp. 1003 (E.D. Tex. 1997)............................................. 19

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007) ........................................ 2, 12

*IntegraNet Physician Res., Inc. v. Tex. Indep. Providers, L.L.C.*, 945 F.3d 232 (5th Cir. 2019). 11

*Jackson v. City of Hearne*, 959 F.3d 194 (5th Cir. 2020) ........................................................... 14

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) ................................................................. 14

*Johnson v. Manitowoc Cty.*, 635 F.3d 331 (7th Cir. 2011) ................................................. 5, 6, 7, 9

*Knick v. Township of Scott, Pennsylvania*, 139 S.Ct. 2162 (2019)................................................ 8

*Lane v. Rechfertig*, 2017 WL 5653870 (W.D. Tex., No. A-16-CA-00473-SS, Jan. 25, 2017).. 6, 9

*Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286 (5th Cir. 2020)........................................... 11

*Lawmaster v. Ward*, 125 F.3d 1341 (10th Cir. 1997)............................................................... 8, 9

*Lech v. Jackson*, 791 Fed.Appx. 711 (10th Cir. 2019) ......................................................... 6, 7, 9

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010) ................. 12

*Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004) ................ 2

*McConney v. City of Houston*, 863 F.2d 1180 (5th Cir. 1989)..................................................... 14

*McKee v. City of Rockwall*, 877 F.2d 409 (5th Cir. 1989), *cert. denied*, 493 U.S. 1023 (1990).. 13

*Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987) ............................................................... 4

*Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978)....................................................... 13, 15, 16

*Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169 (5th Cir. 1994)......................................... 4

*Morgan v. Hubert*, 335 Fed.Appx. 466 (5th Cir. 2009)................................................................ 13

*Mugler v. Kansas*, 123 U.S. 623 (1887) ............................................................................. 7, 8, 9

*Nat'l Bd. of Young Men's Christian Ass'ns v. United States*, 395 U.S. 85 (1969) ........... 5, 7, 9, 17

*Paterson v. Weinberger*, 644 F.2d 521 (5th Cir. 1981) ................................................................ 4

*Peoples Nat. Bank v. Office of Comptroller of Currency of U.S.*, 362 F.3d 333 (5th Cir. 2004) ... 4

*Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838 (5th Cir. 2009) ............................................ 14

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001) .................................................. 13, 14

*Pumpelly v. Green Bay & Miss. Canal Co.*, 80 U.S. (13 Wall.) 166 (1871) .................................. 9

*Quinn v. Guerrero*, 863 F.3d 353 (5th Cir. 2017).................................................................... 18

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001)............................................................. 11

*Ridge Line, Inc. v. United States.*, 346 F.3d 1346 (Fed. Cir. 2003)............................................. 19

*Saenz v. City of El Paso*, 637 Fed.Appx. 828 (5th Cir. 2016) ...................................................... 18

*Southern Pac. Co. v. United States*, 58 Ct. Cl. 428 (1923)........................................................... 19

*Spivey v. Robertson*, 197 F.3d 772 (5th Cir. 1999)............................................................... 2, 12

*State Nat'l Ins. Co. v. Yates*, 391 F.3d 577 (5th Cir. 2004) ........................................................ 10

*State v. Hale*, 146 S.W.2d 731 (Tex. 1941) ................................................................................ 17

*Steele v. City of Houston*, 603 S.W.2d 786 (Tex. 1980) ............................................. 17, 21, 22, 23

*Tarrant Regional Water Dist. v. Gragg*, 151 S.W.3d 546 (Tex. 2004) ........................................ 17

*Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex. 2006) .................................................................. 18

*United Mineworks of Am. v. Gibbs*, 383 U.S. 715 (1966) ........................................................... 10

*Webster v. City of Houston*, 735 F.2d 838 (5th Cir. 1984) ........................................................ 14

*Young v. Hosemann*, 598 F.3d 184 (5th Cir. 2010) ...................................................................... 5

*Zitter v. Petruccelli*, 744 F. App'x 90 (3d Cir. 2018) ........................................................................ 7

**Statutes**

28 U.S.C. § 1331 ........................................................................................................... 2, 4, 10

28 U.S.C. § 1367 ........................................................................................................ 2, 10, 11

42 U.S.C. § 1983 ....................................................................... 2, 8, 13, 14, 15, 16, 23

E.Dist.Loc.R. CV-5 ......................................................................................................... 24

E.Dist.Loc.R. CV-7 ............................................................................................................. 1

Fed.R.Civ.P. 5 .............................................................................................................. 24

Fed.R.Civ.P. 8 ........................................................................................................ 11, 12

Fed.R.Civ.P. 12 .................................... 1, 2, 3, 4, 11, 12, 13, 14-15, 16, 17

Tex. Const. art. I, § 17 ................................................................... 1, 2, 15, 17

TEX.CIV.PRAC. & REM. CODE ANN., § 101.001 ........................................................ 18

TEX.CIV.PRAC. & REM. CODE ANN., § 101.021 ........................................................ 18

TEX.CIV.PRAC. & REM. CODE ANN., § 101.057 ........................................................ 18

U.S. Const. amend. V .................................... 1, 5, 6, 7, 8, 9, 10, 15, 16, 17, 23

U.S. Const. amend. XIV ............................................................... 1, 5, 8, 15

**DEFENDANT CITY OF McKINNEY'S**
RULE 12(b)(1) and RULE 12(b)(6) MOTION TO DISMISS, AND BRIEF

Defendant City of McKinney, Texas (the "City"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, files this motion to dismiss the Complaint for Compensatory Damages, filed on March 3, 2021 (ECF Doc. No. 1) (the "Complaint") by Plaintiff Vicki Baker ("Baker") for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. In support hereof, the City respectfully shows the court the following:

## I. INTRODUCTION

On July 25, 2020, the City of McKinney Police Department (the "MPD") received a call for help from Baker concerning an armed fugitive who had kidnapped a 15-year-old girl and was hiding from authorities with the girl in Baker's residence located in the City. After the MPD surrounded the house and attempted to negotiate with the fugitive, the 15-year-old girl was released by the fugitive and left the residence unharmed. The girl reported to the MPD that the fugitive, whose name was Wesley Little, had seven firearms and had stated to her that he would not leave the house alive. The MPD attempted, by several forceful means, to cause Mr. Little to leave the house, without success. The MPD eventually forced entry into the home, where officers found that Mr. Little had taken his own life.

## II. STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT

Baker brings suit against the City alleging that the MPD's damages caused by its response to the armed hostage standoff violated Baker's rights under "the Fifth and Fourteenth Amendments to the United States Constitution; Article I, Section 17 of the Texas Constitution, and 28 (sic) U.S.C. § 1983." Complaint, p. 2, ¶5. Pursuant to E.Dist.Loc.R. CV-7(a)(1), the City provides the following statement of the issues to be decided by the court:

1.      Baker's claims should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction under 28 U.S.C. § 1331 or 28 U.S.C. § 1367; and

2.      Baker's claims should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted because: (a) the Complaint fails establish a requisite policy, practice or custom sufficient to establish municipal liability under 42 U.S.C. § 1983, (b) the Complaint fails to state a cognizable Fifth Amendment claim, and (c) the Complaint attempts to circumvent well-established state sovereign immunity by trying to cloak a traditional tort claim as a takings claim under Article I, Section 17 of the Texas Constitution.

## III. BAKER'S ALLEGATIONS

In considering a Rule 12 motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The court should "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Thus, a review of Baker's allegations reveals the following facts giving rise to this case.

Baker owns the residential home at 3600 Vista Verde Trail in the City (the "Property"). Complaint, ¶¶ 2, 11. At the time of these events, Baker had moved to Montana. Complaint, ¶ 11. Baker's adult daughter, Ms. Deanna Cook, was helping Baker in the process of selling the Property. Complaint, ¶¶ 2, 16. Ms. Cook saw a Facebook post reporting that an acquaintance of Baker's, Mr. Wesley Little, had "run off" with a 15-year-old girl. Complaint, ¶¶ 2, 17. Ms. Cook called Baker to advise her of Mr. Little's actions. Complaint, ¶ 17.

Mr. Little came to the Property with the 15-year-old girl and told Ms. Cook that he wanted

to hide at the Property and hide his car in the garage at the Property.  Complaint, ¶¶ 2, 18.  Ms. Cook let Mr. Little in the home and let him park his car in the garage, and she thereafter left the Property.  Complaint, ¶¶ 2, 19.  Ms. Cook and Baker then together called the MPD, who met Ms. Cook in a retail parking lot.  Complaint, ¶¶ 2, 20-21.  The MPD then went to the Property and surrounded the house.  Complaint, ¶¶ 3, 22.

The MPD attempted to negotiate with Mr. Little during the standoff.  Complaint, ¶¶ 3, 22. Mr. Little refused to leave the house, but released the 15-year-old girl.  Complaint, ¶¶ 3, 22.  The girl told the MPD that Mr. Little "had seven firearms and that he insisted he would not leave the house alive."  Complaint, ¶ 22.  The MPD attempted to cause Mr. Little to leave the house by using tear gas, without success.  Complaint, ¶ 3, 23.  The MPD forcefully entered the house, and found Mr. Little inside the house and that he had taken his own life.  Complaint, ¶¶ 3, 24.  As part of the MPD operations, some damage to the Property occurred.  Complaint, ¶¶ 3, 25.

Baker's claims arise out of the MPD's response to the armed hostage standoff at Plaintiff's Property. *See generally,* Complaint.  After the 15-year-old hostage escaped, she informed the MPD that the gunman was heavily armed and "insisted he would not leave the house alive." Complaint, ¶22.  Plaintiff alleges the MPD intentionally used highly destructive tactics to end the standoff and apprehend the gunman resulting in over $50,000 in damage to the Property. Complaint, ¶¶23-25.  Baker seeks recovery of her damages from the City arising out of these events.  Complaint, pp. 5-7.

## IV. <u>ARGUMENT AND AUTHORITIES</u>

### A.    <u>Rule 12(b)(1) Motion: The Appropriate Legal Standards.</u>

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes a court to dismiss a plaintiff's complaint for "lack of subject matter jurisdiction."  FED.R.CIV.P. 12(b)(1).  "A case is

properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). The court may dismiss a case for lack of subject matter jurisdiction based upon any of the following: (1) the plaintiff's complaint alone, (2) the plaintiff's complaint supplemented by undisputed facts in the record; or (3) the plaintiff's complaint supplemented by undisputed facts and the court's resolution of disputed facts. *Freeman v. U.S.*, 556 F.3d 326, 334 (5th Cir. 2009).

Federal courts are courts of limited jurisdiction which have no jurisdiction except that provided by statute. *Peoples Nat. Bank v. Office of Comptroller of Currency of U.S.*, 362 F.3d 333, 336 (5th Cir. 2004). Accordingly, a court must consider a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction before considering any other challenges. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). When the Rule 12(b)(1) motion is based solely on a plaintiff's complaint, the court must simply decide whether plaintiff's allegations, assumed to be true, provide a sufficient basis for subject matter jurisdiction. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

As will be shown herein, the Complaint should be dismissed for Baker's failure to allege sufficient facts to establish the existence of a federal question, or the existence of supplemental jurisdiction, as a matter of law.

1. The Complaint Fails to Establish the Existence of a Federal Question.

The Complaint asserts that the court has jurisdiction in this case pursuant to 28 U.S.C. § 1331, the federal question statute. Complaint, ¶ 7. Absent sufficient diversity jurisdiction, "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). Federal

jurisdiction analysis is limited to the four corners of the plaintiff's complaint. *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust,* 463 U.S. 1 (1983). If on its face the plaintiff's complaint only presents a state-law cause of action, there is no federal question jurisdiction. *Id.* If a claim is frivolous or lacks a plausible foundation, "dismissal for lack of subject matter jurisdiction is only proper." *Young v. Hosemann,* 598 F.3d 184, 188–89 (5th Cir. 2010).

Even accepting all of the claims in the Complaint as true, Baker fails to assert a federal question cause of action. Baker's claims center around the City's police response to an armed hostage standoff at Baker's Property. Complaint, pp. 1-5. The Complaint alleges damages for "the intentional destruction of private property for public use." Complaint, ¶1. The intentional destruction of private property being asserted is damage resulting from the police response to an armed hostage standoff. Complaint, ¶¶11-24. The public use being asserted is the rescue of a 15-year-old hostage and apprehension of an armed gunman barricaded in a private home. *Id.*

There is no federal court decision at either the United States Supreme Court or in the federal Courts of Appeals which has recognized such a cause of action establishing Baker's claims as one asserting a federal question under the Fifth or Fourteenth Amendments. In fact, many federal courts have found just the opposite. *See, e.g., Bennis v. Michigan*, 516 U.S. 442, 452 (1996) ("The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."); *Nat'l Bd. of Young Men's Christian Ass'ns v. United States,* 395 U.S. 85, 92 (1969) (held that governmental bodies are not "liable under the Just Compensation Clause to property owners every time policemen break down the doors of buildings to foil burglars thought to be inside."); *Johnson v. Manitowoc Cty.,* 635 F.3d 331, 336 (7th Cir. 2011) (held that the Fifth Amendment's Takings

Clause did not apply to officer's destruction of plaintiff's property during a search: "Here, the actions were taken under the state's police power.  The Takings Clause claim is a non-starter.").

There are no cases from the Fifth Circuit Court of Appeals to specifically guide the court in this area.  A recent case from the United States District Court for the Western District of Texas, however, has held that "the Takings Clause does not apply to property damages 'as the result of the government's exercise of its authority pursuant to some power other than the power of eminent domain.'" *Lane v. Rechfertig*, 2017 WL 5653870, at *5 (W.D. Tex., No. A-16-CA-00473-SS, Jan. 25, 2017) (quoting *Johnson*, 635 F.3d at 336) (attached hereto as **Exhibit A**).  *Lane* concerned the situation where police officers responded to a residential alarm call, investigated a possible forced entry, and the court dismissed the plaintiff's Fifth Amendment takings claim asserted after the officers shot and killed the plaintiff's dog while inside plaintiff's residence.  *Id*.

A useful case that collected and analyzed many case decisions and analyzed similar police power facts is the Tenth Circuit's unreported decision in *Lech v. Jackson*, 791 Fed.Appx. 711, 713-714 (10th Cir. 2019) (attached hereto as **Exhibit B**).   In that case, the Lechs alleged a takings claim against the City of Greenwood, Colorado, and numerous police officers, for damages resulting from a police response to an armed burglar inside the Lechs' home.  *Lech v. Jackson*, 791 Fed.Appx. at 713-14.  The court of appeals held that "when the state acts pursuant to its police power, rather than the power of eminent domain, its actions do not constitute a taking for purposes of the Takings Clause . . . [a]nd we further hold that this distinction remains dispositive."  *Lech*, 791 Fed.Appx. at 717.  Further, the court explained that the police response was "perhaps the most traditional function of the police power, entering property to effectuate an arrest[.]"  *Id*. at 718 (citing *Bachmann v. United States*, 134 Fed.Cl. 694, 697 (Fed. Cl. 2017)).

In *Lech,* the court reviewed this area of jurisprudence, and explained that numerous other courts have held that a legitimate exercise of the police power does not constitute a taking under the Fifth Amendment:

> [C]ontrary to the Lechs' position, at least three of our sibling circuits and the Court of Federal Claims have expressly relied upon the distinction between the state's police power and the power of eminent domain in cases involving the government's direct physical interference with private property.  For instance, in *AmeriSource Corp. v. United States,* the Federal Circuit held that no taking occurred where the government physically seized (and ultimately "rendered worthless") the plaintiff's pharmaceuticals "in connection with [a criminal] investigation" because "the government seized the pharmaceuticals in order to enforce criminal laws"—an action the Federal Circuit said fell well "within the bounds of the police power." 525 F.3d 1149, 1150, 1153–54 (Fed. Cir. 2008) (citing *Bennis v. Michigan,* 516 U.S. 442, 443–44, 452–53, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996); *see also, e.g., Zitter v. Petruccelli,* 744 F. App'x 90, 93, 96 (3d Cir. 2018) (unpublished) (relying on distinction between power of eminent domain and police power to hold that no taking occurred where officials physically seized plaintiff's oysters and oyster-farming equipment (citing *Bennis,* 516 U.S. at 452, 116 S.Ct. 994)); *Johnson v. Manitowoc Cty.,* 635 F.3d 331, 333–34, 336 (7th Cir. 2011) (relying **\*716** on distinction between power of eminent domain and police power to hold that no taking occurred where authorities physically damaged plaintiff's home (citing *Bennis,* 516 U.S. at 452, 116 S.Ct. 994)); *Bachmann v. United States,* 134 Fed. Cl. 694, 696 (Fed. Cl. 2017) (holding that "[w]hen private property is damaged incident to the exercise of the police power, such damage"—even when physical in nature—"is not a taking for the public use, because the property has not been altered or turned over for public benefit" (citing *Nat'l Bd. of Young Men's Christian Ass'ns v. United States,* 395 U.S. 85, 92–93, 89 S.Ct. 1511, 23 L.Ed.2d 117 (1969))).

*Lech,* 791 Fed.Appx. at 715-716.

Baker's allegations of harm under the United States Constitution only assert damage caused to her Property by the City's police officers in the context of enforcing the criminal laws and attempting to apprehend Mr. Little for his crimes.  Complaint, pp. 1-5.  Such allegations fail to assert a federal cause of action because they complain of the exercise of the state's police powers.  *See, e.g., Mugler v. Kansas,* 123 U.S. 623, 668-69 (1887) (distinguishing between "the state's power of eminent domain"—under which "property may not be taken for public use without compensation"—and the state's "police powers"—which are not "burdened with the condition that

the state must compensate [affected] individual owners for pecuniary losses they may sustain");
*Lawmaster v. Ward*, 125 F.3d 1341, 1344-46 (10th Cir. 1997) (plaintiff failed to establish a
Takings Clause violation where federal agents physically damaged his property—by, for example,
tearing out door jambs and removing pieces of interior trim from his home—while executing a
search warrant).  When, as here, the City acted to preserve the safety of the public, the City "cannot
be burdened with the condition that [it] must compensate" Baker "for pecuniary losses" she may
sustain in the process.  *Mugler*, 123 U.S. at 669.  As a result, "[a]s unfair as it may seem," the
Takings Clause simply does not entitle all aggrieved owners to compensation for damages cause
by police power activities.  *AmeriSource Corp.*, 525 F.3d at 1153-54.

The Complaint lists several cases that support her purported claim under the Fifth
Amendment's Takings Clause.  Complaint, p. 6.  Baker's reliance on the cited cases is misplaced.
First, Baker alleges that the Takings Clause has been "incorporated against the states via the
Fourteenth Amendment," citing *Chicago Burlington and Quincy R.R. v. City of Chicago*, 166 U.S.
226 (1897).  Complaint, ¶ 32.  True enough, but stating such a general proposition of law does not
establish either jurisdiction in this court or that Baker has alleged a viable claim under the Takings
Clause.  Indeed, Baker's cite (Complaint, ¶ 36) to *Knick v. Township of Scott, Pennsylvania*, 139
S.Ct. 2162, 2171 (2019), and its statement that "the existence of the Fifth Amendment right …
allows the owner to proceed directly to federal court under § 1983" is likewise only self-serving
without addressing the key premise: whether Baker has a sufficient Fifth Amendment right to
assert in this case.  Under the City's authorities cited above, Baker's complaints about the City's
actions taken under its police power do not assert a cause of action under the Takings Clause or
establish jurisdiction in this court.

Baker then asserts that *Pumpelly v. Green Bay & Miss. Canal Co.*, 80 U.S. (13 Wall.) 166 (1871), and its holding that the Just Compensation Clause applies to government action that destroys private property for public use, provides the basis for Baker's takings claim under the Fifth Amendment.  Complaint, ¶ 33.  *Pumpelly* is taken out of context here, because the facts in that case concerned the construction of a dam that caused flooding on the plaintiff's land that resulted in the destruction of the plaintiff's real property in an eminent domain analysis.  As explained in the City's authorities cited above, the federal courts distinguish between takings claims based on eminent domain principles, and those based on police power actions, finding the latter to fall outside of the protection of the Fifth Amendment.  *See Bennis*, 516 U.S. at 452; *YMCA*, 395 U.S. at 92; *Mugler*, 123 U.S. at 669; *Johnson*, 635 F.3d at 336; *AmeriSource Corp.*, 525 F.3d at 1154; *Lawmaster*, 125 F.3d at 1344-46; *Lech*, 791 Fed.Appx. at 715-16; *Lane*, 2017 WL 5653870, at *5.  *Pumpelly* does not support Baker's claims.

Likewise, Baker's reliance (Complaint, ¶ 34) on *Armstrong v. United States*, 364 U.S. 40, 49 (1960) is merely a citation to another eminent domain case, notwithstanding the Court's general statement that the Just Compensation Clause ensures that government does not force "some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong* concerned the situation where the United States Government took possession of several boat hulls from the defaulting general contractor without paying for the work performed on those hulls by the subcontractors who had materialmen's liens covering their work.  *Armstrong* is inapplicable here to support Baker's Fifth Amendment takings claims based upon the City's exercise of its police power in response to the criminal actions of Mr. Little.

Baker fails to provide any federal court authority which has accepted her novel Fifth Amendment claim to establish a federal question sufficient to invoke federal jurisdiction. For these reasons, Baker's case should be dismissed for lack of subject matter jurisdiction.

2. The Complaint Fails to Establish Supplemental Jurisdiction.

The Complaint asserts that the court has supplemental jurisdiction in this case, pursuant to 28 U.S.C. § 1367, to consider Baker's claim under the Texas Constitution. Complaint, ¶ 7. Section 1367 "grants supplemental jurisdiction over [state] claims that do not independently come within the jurisdiction of the district court but form part of the same Article III 'case or controversy.'" *Halmekangas v. State Farm Fire and Cas. Co.,* 603 F.3d 290, 293 (5th Cir. 2010) (citing *State Nat'l Ins. Co. v. Yates,* 391 F.3d 577, 579 (5th Cir. 2004)). Section 1367 on its own, however, cannot provide original jurisdiction over a state law claim. "The supplemental-jurisdiction statute is not a source of original subject-matter jurisdiction." *Halmekangas,* 603 F.3d at 294 (quoting *Ahearn v. Charter Twp. of Bloomfield,* 100 F.3d 451, 456 (6th Cir. 1996)). Importantly, if federal jurisdiction is lacking, then the supplemental jurisdiction statute is not triggered. *Halmekangas,* 603 F.3d at 294. In this case, Baker's Fifth Amendment claim is invalid, so that no federal jurisdiction exists in this court under 28 U.S.C. § 1331. *See* Subsection 1, above. Baker's state law claim under the Texas Constitution, therefore, should be dismissed.

Similarly, federal courts generally "decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Enochs v. Lampasas Cty.,* 641 F.3d 155, 161 (5th Cir. 2011). *See also United Mineworks of Am. v. Gibbs,* 383 U.S. 715, 726 (1966) (federal courts should avoid '[n]eedless decisions of state law.'")). While the exercise of supplemental jurisdiction is discretionary if federal question jurisdiction no longer exists, the City urges the court to decline to exercise supplemental jurisdiction here, particularly where the case is

newly filed, and there have been no proceedings in this court other than to address the City's

dismissal motion.  *See IntegraNet Physician Res., Inc. v. Tex. Indep. Providers, L.L.C.*, 945 F.3d

232, 242-43 (5th Cir. 2019) (concluding that exercising supplemental jurisdiction was

inappropriate in part because the case was still "in [its] infancy," because there had been no

discovery, no Rule 26(f) conference, and no scheduling order), *overruled on other grounds by

Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286 (5th Cir. 2020) (en banc).

As shown above, the Complaint fails to allege sufficient facts to invoke federal jurisdiction

by failing to establish the existence of a federal claim.  Additionally, a single state law claim is not

sufficient to establish supplemental jurisdiction in federal court under § 1367.  The above-cited

jurisprudence cautions against exercising federal jurisdiction in these circumstances.  Thus, the

Complaint should be dismissed in its entirety for lack of subject matter jurisdiction.

**B.      Rule 12(b)(6) Motion: The Appropriate Legal Standards.**

The City alternatively asserts that Baker's lawsuit should be dismissed under Rule 12(b)(6)

of the Federal Rules of Civil Procedure.  Rule 12(b)(6) authorizes a court to dismiss a plaintiff's

complaint for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).

In other words, a Rule 12(b)(6) motion to dismiss asserts that, irrespective of jurisdiction, the

complaint fails to assert facts that give rise to legal liability of the defendants.  *Id.*  The Federal

Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement

… showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  Each claim must include

enough factual allegations "to raise a right to relief above the speculative level."  *Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 555 (2007).  A motion under Rule 12(b)(6) tests the formal sufficiency

of the claims for relief and is "appropriate when a defendant attacks the complaint because it fails

to state a legally cognizable claim."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205. Normally, the court should "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey*, 197 F.3d at 774. The court, however, may take notice of matters of public record when considering a motion to dismiss under Rule 12(b)(6). *See Davis v. Bayless*, 70 F.3d 367, 372 n. 3 (5th Cir. 1995); *Cinnel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994), *cert. denied*, 513 U.S. 1338 (1994). The court may also consider "documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court must then determine whether the complaint states a plausible claim for relief. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)) (alterations in original).

In *Iqbal*, the United States Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion.  First, the court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664.  Second, the court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief."  *Id.*  "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 Fed.Appx. 466, 470 (5th Cir. 2009) (citation omitted).  This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  As set forth, below, the Complaint fails to establish that Baker is entitled to relief, and should be dismissed.

    1. The Complaint Fails to Establish Municipal Liability Under Section 1983.

Baker alleges her federal claim against the City under 42 U.S.C. § 1983.  Complaint, pp. 5-6.  To establish municipal liability under § 1983, a plaintiff must show that: (1) an official policy or custom, (2) promulgated by the municipal policymaker, (3) was the moving force behind the violation of a constitutional right. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)).  *See also Culbertson v. Lykes*, 790 F.3d 608, 628 (5th Cir. 2015).  Therefore, § 1983 municipal liability may only attach through official action in accordance with official policy or custom.  *Id.*  Liability does not attach through isolated actions or under a theory of *respondeat superior*.  *Id.* (citing *Bd. of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997) (*respondeat superior); Bennett v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985) and *McKee v. City of Rockwall*, 877 F.2d 409, 415 (5th Cir. 1989), *cert. denied*, 493 U.S. 1023 (1990) (isolated actions do not trigger § 1983 liability)).

Official policy or custom can be established in several ways.  An official policy may be a "statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers[,] or by an official to whom the lawmakers have delegated policy-making authority."  *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc).  Policy may also arise from a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id. See also Jackson v. City of Hearne*, 959 F.3d 194, 204 (5th Cir. 2020) ("Official policy includes unwritten practices that are so common and well settled as to constitute a custom that fairly represents municipal policy.").  A policy is promulgated by the municipal policymaker when it "results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy."  *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

If a plaintiff relies on custom or practice, the plaintiff must demonstrate "a pattern of abuses that transcends the error made in a single case."  *Piotrowski*, 237 F.3d at 582 (citation omitted).  A pattern requires "sufficiently numerous prior incidents," as opposed to "isolated instances." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989) (citations omitted).  A pattern also requires similarity and specificity, because "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question."  *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005).  "Moreover, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Jackson*, 959 F. 3d at 204.  Baker's § 1983 claim should be dismissed pursuant to Rule

12(b)(6) for her failure to state a claim upon which relief can be granted because, even assuming Baker has plausibly alleged an underlying constitutional violation, the Complaint neither alleges an improper official policy or widespread custom, nor alleges how any City policy or custom directly caused Baker's injuries, or any other element of a *Monell* claim.

An example of the application of the above-cited municipal liability principles vis-à-vis a § 1983 claim asserting a Fifth Amendment taking by police action is found in *Chavarin v. City of El Paso,* 2011 WL 13234975 at \*\*8-9, (W.D. Tex., No. EP-10-CV-0339-KC, Apr. 25, 2011). Examining facts similar to those at issue here, the district court in *Chavarin* granted the city's Rule 12(b)(6) motion to dismiss with respect to the plaintiffs' § 1983 claims regarding damage to a home by police in apprehending a criminal suspect. *Id.* There, plaintiffs brought suit seeking damages, in part, for violations of the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 17 of the Texas Constitution for a SWAT raid on plaintiffs' home to execute a search warrant for an individual whom they believed to be in the house. *Chavarin,* 2011 WL 13234975 at \*1. The plaintiffs alleged, in part, that the raid constituted a taking of their property without due process or just compensation. *Id.* at \*2. The court found that:

> Plaintiffs do not allege that the actions taken by the officers were pursuant to any municipal policy. *See* 2d Am. Compl. ¶¶ 12-23, Resp. 7-8. They do not contend that the alleged constitutional violations resulted from a local governmental custom or practice. Nor have Plaintiffs alleged any prior incidents establishing a pattern of persistent and widespread practices establishing a custom. They have not alleged any policymaker or policy decision from which liability would arise. Further, the City cannot be held liable under the theory of *respondeat superior*, based solely on the actions of the officers involved in the incident alleged. *See Monell*, 436 U.S. at 694.

*Chavarin,* 2011 WL 13234975 at \*9. The court concluded that, since plaintiffs' complaint failed to allege sufficient facts to establish municipal liability under § 1983, then "dismissal of Plaintiffs' § 1983 claims against the City is appropriate." *Id.* at \*9 (citing *Castro Romero v. Becken,* 256

F.3d 349, 355 (5th Cir. 2001)).

In this case, Baker claims that her Fifth Amendment rights were violated when the City's police officers destroyed portions of the Property attempting to rescue a young female hostage and apprehend an armed gunman after an hours-long standoff and negotiations failed to peacefully resolve the situation. *See, generally*, the Complaint. Nowhere in the Complaint does Baker allege that the officers' actions were taken pursuant to an official City policy, practice or custom. *See generally*, the Complaint. Nowhere in the Complaint does Baker allege a widespread pattern or practice of such actions by the MPD. *Id.* Baker has not alleged any prior incidents to establish a pattern of persistent and widespread practices establishing a custom. *Id.* Baker has not alleged any policymaker or policy decision from which liability would arise under these alleged facts. *Id.* At best, the Complaint asserts City liability based upon a *respondeat superior* theory by alleging harm solely from the actions of the officers involved in the incident alleged. *Id.* Such pleadings fail to comply with the Supreme Court's requirements to bring suit against a municipality under *Monell*. *Monell*, 436 U.S. at 694.

For these reasons, and as the example in the *Chavarin* case compels, Baker's § 1983 claim against the City should be dismissed under Rule 12(b)(6) for her failure to state a claim.

2. The Complaint Fails to Establish the Existence of a Fifth Amendment Violation.

The Complaint seeks recovery of Baker's alleged damages under the Fifth Amendment to the United States Constitution. Complaint, pp. 5-6. As discussed above, however, a legitimate exercise of the police power does not constitute a taking under the Fifth Amendment. *See* Section A.1, above, at pp. 4-9. In the alternative to the City's assertion that the non-existence of a takings claim deprives the court of jurisdiction in this case, the City asserts that Baker's alleged takings claim under the Fifth Amendment fails to state a cognizable claim of constitutional harm, and

should be dismissed under Rule 12(b)(6).  Rather than repeat its arguments from above here, the City adopts the argument and authorities from Section A.1, above, as if repeated herein verbatim. Baker's Fifth Amendment takings claim should be dismissed for her failure to state a claim.

    3. <u>Baker's Takings Claim Under the Texas Constitution Should Be Dismissed</u>.

The Complaint asserts a takings claim against the City under Article I, Section 17 of the Texas Constitution.  Complaint, pp. 6-7.  Baker's claim under Texas law should be dismissed because it is a sheer attempt to allege tort recovery in a claim wearing takings claim clothing.

The Takings Clause of the Texas Constitution states that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by consent of such person." TEX.CONST. art. I, § 17.  The reasoning behind the state Takings Clause is that the government "should not 'forc[e] some people alone to bear public burdens which, in all fairness and justice, should be borne by the public at whole.'" *Tarrant Regional Water Dist. v. Gragg,* 151 S.W.3d 546, 554 (Tex. 2004) (*quoting Steele v. City of Houston,* 603 S.W.2d 786, 789 (Tex. 1980); *Armstrong,* 364 U.S. at 49; *YMCA,* 395 U.S. at 89).

To establish a valid takings claim under state law, the plaintiff must show: (1) an intentional act, (2) that was a taking, (3) of property that plaintiffs have an ownership interest in, (4) lack of consent to the taking, (5) no adequate compensation, and (6) that the taking was for a public use. *Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.,* 39 S.W.3d 591, 598 (Tex.2011).  The government's actions must also be the proximate cause of the damage to constitute a valid takings claim.  *State v. Hale,* 146 S.W.2d 731, 736 (Tex. 1941).  Property damage resulting from governmental negligence, however, does not constitute a taking.  *Tarrant Reg'l Water Dist.,* 151 S.W.3d at 554.  Negligence allegations only support tort claims.

Under Texas law, a governmental entity enjoys sovereign immunity against tort claims

unless the state has specifically waived such immunity. *See* TEX.CIV.PRAC. & REM. CODE ANN.,
§ 101.001 *et. seq.; Tooke v. City of Mexia,* 197 S.W.3d 325, 331 (Tex. 2006) ("[it is well-
established that 'no state can be sued in her own courts without her consent, and then only in the
manner indicated by that consent.'"). The reasoning behind sovereign immunity is "shield[ing]
the public from the costs and consequences of improvident actions of their government." *Brown
& Gay Eng'g, Inc. v. Olivares,* 461 S.W.3d 117, 121 (Tex. 2015) (quoting *Tooke,* 197 S.W.3d at
332).

Tort claims against governmental entities are governed by the Texas Tort Claims Act. *See*
TEX.CIV.PRAC. & REM. CODE ANN., § 101.001, *et. seq.* Governmental entities do not waive
immunity for intentional tortious conduct by their employees. *Goodman v. Harris,* 571 F.3d 388,
394 (5th Cir. 2009) (citing TEX.CIV.PRAC. & REM. CODE ANN., § 101.057(2)). Governmental
entities only waive immunity for "property damage, personal injury, and death proximately caused
by the wrongful act or omission of the negligence of an employee acting within [their] scope of
employment[,]" if such damage "arises from the operation or use of a motor-driven vehicle or
motor-driven equipment[,] and the employee would be personally liable to the claimant according
to Texas law." TEX.CIV.PRAC. & REM. CODE ANN., § 101.021(1)(A)-(B). But "a negligence claim
under the TTCA cannot arise out of the intentional acts ... of a law enforcement officer against a
person." *Quinn v. Guerrero,* 863 F.3d 353, 364 (5th Cir. 2017) (citing *City of Waco v. Williams,*
209 S.W.3d 216, 221-222 (Tex.App.-Waco 2006, pet. denied) (collecting cases)).

Baker cannot circumvent municipal immunity for tort liability by simply pleading another
cause of action. *See Saenz v. City of El Paso,* 637 Fed.Appx. 828, 830 (5th Cir. 2016) (quoting
*Harris Cty. v. Cabazos,* 177 S.W.3d 105, 111 (Tex.App.-Houston [1st Dist.] 2005, no pet.) ("'[i]f
a plaintiff pleads facts which amount to an intentional tort, no matter if the claim is framed as

negligence, the claim generally is for an intentional tort and is barred by the TTCA.'")). *See also Huong v. City of Port Arthur*, 961 F.Supp. 1003, 1009 (E.D. Tex. 1997) ("Although Plaintiffs have attempted to bring a claim for 'negligence' arising from the alleged conduct of [Defendants,] . . . [r]egardless of the language used, it is clear that Plaintiffs' claims consist of intentional torts.").

Guidance for determining whether a plaintiff's claim constitutes a taking or a tort can be found in *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1356-1357 (Fed. Cir. 2003). Whether a claim constitutes a takings claim or tort claim depends upon the specific circumstances at issue. *Id.* (citing *Barnes v. United States*, 538 F.2d 865, 870 (1976)). In *Ridge Line*, the court outlined a two-part test to determine whether plaintiff's claim constitutes a takings claim or tort claim: (1) was the damage the "direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action"; and (2) did the government action "appropriate a benefit to the government at the expense of the property owner, or at least preempt the owner's rights to enjoy his property for an extended period of time, rather than merely inflict an injury that reduces its value." *Id.* at 1355-1356 (citing *Columbia Basin Orchard v. United States*, 132 F.Supp. 707, 709 (1955) (first prong); *Southern Pac. Co. v. United States*, 58 Ct. Cl. 428 (1923) (second prong)).

Another case that provides guidance is where a property owner brought suit against the United States for damage to his property as part of a nearby U.S. Army Corps of Engineers project. *See Drury v. United States*, 52 Fed.Cl. 402, 404 n. 2 (citing *Drury v. U.S. Dept. of Army, New Orleans Dist. Corps of Engineers*, 902 F.Supp. 107, 110 (E.D. La. 1995)). The plaintiff's allegations included "trespass, disturbing the peaceful possession of the lessee of the property, conversion, failure to repair property, failure to notify plaintiff of defendant's acts, loss of rental income, and destruction of certain improvements on the property (in particular destroying the

backstop portion of the property, damaging a building on the lot, and damaging a fence." *Id.* at 404. The court found that "[t]he wrongful acts alleged by plaintiff are informal in nature and are all tortious." *Id.* Accordingly, the court held that "[n]one of these allegations rises to the magnitude necessary to support a takings claim." *Id.* From these examples, Baker's state claim suffer the same defects, and cannot be classified as a takings claim.

A. *Baker Alleges a Tort Claim*

Baker seeks compensation from the City for the alleged destruction of portions of her Property by the City of McKinney arising out of the MPD's actions attempting to apprehend a criminal suspect. *See, generally*, the Complaint. To reiterate pertinent facts, the Complaint asserts that on July 25, 2020, an armed fugitive with a young female hostage showed up at Baker's Property asking to come in and park his car in the garage. Complaint, ¶ 2. Baker's daughter let the man and young female into house, left the house and then, with Baker, called the MPD. Complaint, ¶ 19. Baker's daughter gave the MPD the front door entrance code and garage door opener to be able to enter the Property. Complaint, ¶ 21.

Baker asserts that the MPD proceeded to the Property and a standoff with the fugitive, Mr. Little, ensued. Complaint, ¶ 22. After a few hours, the teenage girl that Mr. Little had apprehended left the house unharmed, but Mr. Little refused to the leave the Property. *Id.* The teenage girl told the MPD that Mr. Little had seven firearms and insisted that he would not leave the house alive. *Id.* Baker then alleges that the MPD decided to storm the house, using highly destructive tactics to apprehend the armed gunman inside the Property after negotiations for a peaceful resolution failed. Complaint, ¶¶ 22-23. The Complaint alleges that the police damaged the Property by knocking down the backyard fence, firing approximately 30 tear gas cannisters through the windows of the house, and knocking down the front door and the garage door. Complaint, ¶ 23.

The Complaint notes that by the time the police entered the Property, Mr. Little had committed suicide. Complaint, ¶ 3.

The facts alleged and the manner in which they are alleged in the Complaint make out a prototypical tort claim. The Complaint takes efforts to expressly note that Baker's daughter provided the MPD with the front door entrance code and garage door opener to be able to enter the Property. Complaint, ¶ 21. The Complaint also expressly asserts that the young female hostage had left the house and the fugitive had committed suicide, impliedly before the MPD decided to storm the Property. Complaint, ¶ 3. The inclusion of such facts is an attempt to imply that the MPD's robust response was unreasonable under the circumstances and failed to demonstrate a level of care for the Property. Such a claim actually describes a tort, not a taking.

The Complaint asserts that the City's intentional acts to achieve a public benefit was the rescue of the young female hostage and apprehension of Mr. Little. According to the Complaint, the MPD spent hours trying to negotiate a peaceful resolution of the incident. Complaint, ¶¶ 3, 22. The damage caused by entering the Property after the armed gunman refused to surrender was an incidental consequence of the City's actions. *Id.* Further, the City's actions did not deprive Baker of her use of the home for an extended period of time, but rather simply caused property damage that allegedly diminished the value of the Property. Complaint, ¶¶ 25, 29.

The City's actions complained of in the Complaint therefore describe a tort claim, not a takings claim. *Drury*, 52 Fed.Cl. at 404. Baker's attempt to circumvent well-established sovereign immunity for such claims by artfully pleading it as a takings claim should be rejected.

B. *Baker's Reliance on Steele v. City of Houston is Misguided*

The Complaint asserts entitlement to a claim under the Texas Constitution by citing *Steele*, 603 S.W.2d at 790. Complaint, ¶ 38. Baker's reliance on *Steele* to support her claim is misguided.

In *Steele*, the Houston Police Department ("HPD") cornered three escaped convicts in plaintiffs' home. *Steele*, 603 S.W.2d at 789. To try to get the escaped convicts to leave the home, the HPD fired "incendiary material into the residence in a manner designed to cause and *for the purpose* of causing the residence to catch fire." *Id.* (emphasis added). Further, the HPD actively prevented the Houston Fire Department from putting out the fire. *Id.* The HPD's actions destroyed plaintiffs' home and all belongings inside. *Id.* The Texas Supreme Court explained that the HPD's intentional destruction of plaintiffs' home presented a plausible takings claim because the HPD "intentionally set the house on fire" and "prevented the fire's extinguishment after it was set." *Id.* at 791-792.

Here, the MPD did not intentionally destroy Baker's home to try to get Mr. Little to surrender. Complaint, ¶¶ 3, 22-25. The MPD spent hours trying to negotiate the peaceful release of the young female hostage and obtain Mr. Little's surrender. *Id.* Only after learning that Mr. Little was heavily armed and was not going to leave the Property peacefully, did the MPD draw up plans to try to safely apprehend Little. Complaint, ¶¶ 3, 22-23. Damage to Baker's home was the incidental consequence of the MPD's efforts to incapacitate Mr. Little to safely remove him from the Property. The MPD did not intentionally damage the Property to try to get Mr. Little to flee the Property.

Contrary to the facts in *Steele*, the MPD here knew an armed gunman was in the house, they first tried to negotiate a peaceful resolution, and when negotiations were unsuccessful were told that the gunman was heavily armed and would not come out alive. Complaint, ¶¶ 2-3, 20-22. To reiterate, the alleged damage to Baker's home was the incidental consequence of the MPD's efforts to incapacitate Mr. Little to safely remove him from the Property. The MPD did not intentionally damage the Property in the abusive, intentional manner as in *Steele*. Because of these

differences in facts, *Steele* should not guide the court's review of whether Baker has stated a claim upon which relief can be granted under the Texas Constitution.

    4. The Court Should Decline to Exercise Supplemental Jurisdiction.

    As asserted in Section A.2, above, should the court dismiss Baker's § 1983 claim asserting a taking under the Fifth Amendment, then the court should decline to exercise supplemental jurisdiction over Baker's claim under Texas law.

## V. CONCLUSION

    The Complaint fails to invoke federal jurisdiction because it does not establish the existence of a federal question, or establish supplemental federal jurisdiction. The Complaint also fails to state a claim for which relief can be granted because it fails to establish municipal liability under § 1983, fails to assert a constitutional claim, and improperly attempts to circumvent well-established state sovereign immunity by asserting an improper tort claim as a takings claim under state law. For Baker's failure to plead facts sufficient to invoke federal jurisdiction or state a claim for which relief can be granted, the Complaint should be dismissed.

    WHEREFORE, PREMISES CONSIDERED, Defendant City of McKinney, Texas, prays that the court grant this motion and dismiss the Plaintiff's Complaint for Compensatory Damages in its entirety. The City also prays for all other relief to which it may be entitled.

Respectfully submitted,

By:    /s/ *Edwin P. Voss, Jr.*
        Edwin P. Voss, Jr.
        State Bar No. 20620300
        evoss@bhlaw.net
        Michael L. Martin
        State Bar No. 24108956
        mmartin@bhlaw.net
BROWN & HOFMEISTER, L.L.P.
740 East Campbell Road, Suite 800
Richardson, Texas  75081
214-747-6100 (Telephone)
214-747-6111 (Telecopier)

ATTORNEYS FOR DEFENDANT
CITY OF McKINNEY, TEXAS

## CERTIFICATE OF SERVICE

"No certificate of service is required when a paper is served by filing it with the court's electronic-filing system." Rule 5(d)(1)(B) of the Federal Rules of Civil Procedure.  This paper is served upon all counsel of record, therefore, because it was filed with the court's electronic-filing system on April 14, 2021.  E.Dist.Loc.R. CV-5(c).

                         /s/ *Edwin P. Voss, Jr.*
                         Edwin P. Voss, Jr.

# EXHIBIT A

Lane v. Rechtfertig | Cases | Texas | Westlaw

## WESTLAW CLASSIC

2017 WL 5653870
Only the Westlaw citation is currently available.
United States District Court, W.D. Texas, Austin Division.

**Lane v. Rechtfertig**
United States District Court, W.D. Texas, Austin Division.   January 25, 2017   |   Not Reported in Fed. Supp.   2017 WL 5653870   *(Approx. 7 pages)*

v.

B. R. RECHTFERTIG, Round Rock Police Officer in his official and
individual capacity, J. P. Keyes, Round Rock Police Officer in his official
and individual capacity, A. J. Rivera, Round Rock Police Officer in his
official and individual capacity, Round Rock Police Department, and City
of Round Rock, Defendants.

Cause No.: A–16–CA–00473–SS
Signed 01/25/2017

### Attorneys and Law Firms

Christiana Dijkman, Christiana Dijkman PC, South Padre Island, TX, Carl Joseph Kolb, Carl
J. Kolb, P.C., San Antonio, TX, for Plaintiff.

Archie Carl Pierce, Christopher Allen Shuley, Mike Thompson, Jr., Wright & Greenhill, P.C.,
Austin, TX, for Defendants.

### ORDER

SAM SPARKS, UNITED STATES DISTRICT JUDGE

**\*1** BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause,
and specifically Defendants' Motion to Dismiss [#29], Plaintiff Russell Lane, Jr.'s Response
[#36] in opposition, and Defendants' Reply [#37] in support. Having reviewed the
documents, the governing law, and the file as a whole, the Court now enters the following
opinion and orders.

#### Background

This is a civil rights action brought by Plaintiff Russell Lane Jr., whose dog was shot and
killed by Round Rock Police Officers on May 30, 2014. The defendants are Officer
Rechtfertig, Officer Keyes, and Officer Rivera (collectively individual Defendants), as well
as the City of Round Rock (the City). [1]

At 8:51 a.m. on May 30, 2014, Officer Rechtfertig responded to a residential alarm call at
Lane's home. Upon arriving at the residence, Officer Rechtfertig checked the exterior of the
home and its windows for evidence of forced entry. According to Lane, there was a sign
prominently posted on the front window which read, "Beware Rottweiler on Duty." Am.
Compl. [#26] at 18. Officer Rechtfertig saw no evidence of a forced entry, but noticed the
front door was slightly ajar. Officer Rechtfertig called for backup, and while alone at the
front door, yelled repeatedly into the residence to announce his presence. While waiting,
Officer Rechtfertig did not check with dispatch to determine whether the alert had been a
false alarm, even though Lane alleges he informed the alarm company it was in fact a false
alarm and the alarm company had in turn advised the Round Rock Police Department of
the false alarm.

Once the backup officers arrived, the police entered the residence to conduct a protective
sweep. During this protective sweep, the officers encountered Lane's 8-year-old Rottweiler
named Bullet. According to Lane, the dog was lying on a futon in the back bedroom when
the police arrived. As Bullet approached the officers, the officers, who were clearing a
hallway and bedroom area, shot Bullet multiple times, killing the dog.


EXHIBIT
A

**\*2** Lane contends the officers had no "justifiable cause" to use deadly force against Bullet, because Bullet was retreating from the officers when he was shot. In support of this contention, Lane cites Bullet's arthritis, which Lane alleges would have prevented Bullet from jumping off the futon and charging towards the officers, as the officers claimed. Moreover, Lane relies on a report prepared by James Crosby, an "expert on Animal Crime Scenes" and former police officer, who concludes the shooting did not occur in accordance with the officers' report. *See* Compl. [#1–6] Ex. 6 (Crosby Report). In his report, Crosby opines that based on the placement and angle of the wounds and the size of the hallway, the entry wounds on Bullet's right side could have only occurred if Officer Rivera shot at Bullet from the dining room entrance as the dog was retreating. Relying on Crosby's conclusion, Lane maintains Bullet was retreating from the officers, rather than charging at the officers, when Officer Rivera shot the dog.

Lane filed this lawsuit asserting § 1983 claims for unreasonable seizure and wrongful taking against the Individual Defendants, and municipal liability claims against the City for failure to properly train its officers regarding the use of lethal force during animal encounters. The Individual Defendants and the City jointly moved to dismiss this lawsuit, which the Court granted on August 25, 2016. *See* Order of Aug. 24, 2016 [#25]. The Court gave Lane fourteen days to cure the deficiencies in his original complaint. *Id.* at 2. Lane timely filed an amended complaint, which the Individual Defendants and the City now move to dismiss. Their motion to dismiss has been fully briefed and is ripe for the Court's consideration.

Analysis

**I. Legal Standard**
Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.,* 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

**II. Application**
Lane brings this § 1983 action against the Individual Defendants in their individual capacities and the City, alleging his Fourth and Fifth Amendment rights were violated when the Individual Defendants shot and killed his dog.[2] Section 1983 provides a cause of action to individuals whose federal rights have been violated by those acting under color or state law. *Doe v. Dall. Indep. Sch. Dist.,* 153 F.3d 211, 215 (5th Cir. 1998). Section 1983 is not itself a source of substantive rights; rather, it merely provides a method for vindicating federal rights conferred elsewhere. *See Albright v. Oliver,* 510 U.S. 266, 271 (1994). In order to state a claim under § 1983, a plaintiff must (1) allege a violation of rights guaranteed by the United States Constitution or federal law, and (2) show that the alleged deprivation was committed by a person acting under color of state law. *Doe,* 153 F.3d at 215.

**\*3** The Court addresses Lane's § 1983 claims against the Individual Defendants and the City separately below.

**A. Individual Capacity Claims against the Individual Defendants**

Lane v. Rechtfertig | Cases | Texas | Westlaw

The Individual Defendants move to dismiss Lane's claims under the Fourth and Fifth Amendments, contending they are entitled to qualified immunity because their actions were objectively reasonable under the circumstances. Qualified immunity protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, courts undertake a two-step analysis, asking "(1) whether facts alleged or shown by plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lytle v. Bexar Cty.*, 560 F.3d 404, 410 (5th Cir. 2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001) *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)).

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," *Pearson v. Callahan*, 555 U.S. 223, 233 (2009). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law," *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (internal quotation marks omitted). "[W]hile the Supreme Court has stated that 'courts should define the 'clearly established' right at issue on the basis of the 'specific context of the case,' it has also recently reminded [courts] that [they] 'must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions.' " *Luna v. Mullenix*, 773 F.3d 712, 724–25 (5th Cir. 2014) *rev'd on other grounds by* 136 S. Ct. 305 (2015) (quoting *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014)).

When an official invokes the qualified immunity defense, the burden shifts to the plaintiff to comply with a "heightened pleading" standard. *Schultea v. Wood*, 47 F.3d 1427, 1433–34 (5th Cir. 1995). This heightened pleading framework does not alter Rule 12(b)(6)'s mandate that the court accept the plaintiff's factual allegations as true. *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2003). However, this standard requires more than conclusory assertions; "[i]t requires claims of specific conduct and actions giving rise to a constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996). "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

### i. Unreasonable Seizure

*4 Lane contends the Individual Defendants violated his Fourth Amendment right to be free from unlawful seizure when they shot and killed his dog. The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides, "[t]he right of the people to be secure in their persons, houses, papers, and *effects*, against unreasonable searches and seizures, shall not be violated ...." U.S. CONST. amend. IV (emphasis added). The Fifth Circuit has held the killing of a pet dog can constitute a "seizure" of an individual's effects within the meaning of the Fourth Amendment. *See Stephenson v. McClelland*, 632 Fed.Appx. 177, 184 (5th Cir. 2015) (citing *Grant v. City of Hous.*, 625 Fed.Appx. 670, 674 (5th Cir. 2015)). Such a seizure violates the Fourth Amendment if it is objectively unreasonable. To determine whether a seizure was reasonable, the Fifth Circuit instructs courts to consider the totality of the circumstances, balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing government interests at stake." *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). This question is analyzed from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight[,]" recognizing that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397.

The scant factual allegations asserted in Lane's complaint are at times contradictory or based on bald speculation. For instance, in his amended complaint, Lane alleges the dog was retreating from the officers when he was shot. Am. Compl. [#26] ¶¶ 23, 26, 27. As noted, he relies on Crosby's report to support this allegation. But in Lane's response to the motion to dismiss, he claims the dog "was asleep in the back of the house" when he was shot. Resp. [#36] at 1. Yet even assuming the dog was retreating when he was shot, his retreat could have meant an advance on another officer, as the officers were spread out

Lane v. Rechterfig | Cases | Texas | Westlaw

during the protective sweep. Indeed, the only eyewitness account of the incident comes from Officers Rechterfig, Rivera, and Keyes, who all reported they observed the dog either charging Officer Rivera or growling and barking in an aggressive posture.

In an effort to disprove the officers' description of the encounter in their reports, Lane claims the dog's arthritis would have prevented him from charging the officers. But even assuming the truth of this assertion, there is no allegation the dog's arthritis would have prevented the dog from bearing his teeth threateningly or posturing aggressively. Were an officer to witness such behavior, it would not have been immediately obvious to an officer, who is forced to make a split-second judgment in a tense situation, that the dog could not in fact inflict any real harm.

Nevertheless, even assuming the scant and at times contradictory facts alleged in Lane's complaint are sufficient to state a claim for unreasonable seizure under the Fourth Amendment, they are insufficient to demonstrate a constitutional right was clearly established such that a reasonable officer in the Individual Defendants' situation would have understood their conduct violated that right. Officer Rechterfig had no advance notice of a dog on the property when he responded to the residence alarm call. Even though Lane alleges the sign posted on the front window warned visitors of the presence of a Rottweiler, there were no other visible signs of a dog, such as food bowls or toys. Nor did Officer Rechterfig hear or see a dog after he announced his presence at the doorway of the residence 5–10 times. Thus, the officers were surprised when a large Rottweiler appeared. Officers Rivera and Rechterfig, who were conducting a sweep of a hallway and bedroom area, made a split-second decision to act in self-defense in a tense, uncertain, and rapidly evolving situation. Qualified immunity shields the Individual Defendants from liability for this decision. *See Stephenson*, 632 Fed.Appx. at 185 (concluding the officer was entitled to qualified immunity where the officer shot a dog after being startled by a dog which was "showing its teeth"); *Grant*, 625 Fed.Appx. at 672 (granting qualified immunity where a surprised officer shot a dog when the dog showed its teeth and charged towards the officer's legs); *Romero v. Bexar Cty.*, 993 F. Supp. 2d 658, 662 (W.D. Tex. 2014) ("It is objectively reasonable for an officer to shoot a dog that he reasonably believes poses a threat."). Because Lane has failed to plead facts sufficient to defeat the Individual Defendants' qualified immunity defense, dismissal of his Fourth Amendment claim is warranted.

### ii. Unlawful Taking

*5 Lane alleges the Individual Defendants violated the Fifth Amendment by shooting and killing his dog without providing just compensation. The Takings Clause of the Fifth Amendment, made applicable to the states by the Fourteenth Amendment, provides, "nor shall private property be taken for public use, without just compensation." As many circuit courts have held, however, the Takings Clause does not apply to property damages "as the result of the government's exercise of its authority pursuant to some power other than the power of eminent domain." *Johnson v. Manitowoc Cty.*, 635 F.3d 331, 336 (7th Cir. 2011); *see also AmeriSource Corp. v. United States*, 525 F.3d 1149, 1154 (Fed. Cir. 2008) (citing *Bennis v. Michigan*, 516 U.S. 442, 452 (1996)). In responding to a residential alarm call and investigating a possible forced entry, the Individual Defendants acted pursuant to the state's police power. As explained above, the officers reasonably believed the dog posed a threat and made split-second judgments to act in self-defense. The shooting of Lane's dog, while unfortunate, occurred incident to a justified use of police powers. Because the facts alleged in Lane's amended complaint are insufficient to make out a claim for unlawful taking under the Fifth Amendment, his claim is subject to dismissal under Rule 12(b)(6).

### B. Municipal Liability Claim against the City

In his amended complaint, Lane advances two alternative theories of municipal liability: (1) the City delegated final decision-making power to the Individual Defendants to conduct protective sweeps of residences, such that the City may be held liable for the Individual Defendants' conduct; and (2) the City failed to train its police officers to determine when lethal force may be lawfully used against animals during protective sweeps of private residences. A municipality may not be held liable under § 1983 "solely because it employs a tortfeasor." *Bd. of Cty. Comm'rs to Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 403 (1997). Instead, to establish a municipality's liability under § 1983, a plaintiff must identify a municipal "policy" or "custom" that caused the plaintiff's constitutional injury. *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 694 (1978). Thus, "municipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)).

Lane v. Rechtfertig | Cases | Texas | Westlaw

As to Lane's first theory of municipal liability, Lane alleges the Individual Defendants had final decision-making authority, such that the Individual Defendants' conduct constituted the City's official policy. In this case, Lane alleges:

> [T]he City and/or Round Rock PD delegated full authority to and/or empowered the Individual Defendant Officers' policy in how they conduct investigations of private alarm at residences, how they conduct "protective sweeps" of private residences, how they determine whether a dog or other animal is present at a private residence before entering it to make a "protective sweep[,]" and how to handle an encounter with a dog when a dog is present in a private residence entered for the purposes of conducting a "protective sweep."

Am. Compl. [#1] ¶ 49. Noticeably absent from this lengthy description, however, is any specific factual allegations to support the claim that the City delegated final decision-making power to the Individual Defendants. Lane's conclusory allegations are therefore insufficient to show the Individual Defendants acted as the City's final policymakers.

As to Lane's second theory of municipal liability, Lane contends the City failed to train its officers regarding the use of lethal force against animals during protective sweeps of residences. To maintain a § 1983 claim for failure to train employees, a plaintiff must adequately plead that (1) the municipality's training procedures were inadequate, (2) the municipality was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused the violations in question. *Zarnow*, 614 F.3d at 170. "Deliberate indifference" is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," for which "[a] showing of simple or even heightened negligence will not suffice." *Valle v. City of Hous.*, 613 F.3d 536, 542, 547 (5th Cir. 2010). "[T]o satisfy the second prong and prove that the municipality acted with deliberate indifference, the plaintiff must generally 'show a pattern of violations and that the inadequate training or supervision was obvious and obviously likely to result in a constitutional violation.' " *Byers v. Navarro Cty.*, No. 3:09–CV–1792–D, 2012 WL 677203, at *16 n.39 (N.D. Tex. Mar. 1, 2012) (quoting *Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010)) (internal quotation marks and brackets omitted). Lane offers no facts to enable the Court to draw the reasonable inference that the need for training was so obvious, and the inadequate of training so likely to result in the violation of constitutional rights, that the City's policymakers acted with deliberate indifference. *See Valle*, 613 F.3d at 547. Indeed, Lane has failed to identify a single similar incident—much less "show a pattern of violations"— where the Round Rock police shot and killed a dog during a protective sweep of a residence. Lane's municipal liability claims therefore fail on the pleadings.

## Conclusion

*6 This is Lane's second attempt to satisfy federal pleading requirements. Given the foregoing analysis, the Court is convinced further leave to amend would be futile. Lane's claims are therefore dismissed with prejudice.

Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss [#29] is GRANTED; and

IT IS FINALLY ORDERED that all claims brought by Plaintiff Russell Lane, Jr. in the above-styled cause are DISMISSED WITH PREJUDICE.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 5653870

**Footnotes**

1    Lane also sues the Round Rock Police Department. But because the Round Rock Police Department is not a legal entity capable of being sued, Lane's claims against the Round Rock Police Department are dismissed. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (holding police departments are governmental subdivisions which lack the capacity for independent legal action). Ordinarily, the Court would construe Lane's claims against the Round Rock City Police Department as claims against the City of

Lane v. Rechtfertig | Cases | Texas | Westlaw

Round Rock. However, such construction is unnecessary because Lane has also sued the City of Round Rock.

Similarly, the Court dismisses Lane's claims against the Round Rock officers in their official capacities, as the real party in interest is the City of Round Rock. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity.").

2          In his amended complaint, Lane asserted state law claims for conversion and negligent infliction of emotional distress against the City. Yet Lane declined to defend these claims in response to the defendants' exhaustive motion to dismiss. Failing to do so constitutes abandonment of his state law claims. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding the plaintiff abandoned her claim when she failed to defend it in response to the defendant's motion to dismiss). To the extent Lane has not abandoned these claims, they are barred by sovereign immunity. Absent a waiver of immunity by the legislature, a governmental entity like the City is immune from tort liability. *See Harris Cty. v. Dillard*, 883 S.W.2d 166, 168 (Tex. 1994). The Texas Tort Claims Act does not waive immunity for intentional torts, such as assault, battery, or conversion. TEX. CIV. PRAC. & REM. CODE § 101.057; *see Univ. of Hous. Main Campus v. Simons*, No. 01-02-00366-CV, 2002 WL 31388906, at *2 (Tex. App.—Houston [1st Dist.] Oct.24, 2002) (conversion is an intentional tort for which sovereign immunity is not waived). Nor does the Act waive immunity for "allegations against a governmental unit arising out of the same conduct that formed the basis of the intentional tort claims against its employee." *Goodman v. Harris Cty.*, 571 F.3d 388, 394 (5th Cir. 2009). In this case, Lane's negligent infliction of emotional distress claim arises from the same conduct that forms the basis of his conversion claim. Because neither of Lane's common law tort claims falls into any of the categories for which sovereign immunity is waived, Lane's claims are dismissed.

**End of Document**          © 2021 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT B

Lech v. Jackson | Cases | Colorado | Westlaw

## WESTLAW CLASSIC

791 Fed.Appx. 711
This case was not selected for publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions
issued on or after Jan. 1, 2007. See also U.S.Ct. of App. 10th Cir. Rule 32.1

**Lech v. Jackson**
United States Court of Appeals, Tenth Circuit.    October 29, 2019    791 Fed.Appx. 711    *(Approx. 10 pages)*

Leo LECH; Alfonsia Lech; John Lech, Plaintiffs - Appellants,

v.

Chief John A. JACKSON; Commander Dustin Varney; Officer Mic Smith;
Officer Jeff Mulqueen; Officer Austin Speer; Officer Jared Arthur; Officer
Bryan Stuebinger; Officer Juan Villalva; Officer Andy Wynder; Officer
Anthony Costarella; Officer Rob Hasche, of the Greenwood Village Police
Department, individually and in their official capacities; The City of
Greenwood Village, Defendants - Appellees.
Colorado Municipal League; International Municipal Lawyers
Association, Amici Curiae.

No. 18-1051
FILED October 29, 2019

### Synopsis
**Background:** Homeowners brought takings action against city and police officers after
home was damaged during police attempt to apprehend criminal suspect inside home. The
United States District Court for the District of Colorado, Philip A. Brimmer, J., granted city's
and officer's motion for summary judgment, 2018 WL 10215862, and homeowners
appealed.

**Holdings:** The Court of Appeals held that:

1 when the state acts pursuant to its police power, rather than the power of eminent
domain, its actions do not constitute a taking for purposes of the Takings Clause, and

2 as a matter of first impression, police officers' act in damaging home while attempting to
apprehend criminal suspect barricaded inside home fell within scope of lawful police power.

Affirmed.

### West Headnotes (2)

Change View

1   **Eminent Domain**  ⟡  What Constitutes a Taking;  Police and Other Powers
    Distinguished
    When the state acts pursuant to its police power, rather than the power of
    eminent domain, its actions do not constitute a taking for purposes of the Takings
    Clause; this distinction remains dispositive in cases that involve the direct
    physical appropriation or invasion of private property. U.S. Const. Amend. 5.

    9 Cases that cite this headnote

2   **Eminent Domain**  ⟡  Criminal justice in general
    Police officers' act in damaging home while attempting to apprehend criminal
    suspect barricaded inside home fell within scope of lawful police power, and thus
    was not a compensable taking, even though homeowners were innocent. U.S.
    Const. Amend. 5.

    2 Cases that cite this headnote



Lech v. Jackson | Cases | Colorado | Westlaw

**\*712** (D.C. No. 1:16-CV-01956-PAB-MJW) (D. Colorado)

**Attorneys and Law Firms**

Rachel B. Maxam, Rachel B. Maxam Law Offices, Denver, CO, for Plaintiffs-Appellants

Ashley Hernandez-Schlagel, Marni Nathan Kloster, J. Andrew Nathan, Nicholas C. Poppe, Nathan Dumm & Mayer, Denver, CO, for Defendants-Appellees Chief John A. Jackson, Commander Dustin Varney, Officer Mic Smith, Officer Jeff Mulqueen, Officer Austin Speer, Officer Jared Arthur, Officer Bryan Stuebinger, Officer Juan Villalva, Officer Andy Wynder, Officer Anthony Costarella, Officer Rob Hasche, The City of Greenwood Village

Dianne M. Criswell, Colorado Municipal League, Denver, CO, for Amici Curiae Colorado Municipal League, International Municipal Lawyers Association

Before HOLMES, McKAY, and MORITZ, Circuit Judges.

ORDER AND JUDGMENT[*]

Nancy L. Moritz, Circuit Judge

Leo, Alfonsia, and John Lech (the Lechs) sued the City of Greenwood Village (the City) and several of its police officers (the officers),[1] alleging violations of the Takings Clause of the Fifth Amendment of the United States Constitution and Article II, Section 15 of the Colorado Constitution. In support of their Takings Clause claims, the Lechs alleged the defendants violated their constitutional rights—first by damaging the Lechs' Colorado home during an attempt to apprehend a criminal suspect and later by refusing to compensate the Lechs for this alleged taking. The district court granted the defendants' motion for summary judgment, concluding in relevant part that (1) when a state acts pursuant to its police power, rather than the power of eminent domain, its actions do not constitute a taking; (2) because the officers destroyed the Lechs' home while attempting to enforce the state's criminal laws, they acted pursuant to the state's police power; and (3) any damage to the Lechs' home therefore fell outside the ambit of the Takings Clause.

The Lechs appeal, arguing the district court erred in granting the defendants' motion for summary judgment. In support, they first assert the district court erred in "draw[ing] a hard line between" the power of eminent domain and the state's police power. Aplt. Br. 16. Alternatively, they argue that even if such a "line" exists, the district court erred in ruling that the defendants acted pursuant to the state's police power here. *Id.* For the reasons discussed below, we reject these arguments and affirm the district court's order.[2]

**\*713 Background**

We take the bulk of the following facts from the district court's order granting summary judgment to the defendants. In doing so, we view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the Lechs.[3] *See Fassbender v. Correct Care Sols., LLC,* 890 F.3d 875, 882 (10th Cir. 2018).

Leo and Alfonsia Lech purchased the home at 4219 South Alton Street in Greenwood Village, Colorado, for their son, John Lech. At the time of the relevant events, John Lech lived at the home with his girlfriend and her nine-year-old son. On June 3, 2015, officers from the City's police department responded to a burglar alarm at the Lechs' home and learned that Robert Seacat, an armed criminal suspect who was attempting to evade capture by the Aurora Police Department, was inside. Although the nine-year-old son of John Lech's girlfriend was present at the time of the break-in, he was able to exit the home safely.

To prevent Seacat from escaping, the officers positioned their vehicles in the driveway of the Lechs' home. Seacat then fired a bullet from inside the garage and struck an officer's car. At that point, the officers deemed the incident a high-risk, barricade situation.[4] For approximately five hours, negotiators attempted to convince Seacat to surrender. After these efforts to negotiate proved unsuccessful, officers employed increasingly aggressive tactics: they fired several rounds of gas munition into the home, breached the home's doors with a BearCat armored vehicle so they could send in a robot to deliver a "throw phone" to Seacat, and used explosives to create sight lines and points of entry to the home. App. vol. 2, 380. The officers also sent in a tactical team to apprehend Seacat. But Seacat fired at the officers while they were inside, requiring them to leave. When even these more

Lech v. Jackson | Cases | Colorado | Westlaw

aggressive tactics failed to draw Seacat out, officers used the BearCat to open multiple holes in the home and again deployed a tactical team to apprehend Seacat.

This time, the tactical team was successful: it managed to disarm Seacat and take him into custody. But as a result of this 19-hour standoff, the Lechs' home was rendered uninhabitable. And although the City offered to help with temporary living expenses when the Lechs demolished and rebuilt their home, it otherwise denied liability for the incident and declined to provide any further compensation.

The Lechs then sued the defendants, alleging, in relevant part, that the defendants violated the Takings Clause of both the United States and Colorado Constitutions by damaging the Lechs' home without providing just compensation. The district court rejected this argument. *714 In doing so, it first distinguished between the state's "eminent[-]domain authority, which permits the taking of private property for public use," and the state's "police power, which allows [it] to regulate private property for the protection of public health, safety, and welfare." *Id.* at 390. The district court then ruled that although a state may "trigger[ ] the requirement of just compensation" by exercising the former, a state's exercise of the latter does not constitute a taking and is therefore "noncompensable." *Id.* at 390–91.

Next, the district court determined that the state's police power encompasses "the enforcement of" a state's "criminal laws." *Id.* at 397. And because the officers damaged the Lechs' home while attempting to apprehend a criminal suspect, the district court reasoned, their actions fell within the scope of "the state's police powers and not the power of eminent domain." *Id.* at 399. Thus, the district court concluded, any damage the officers caused to the Lechs' home did not constitute a taking for purposes of the Takings Clause. Accordingly, it granted the defendants' motion for summary judgment on the Lechs' Takings Clause claims.[5] The Lechs now appeal the district court's order.

**Analysis**

The parties agree that the Takings Clause of the Fifth Amendment "requires compensation when a taking occurs." *Alto Eldorado P'ship v. Cty. of Santa Fe*, 634 F.3d 1170, 1174 (10th Cir. 2011); *see also* U.S. Const. amend. V (providing that private property shall not "be taken for public use, without just compensation").[6] But they disagree about whether a taking occurred here. According to the Lechs, the defendants' conduct amounts to a taking because (1) the officers physically intruded upon and ultimately destroyed their home and (2) such a "physical appropriation of property gives rise to a *per se* taking." Aplt. Br. 9. The defendants, on the other hand, argue that no taking occurred because the officers damaged the Lechs' home pursuant to the police power, not the power of eminent domain. The district court agreed with the defendants: it concluded that "the tactical decisions that ultimately destroyed [the Lechs'] home were made pursuant to the state's police powers and not the power of eminent domain." App. vol. 2, 399. Thus, the district court ruled, the defendants' conduct did not constitute a taking for purposes of the Taking Clause.

In challenging the district court's ruling on appeal, the Lechs advance two general arguments. First, they assert the district court erred in ruling that when the government acts pursuant to its police power, its actions cannot constitute a taking for *715 purposes of the Takings Clause. Second, they argue that even assuming the distinction between the state's police power and its power of eminent domain is dispositive of the taking question, the district court erred in concluding that the officers' conduct here fell within the scope of the state's police power merely because the officers damaged the Lechs' home while "enforcing the law." Aplt. Br. 23. In evaluating these arguments, we review de novo the district court's decision to grant summary judgment to the defendants, applying the same standard as the district court. *Morden v. XL Specialty Ins.*, 903 F.3d 1145, 1151 (10th Cir. 2018). "Summary judgment is appropriate if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1178 (10th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)).

**I. Takings, the Police Power, and the Power of Eminent Domain**

On appeal, the Lechs first argue the district court erred in drawing a "hard line" between those actions the government performs pursuant to its power of eminent domain and those it performs pursuant to its police power. Aplt. Br. 16. The Lechs do not dispute that the Supreme Court has recognized such a distinction in the context of *regulatory* takings. *See, e.g., Mugler v. Kansas*, 123 U.S. 623, 668–69, 8 S.Ct. 273, 31 L.Ed. 205 (1887) (distinguishing between "the state's power of eminent domain"—under which "property may not be taken for public use without compensation"—and state's "police powers"—which are not "burdened with the condition that the state must compensate [affected] individual owners for pecuniary losses they may sustain"). But the Lechs suggest this distinction is not

Lech v. Jackson | Cases | Colorado | Westlaw

dispositive in the context of *physical* takings. *Compare Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005) (describing physical takings as "direct government appropriation or physical invasion of private property"), *with id.* at 539, 125 S.Ct. 2074 (describing regulatory takings as "regulatory actions that are functionally equivalent" to physical takings). Specifically, the Lechs maintain that *any* "physical appropriation of [private] property" by the government—whether committed pursuant to the power of eminent domain or the police power—"gives rise to a *per se* taking" and thus requires compensation under the Takings Clause. Aplt. Br. 9.

But contrary to the Lechs' position, at least three of our sibling circuits and the Court of Federal Claims have expressly relied upon the distinction between the state's police power and the power of eminent domain in cases involving the government's direct physical interference with private property. For instance, in *AmeriSource Corp. v. United States*, the Federal Circuit held that no taking occurred where the government physically seized (and ultimately "rendered worthless") the plaintiff's pharmaceuticals "in connection with [a criminal] investigation" because "the government seized the pharmaceuticals in order to enforce criminal laws"—an action the Federal Circuit said fell well "within the bounds of the police power." 525 F.3d 1149, 1150, 1153–54 (Fed. Cir. 2008) (citing *Bennis v. Michigan*, 516 U.S. 442, 443–44, 462–63, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996)); *see also, e.g., Zitter v. Petruccelli*, 744 F. App'x 90, 93, 96 (3d Cir. 2018) (unpublished) (relying on distinction between power of eminent domain and police power to hold that no taking occurred where officials physically seized plaintiff's oysters and oyster-farming equipment (citing *Bennis*, 516 U.S. at 452, 116 S.Ct. 994)); *Johnson v. Manitowoc Cty.*, 635 F.3d 331, 333–34, 336 (7th Cir. 2011) (relying *716 on distinction between power of eminent domain and police power to hold that no taking occurred where authorities physically damaged plaintiff's home (citing *Bennis*, 516 U.S. at 452, 116 S.Ct. 994)); *Bachmann v. United States*, 134 Fed. Cl. 694, 696 (Fed. Cl. 2017) (holding that "[w]hen private property is damaged incident to the exercise of the police power, such damage"—even when physical in nature—"is not a taking for the public use, because the property has not been altered or turned over for public benefit" (citing *Nat'l Bd. of Young Men's Christian Ass'ns v. United States*, 395 U.S. 85, 92–93, 89 S.Ct. 1511, 23 L.Ed.2d 117 (1969))).

Further, although the Supreme Court has never expressly invoked this distinction in a case alleging a physical taking, it has implicitly indicated the distinction applies in this context. *See, e.g., Bennis*, 516 U.S. at 443–44, 453–54, 116 S.Ct. 994 (rejecting plaintiff's Takings Clause claim where state court ordered vehicle "forfeited as a public nuisance" without requiring state to compensate plaintiff, who shared ownership of vehicle with her husband; reasoning that when state acquires property "under the exercise of governmental authority *other than the power of eminent domain*," government is not "required to compensate an owner for [that] property" (emphasis added));[7] *Miller v. Schoene*, 276 U.S. 272, 277, 279–80, 48 S.Ct. 246, 72 L.Ed. 568 (1928) (rejecting constitutional challenge to statute that allowed state to condemn and destroy "cedar trees infected by cedar rust," even though statute did not require state to compensate owners for any trees it destroyed; characterizing statute as valid "exercise of the police power").[8]

And we have likewise implicitly treated the distinction between the police power and the power of eminent domain as dispositive of the taking question, even when the interference at issue is physical, rather than regulatory, in nature. For instance, in *Lawmaster v. Ward*, we held that the plaintiff failed to establish a Takings Clause violation where federal agents physically damaged his property—by, for example, tearing out door jambs and removing pieces of interior trim from his home—while executing a search warrant. 125 F.3d 1341, 1344–46, 1351 (10th Cir. 1997). In doing so, we reasoned that the plaintiff "fail[ed] to allege any facts showing how his property was taken for public *717 use." *Id.* at 1351. And although we did not expressly note as much in *Lawmaster*, we have previously equated the state's power to "take[ ] property for public use" with the state's power of eminent domain, as opposed to its police power. *Lamm v. Volpe*, 449 F.2d 1202, 1203 (10th Cir. 1971) ("Police power should not be confused with eminent domain, in that the former controls the use of property by the owner for the public good, authorizing its regulation and destruction without compensation, whereas the latter takes property for public use and compensation is given for property taken, damaged[,] or destroyed.").[9] Thus, by holding that the plaintiff in *Lawmaster* could not show a Fifth Amendment violation because he failed to show "how his property was taken for public use," we implicitly held his Takings Clause claim failed because he could not show the government acted pursuant to its power of eminent domain, rather than pursuant to its police power. 125 F.3d at 1351; *see also McKenna v. Portman*, 538 F. App'x 221, 223–24 (3d Cir. 2013) (unpublished) (relying in part on *Lawmaster* to hold that because defendants exercised state's police power—rather than power of eminent

domain—when they seized plaintiffs' property pursuant to search warrant and subsequently damaged it, defendants "did not engage in a 'taking' under the Fifth Amendment").

Nevertheless, despite these persuasive authorities, the Lechs urge us to disregard the distinction between the police power and the power of eminent domain in resolving this appeal. In support, they point out that "the Takings Clause 'was designed to bar [g]overnment from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' " Aplt. Br. 13 (quoting *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960)). And they argue that upholding the district court's summary-judgment ruling would do just that: it would force the Lechs to bear alone the cost of actions the defendants undertook in an effort to "apprehend[ ] a criminal suspect"—actions that were clearly "for the benefit of the public" as a whole. *Id.* at 13, 33.

We do not disagree that the defendants' actions benefited the public. But as the Court explained in *Mugler*, when the state acts to preserve the "safety of the public," the state "is not, and, consistent[ ] with the existence and safety of organized society, cannot be, burdened with the condition that the state must compensate [affected property owners] for pecuniary-losses-they-may-sustain" in the process. 123 U.S. at 669, 8 S.Ct. 273. Thus, "[a]s unfair as it may seem," the Takings Clause simply "does not entitle all aggrieved owners to recompense." *AmeriSource Corp.*, 525 F.3d at 1152, 1154.

1    Accordingly, we reject the Lechs' first broad challenge to the district court's ruling and hold that when the state acts pursuant to its police power, rather than the power of eminent domain, its actions do not constitute a taking for purposes of the Takings Clause. And we further hold that this distinction remains dispositive in cases that, like this one, involve the direct physical appropriation or invasion of private property. But that does not end the matter. We must next determine whether, as the district court ruled, the defendants acted pursuant to the state's police power here.

**\*718 II. Law Enforcement and the Police Power**

"[T]he police power encompasses 'the authority to provide for the public health, safety, and morals.' " *Dodger's Bar & Grill, Inc. v. Johnson Cty. Bd. of Cty. Comm'rs*, 32 F.3d 1436, 1441 (10th Cir. 1994) (quoting *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 569, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991)). The "contours of [the police power] are difficult to discern." *AmeriSource Corp.*, 525 F.3d at 1153. But as discussed above, we have described the police power in contrast to the power of eminent domain: "the former controls the use of property by the owner for the public good," while the latter "takes property for public use." *Lamm*, 449 F.2d at 1203.

2    The parties have not pointed us to any Tenth Circuit authority that affirmatively resolves whether the defendants' conduct here damaged the Lechs' home for the public good or for public use. But the Court of Federal Claims has applied this distinction to facts that are nearly identical to those at issue here. *See Bachmann*, 134 Fed. Cl. 694. In *Bachmann*, the United States Marshals Service "used gunfire, smoke bombs, tear gas, a battering ram, and a robot to gain entry" to the plaintiffs' rental property, which— unbeknownst to the plaintiffs—had become a hideout for a fleeing fugitive. *Id.* at 695. The plaintiffs then sued the Marshals Service, alleging the damage to their property constituted a taking under the Fifth Amendment. *Id.* The Marshals Service moved to dismiss, arguing that because it acted under the police power, any damage it caused to the plaintiffs' property in the process "could not amount to a compensable Fifth Amendment taking." *Id.*

Relying in large part on the Federal Circuit's decision in *AmeriSource*, the Court of Federal Claims agreed with the Marshals Service and granted the motion to dismiss. *Id.* at 695–97 (citing *AmeriSource*, 525 F.3d at 1153–55). Critically, in doing so, it rejected the plaintiffs' argument that "when law enforcement officials damage private property in the process of enforcing criminal law, they ... take private property for public use." *Id.* at 695. Instead, the court reasoned, the Marshals Service damaged plaintiffs' property while "us[ing] perhaps the most traditional function of the police power: entering property to effectuate an arrest or a seizure." *Id.* at 697. Thus, the court concluded, the plaintiffs did not suffer "a taking of their property for public use," and their Fifth Amendment claim failed as a result. *Id.* at 698.

Notably, in reaching this conclusion, the Court of Federal Claims addressed the potential distinction between (1) cases in which "law enforcement officials seize and retain [personal] property as the suspected instrumentality or evidence of a crime" and (2) cases in which government officials inflict damage to real property that is "incidental to the exercise of the police power." *Id.* at 696–98. And the Lechs attempt to invoke the same distinction here: they argue that although the police power encompasses the seizure of personal property

Lech v. Jackson | Cases | Colorado | Westlaw

that is "caught up in criminal activity" or is "evidence of a crime," it does not encompass "the destruction of an entire home in furtherance of apprehending an uncooperative suspect." Aplt. Br. 21–22. But like the Court of Federal Claims, we see no "principled reason" to draw such a distinction. *Bachmann*, 134 Fed. Cl. at 698. Indeed, just like the house at issue in *Bachmann*, the Lechs' home "had become instrumental to criminal activity"—it was serving as a hideout for a fugitive. *Id.* at 697. Thus, just as in *Bachmann*, "the damage caused in the course of arresting a fugitive on plaintiffs' property was not a taking for public use, but rather it was an exercise of the police power." *Id.*

**\*719** The Lechs resist this approach, insisting that if we define the police power broadly enough to encompass conduct like the type at issue here and in *Bachmann*, it will amount to a "federally unprecedented expansion" of that power. Aplt. Br. 28. In support, the Lechs first insist that the police power encompasses only the state's "power to *establish* laws"—as opposed to the power to "enforce[ ]" those laws. Aplt. Br. 28. Yet the Lechs expressly concede elsewhere in their brief that the police power encompasses the power "to make and *enforce* laws." Aplt. Br. 30 (emphasis added). And caselaw supports this concession. *See, e.g., AmeriSource Corp.*, 525 F.3d at 1153 ("The government's seizure of property *to enforce criminal laws* is a traditional exercise of the police power that does not constitute a 'public use.' " (emphasis added) (citation omitted)). Thus, we reject the Lechs' effort to limit the police power to actions that establish law, rather than merely enforce it.

We likewise reject the Lechs' assertion that the police power does not encompass the state's ability to seize property from an *innocent* owner. This argument is not without support. *See, e.g., Wegner v. Milwaukee Mut. Ins. Co.*, 479 N.W.2d 38, 41–42 (Minn. 1991) (holding that where "innocent third party's property [was] damaged by the police in the course of apprehending a suspect," such damage was inflicted "for a public use"). Nevertheless, despite "the considerable appeal of this position as a matter of policy," we join the Federal Circuit in rejecting this argument as a matter of law. *AmeriSource Corp.*, 525 F.3d at 1154–55 ("[S]o long as the government's exercise of authority was pursuant to some power other than eminent domain, then the plaintiff has failed to state a claim for compensation under the Fifth Amendment. The innocence of the property owner does not factor into the determination." (citation omitted) (citing *Bennis*, 516 U.S. at 453, 116 S.Ct. 994)).

Finally, contrary to the Lechs' position, we see no indication that defining the police power broadly enough to encompass the defendants' actions in this case will signal to police they may "act with impunity to destroy property" or deprive them of "reason to limit the destruction" they cause simply "because they will not bear the burden of the cost and will be absolved of any responsibility" for their actions. Aplt. Br. 31. This argument overlooks *other* limits placed on the police power. Indeed, even the Lechs concede that the police power is subject to the requirements of the Due Process Clause. *See Lambert v. California*, 355 U.S. 225, 228, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957); *AmeriSource*, 525 F.3d at 1154 ("As expansive as the police power may be, it is not without limit. The limits, however, are largely imposed by the Due Process Clause."); *Lowther v. United States*, 480 F.2d 1031, 1033–34 (10th Cir. 1973) (holding that where government "destroyed appellee's property without having any authority in law to do it," its actions were "contrary to the [D]ue [P]rocess [C]lause of the Fifth Amendment"). And as the defendants point out, police officers who willfully or wantonly destroy property may also be subject to tort liability. *See, e.g.*, Colo. Rev. Stat. § 24-10-118(2)(a).

### Conclusion

Because (1) the defendants' law-enforcement actions fell within the scope of the police power and (2) actions taken pursuant to the police power do not constitute takings, the defendants are entitled to summary judgment on the Lechs' Takings Clause claims. We therefore affirm the district court's ruling.

### All Citations

791 Fed.Appx. 711

### Footnotes

\*       This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

Lech v. Jackson | Cases | Colorado | Westlaw

1    Where appropriate, we refer to the City and the officers collectively as the defendants.

2    Because we may affirm the district court's order based solely on its conclusion that the defendants' law-enforcement efforts fell within the scope of the police power (and therefore fell outside the scope of the Takings Clause), we need not and do not address whether the Lechs' Takings Clause claims *also* fall under what the district court referred to as the "emergency exception" to the Takings Clause. App. vol. 2, 398.

3    The defendants filed a supplemental appendix that contains, among other things, documents from the fleeing suspect's related criminal proceedings. Because we see no indication that the defendants submitted these documents to the district court, we decline to consider them. *See John Hancock Mut. Life Ins. Co. v. Weisman*, 27 F.3d 500, 506 (10th Cir. 1994) ("This court has held that it cannot, in reviewing a ruling on summary judgment, consider evidence not before the district court.").

4    According to the police department's manual, a high-risk situation is one that involves "[t]he arrest or apprehension of an armed or potentially armed subject where the likelihood of armed resistance is high." Supp. App. vol. 1, 27. A barricade situation involves a "standoff created by an armed or potentially armed suspect ... who is refusing to comply with police demands for surrender." *Id.*

5    The Lechs also alleged various other claims. But they do not challenge the district court's resolution of those claims on appeal. Accordingly, we discuss the Lechs' remaining claims only to the extent they are relevant to our Takings Clause analysis.

6    The Colorado Constitution contains similar, albeit not identical, language. *See* Colo. Const. art. II, § 15 ("Private property shall not be taken *or damaged*, for public or private use, without just compensation." (emphasis added)). Notably, the Lechs acknowledged in district court that their rights under the state and federal Takings Clauses are "essentially the same." App. vol. 2, 307. The district court agreed, ruling that because the Colorado Supreme Court has interpreted the state Takings Clause consistently with the federal Takings Clause, the Lechs' Takings Clause claims could "be considered together." *Id.* at 389 n.9; *cf. Animas Valley Sand & Gravel, Inc. v. Bd. of Cty. Comm'rs*, 38 P.3d 59, 63–64 (Colo. 2001). Because the Lechs do not challenge this aspect of the district court's ruling on appeal, we likewise analyze their state and federal Takings Clause claims collectively.

7    In *Bennis*, the Court did not expressly characterize the forfeiture action as a use of the state's police power. But the Court has previously described forfeitures in this manner. *See, e.g., Van Oster v. Kansas*, 272 U.S. 465, 467, 47 S.Ct. 133, 71 L.Ed. 354 (1926) ("[A] state in the exercise of its police [power] may forfeit property...."). Further, in *Bennis*, the Court noted that the state's actions were motivated by its desire to "deter illegal activity that contributes to neighborhood deterioration and unsafe streets." 516 U.S. at 453, 116 S.Ct. 994. And these are classic markers of the state's police power. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) ("Throughout our history the several [s]tates have exercised their police powers to protect the health and safety of their citizens."). Finally, other courts have interpreted *Bennis* as a police-power case. *See, e.g., Rhaburn v. United States*, 390 F. App'x 987, 988 (Fed. Cir. 2010) (unpublished) ("In *Bennis* ... [t]he Court ruled that no taking had occurred, relying on the nature of the government power exercised to take the property, *i.e.*, the police power.").

8    The nature of the plaintiffs' constitutional claim in *Miller* is not entirely clear from the Court's language. But the Court has repeatedly cited *Miller* as part of its Takings Clause jurisprudence. *See, e.g., Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 490, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987) (characterizing *Miller* as "holding that the Takings Clause did not require the State of Virginia to compensate the owners of cedar trees for the value of the trees that the [s]tate had ordered destroyed").

Lech v. Jackson | Cases | Colorado | Westlaw

9          Notably, although the defendants discuss *Lamm* in their response brief, the
Lechs do not address it in their reply brief.

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Westlaw. © 2021 Thomson Reuters    Privacy Statement    Accessibility    Supplier Terms    Contact Us    1-800-REF-ATTY (1-800-733-2889)    Improve Westlaw    THOMSON REUTERS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| VICKI BAKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-0176-ALM |
| | § | |
| CITY OF McKINNEY, TEXAS, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## ORDER GRANTING DEFENDANT'S
## RULE 12(b)(1) AND RULE 12(b)(6) MOTION TO DISMISS

On April 14, 2021, Defendant City of McKinney's Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss ("Defendant's Motion") was filed.  The Court, having considered Defendant's Motion, all supporting briefs, responses, replies and any other filings related thereto, finds that Defendant's Motion should be granted.

IT IS, THEREFORE, ORDERED that Defendant City of McKinney's Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss is hereby GRANTED in its entirety.

It is further ORDERED that each of Plaintiff's claims brought against Defendant are dismissed with prejudice.

ORDER GRANTING DEFENDANT'S RULE 12(b)(1) and RULE 12(b)(6) MOTION TO DISMISS
– Solo Page

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

VICKI BAKER, §
§
          Plaintiff, §
§
v. § CIVIL ACTION NO. 4:21-CV-0176-ALM
§
CITY OF McKINNEY, TEXAS, §
§
          Defendant. §
§

**DEFENDANT CITY OF McKINNEY'S REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANT'S RULE 12(b)(1) AND RULE 12(b)(6) MOTION TO DISMISS**

Edwin P. Voss, Jr.
State Bar No. 20620300
evoss@bhlaw.net

Michael L. Martin
State Bar No. 24108956
mmartin@bhlaw.net

BROWN & HOFMEISTER, L.L.P.
740 East Campbell Road, Suite 800
Richardson, Texas  75081
214-747-6100 (Telephone)
214-747-6111 (Telecopier)

ATTORNEYS FOR DEFENDANT
CITY OF McKINNEY, TEXAS

May 5, 2021



## TABLE OF CONTENTS

Table of Contents ....................................................................................................... i

Index of Authorities ................................................................................................... ii

I.      Introduction ...................................................................................................... 1

II.     Statement of the Issues to be Decided by the Court ......................................... 1

III.    Baker's Allegations .......................................................................................... 1

IV.     Arguments and Authorities ............................................................................... 2

        A.      Rule 12(b)(1) Motion: The Appropriate Legal Standards ...................... 2

                1.      The Complaint Fails to Establish the Existence of a Federal Question ....... 3

                2.      The Complaint Fails to Establish Supplemental Jurisdiction ..................... 7

        B.      Rule 12(b)(6) Motion: The Appropriate Legal Standards ...................... 7

                1.      The Complaint Fails to Establish
                        Municipal Liability Under Section 1983 ...................................... 7

                2.      The Complaint Fails to Establish the Existence of a
                        Fifth Amendment Violation .......................................................... 9

                3.      Baker's Takings Claim Under the
                        Texas Constitution Should Be Dismissed ...................................... 9

                        A.      Baker Alleges a Tort Claim ............................................. 9

                        B.      Baker's Reliance on *Steele v. City of Houston* is Misguided ......... 10

                4.      The Court Should Decline to Exercise Supplemental Jurisdiction ............ 10

Signature Block         ............................................................................................. 11

Certificate of Service  ............................................................................................. 11

## INDEX OF AUTHORITIES

**Cases**

*AmeriSource Corp. v. United States*, 525 F.3d 1149 (Fed. Cir. 2008) ........................................... 5

*Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23 (2012) ........................................ 5

*Armstrong v. United States,* 364 U.S. 40 (1960) ......................................................................... 4

*Bachmann v. United States,* 134 Fed. Cl. 694 (Fed. Cl. 2017) ...................................................... 6

*Ballard v. Burton*, 444 F.3d 391 (5th Cir. 2006) ...................................................................... 6-7

*Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397 (1997) ......................... 8

*Bell v. Hood*, 327 U.S. 678 (1946) .............................................................................................. 3

*Bockweg v. Anderson*, 428 S.E.2d 157 (N.C. 1993) ...................................................................... 7

*Caswell Realty Assoc. I, L.P. v. Andrews Co.*, 496 S.E.2d 607 (N.C. Ct.App. 1998) ................... 7

*Chavarin v. City of El Paso*, 2011 WL 13234975 (W.D. Tex., No. EP-10-CV-0339-KC,
     Apr. 25, 2011.) ....................................................................................................................... 8

*Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344 (5th Cir. 1985) ....................................... 2

*First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304 (1987) ....... 4

*Forgan v. Howard Cnty., Tex.*, 494 F.3d 518 (5th Cir. 2007) ....................................................... 8

*Freeman v. Indiana,* 2019 WL 357051 (N.D. Ind., No. 1:17-CV-317, Jan. 29, 2019) ................. 6

*Gate Guard Servs., L.P. v. Perez*, 792 F.3d 554 (5th Cir. 2015) ................................................... 6

*Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591 (Tex. 2011) .................... 9

*Holland/Blue Streak v. Barthelemy*, 849 F.2d 987 (5th Cir. 1988) ...................................... 2, 3, 5

*Horne v. Dep't of Agriculture*, 576 U.S. 350 (2015) ................................................................... 4

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007) .............................................. 1

*John Corp. v. City of Houston*, 214 F.3d 573 (5th Cir. 2000) .................................................. 3, 4

*Johnson v. Manitowoc County,* 635 F.3d 331 (7th Cir. 2011) ...................................................... 6

*Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) .............................. 7

*Knick v. Township of Scott, Pennsylvania*, 139 S.Ct 2162 (2019) .................................................. 8

*Lane v. Rechfertig*, 2017 WL 5653870 (W.D. Tex., No. A-16-CA-00473-SS, Jan. 25, 2017) ...... 6

*Langdon v. Swain*, 29 Fed. Appx. 171 (4th Cir. 2002) .............................................................. 7, 8

*Lawmaster v. Ward*, 125 F.3d 1341 (10th Cir. 1997) ................................................................... 6

*Lech v. Jackson,* 791 Fed. Appx. 711 (10th Cir. 2019) ................................................................ 6

*Lingle v. Chevron,* 544 U.S. 528 (2005) ...................................................................................... 4

*Loretto v. Teleprompter CATV Corp.,* 458 U.S. 419 (1982) ........................................................ 4

*Lucas v. South Carolina Coastal Council,* 505 U.S. 1003 (1992) ................................................. 4

*Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978) ........................................................ 7, 8, 9

*Nat'l Bd. of Young Men's Christian Ass'ns v. United States*, 395 U.S. 85 (1969) ........................ 5

*Oliphant v. Villano,* 2012 WL 3544882 (D. Conn., No. 3:07-CV-1435, Aug. 16, 2012) .............. 6

*Penn Coal Co. v. Mahon,* 260 U.S. 393 (1922) ........................................................................... 4

*Pumpelly v. Green Bay & Miss. Canal Co.,* 80 U.S. 166 (1871) ................................................... 5

*Spivey v. Robertson*, 197 F.3d 772 (5th Cir. 1999) .................................................................... 10

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) .............................................. 3

*Steele v. City of Houston*, 603 S.W.2d 786 (Tex. 1980) .............................................................. 10

*Stockman v. Federal Election Comm'n*, 138 F.3d 144 (5th Cir. 1998) ..................................... 3, 5

*Walsh v. Louisiana High School Athletic Ass'n*, 616 F.2d 152 (5th Cir. 1980) ............................. 3

*Warburton v. County of Ulster,* 2018 WL 4567104 (N.D.N.Y., No. 1:17-CV-1219,
   Sept. 24, 2018) ........................................................................................................................ 6

*Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,*
   473 U.S. 172 (1985) ................................................................................................................. 3

**Statutes**

28 U.S.C. § 1331 ........................................................................................................................... 3

42 U.S.C. § 1983 ....................................................................................................................... 7, 8

5th Cir. R. 47 ................................................................................................................... 6, 7

E.Dist.Loc.R. CV-5 ............................................................................................................. 11

E.Dist.Loc.R. CV-7 ............................................................................................................... 1

Fed.R.Civ.P. 12 .................................................................................................. 1, 2, 7, 8, 9, 10

Fed.R.Civ.P. 5 .................................................................................................................... 11

U.S. Const. amend. V ................................................................................................. 3, 4, 5, 7, 9

### DEFENDANT CITY OF McKINNEY'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S RULE 12(b)(1) and RULE 12(b)(6) MOTION TO DISMISS

Defendant City of McKinney, Texas (the "City"), pursuant to E.Dist.Loc.R. CV-7(f), files this reply to Plaintiff's Response in Opposition to Defendant's Motion to Dismiss, filed April 28, 2021 (ECF Doc. No. 9) ("Plaintiff's Response").  In support hereof, the City respectfully shows the court the following:

### I. INTRODUCTION

On the front cover page of Plaintiff's Response, Plaintiff requests oral argument on this motion.  *See* E.Dist.Loc.R. CV-7(g).  The City respectfully suggests that oral argument is not necessary for the presentation of the issues adequately briefed by the parties regarding the City's dismissal motion.  If the court decides to conduct oral argument, the City will be pleased to present its arguments why this case should be dismissed for lack of subject-matter jurisdiction, and for Plaintiff's failure to state a claim upon which relief can be granted.

### II. STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT

Plaintiff's Response failed to include a response to the City's statement of issues, pursuant to E.Dist.Loc.R. CV-7(a)(1).  *Compare* Defendant City of McKinney's Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss, and Brief, filed April 14, 2021 (ECF Doc. No. 6) ("Defendant's Motion"), pp. 1-2, *with* Plaintiff's Response.

### III. BAKER'S ALLEGATIONS

There is no dispute concerning the factual review requirement applicable when a court considers a Rule 12 motion to dismiss.  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) ("[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.").  *Compare* Defendant's Motion, p. 2, *with* Plaintiff's Response, p. 4.

## IV. <u>ARGUMENTS AND AUTHORITIES</u>

### A.      <u>Rule 12(b)(1) Motion: The Appropriate Legal Standards.</u>

Plaintiff's Response does not dispute the legal standards set forth in this section of Defendant's Motion. *Compare* Defendant's Motion, pp. 3-4, *with* Plaintiff's Response. Plaintiff's Response inappropriately attempts to re-phrase Defendant's Motion's lack-of-jurisdiction ground as being synonymous with the City's failure to state a claim ground: "The City frames its merits arguments as an argument about jurisdiction." Plaintiff's Response, p. 6 n. 1 (citing *Holland/Blue Streak v. Barthelemy*, 849 F.2d 987, 988-89 (5th Cir. 1988)). Such attempt is inapt. The City asserts two distinct ground for dismissal of Plaintiff's Complaint for Damages (the "Complaint"): (1) lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, and (2) failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant's Motion establishes that the Complaint's failures support both grounds; Plaintiff's observation that "the City does not even attempt to meet the standard" stated in the *Holland/Blue Streak* case (Plaintiff's Response, p. 6 n. 1) is unfounded.

Further, in *Holland/Blue Streak*, the court clarified that whether federal jurisdiction exists is a matter properly addressed first "if the federal statute or constitutional provision invoked is clearly immaterial and is invoked solely for the purpose of obtaining jurisdiction," or where "the claim is wholly insubstantial and frivolous." *Holland/Blue Streak*, 849 F.2d at 989 (citing *Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1347 (5th Cir. 1985), and other cases). To determine whether the federal question involved is immaterial, the Complaint must set forth the essential elements of Baker's claim from the statute and constitutional provision invoked. *Holland/Blue Streak*, 849 F.2d at 989. To determine whether the second exception—that the federal question is wholly insubstantial and frivolous—applies, the court is to determine whether

Baker's claims are obviously without merit or are clearly foreclosed by previous decisions of the United States Supreme Court.  *Id.* (quoting *Walsh v. Louisiana High School Athletic Ass'n*, 616 F.2d 152, 156 (5th Cir. 1980)).  *See also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998) (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)).  Thus, a review of the merits of Baker's claim is involved under these standards in order to determine whether Baker has established federal jurisdiction, even if Baker states the conclusory allegation that jurisdiction exists under 28 U.S.C. § 1331, the federal question statute (Complaint, ¶ 7).  *See John Corp. v. City of Houston*, 214 F.3d 573, 576, 580-81 (5th Cir. 2000) (court quickly disposed of takings claim as unripe under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 n. 13 (1985) in ruling on dismissal motions).

As the party asserting federal jurisdiction, the burden of demonstrating that the federal court has subject-matter jurisdiction lies with Baker.  *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (noting that it "is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking.").  Under the above authorities, and as set forth below and in Defendant's Motion, Baker has failed to meet that burden in this case.

1. The Complaint Fails to Establish the Existence of a Federal Question.

The Complaint fails to plead the elements of a federal question necessary to invoke federal jurisdiction.  *See* Defendant's Motion, pp. 4-10.  Baker's claims center upon the City's police response to an armed hostage standoff at Baker's property.  Complaint, pp. 1-5.  As set forth in Defendant's Motion, courts have consistently held that property damage caused by police action in apprehending a suspect or serving a warrant does not constitute a taking under the Fifth Amendment.  Defendant's Motion, pp. 5-10.  Plaintiff's Response disagrees with those holdings.  Plaintiff's Response, pp. 5-12.  Finding no federal cases, either in the Fifth Circuit or from the

United States Supreme Court, Baker proffers inapposite cases with incomparable facts that were decided upon disparate legal principles to argue that she has alleged a federal takings claim under the Fifth Amendment sufficient to provide the court with jurisdiction here.  Plaintiff's Response, pp. 5-13.  Baker's assertions are without merit, and a review of the cases cited confirms that no prior federal court decision supports Baker's asserted jurisdiction under the particular facts in this case involving police officer actions.

| **Case** | **Holding that a Fifth Amendment taking occurred** |
|---|---|
| *Lingle v. Chevron,* 544 U.S. 528, 548 (2005). Plaintiff's Response, p. 5 | State law limiting rental amounts that oil companies may charge for service station leases. |
| *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1031-32 (1992). Plaintiff's Response, pp. 6, 11 | New state law prohibiting property owners from constructing beachfront homes enacted after plaintiff purchased two beachfront lots. |
| *Penn Coal Co. v. Mahon,* 260 U.S. 393, 416 (1922). Plaintiff's Response, p. 6 | New state law limiting types of permissible coal mining methods. |
| *Loretto v. Teleprompter CATV Corp.,* 458 U.S. 419, 422-23, 441 (1982). Plaintiff's Response, pp. 6, 9, 12 | State law requiring multi-family property owners to allow cable TV installation on their property and limiting property owner reimbursements. |
| *First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 322 (1987). Plaintiff's Response, pp. 7, 19 | County ordinance prohibiting property owner from rebuilding flood-damaged property. |
| *John Corp. v. City of Houston,* 214 F.3d 573, 578-79 (5th Cir. 2000). Plaintiff's Response, pp. 8, 9, 12 | City demolition of dilapidated apartment complex pursuant to years-old violations of the City's dangerous building ordinance by previous owner. |
| *Horne v. Dep't of Agriculture,* 576 U.S. 350, 365-67 (2015). Plaintiff's Response, pp. 8, 12 | Federal law requiring raisin farmers to reserve certain crop amounts for government use free of charge. |
| *Armstrong v. United States,* 364 U.S. 40, 48-49 (1960). Plaintiff's Response, p. 12 | Federal contract requiring ship builder to forfeit all completed and uncompleted ships and materials to government as result of contractual default. |

| | |
|---|---|
| *Pumpelly v. Green Bay & Miss. Canal Co.,* 80 U.S. 166, 177-78 (1871). Plaintiff's Response, pp. 7, 13 | Controlled flooding of property owner's land caused by dam constructed pursuant to state law. |
| *Arkansas Game & Fish Comm'n v. United States,* 568 U.S. 23, 39 (2012). Plaintiff's Response, p. 13 | Controlled flooding of state-owned land caused by dam operated pursuant to federal law. |

The above-listed cases cited by Baker either found a regulatory taking under the Fifth Amendment by statute or other legislative action, or a taking through physical invasion of property by flooding or other permanent confiscation of private property by the government.  Baker's attempt to assert broad general takings principles from those cases and apply them to the facts of this police-damage case confirms that there is no federal court decision from the United States Supreme Court or in the federal Courts of Appeals which has recognized Baker's claim as a viable cause of action under the Fifth Amendment.  As a result, Baker has not met her burden to establish federal question jurisdiction. *Stockman,* 138 F.3d at 151; *Holland/Blue Streak,* 849 F.2d at 989.

As set forth in Defendant's Motion, the federal courts who have addressed whether police officer criminal enforcement actions constitute a taking under the Fifth Amendment have declined to so hold.  *See* Defendant's Motion, pp. 4-10.  A summary of such federal cases illustrates the consistency of federal court decisions, albeit some from other circuits, that hold that no federal takings claim is alleged in police officer situations.

| **Case** | **Holding that no Fifth Amendment Taking occurred** |
|---|---|
| *Nat'l Bd. of Young Men's Christian Ass'ns v. United States*, 395 U.S. 85, 92 (1969). Defendant's Motion, pp. 5, 7, 9 | Governmental bodies are not "liable under the Just Compensation Clause to property owners every time policemen break down the doors of buildings to foil burglars thought to be inside." |
| *AmeriSource Corp. v. United States,* 525 F.3d 1149, 1150, 1153–54 (Fed. Cir. 2008). Defendant's Motion, pp. 7-9 | Government officials physically seized and ultimately "rendered worthless" the plaintiff's pharmaceuticals in connection with a criminal investigation where the government seized the pharmaceuticals in order to |

enforce criminal laws, which action fell well "within the bounds of the police power."

| | |
|---|---|
| *Lech v. Jackson,* 791 Fed. Appx. 711, 713-16, 718 (10th Cir. 2019). Defendant's Motion, pp. 6, 7, 9 | Police breached front door, punched holes in the exterior, and fired tear gas into property while apprehending armed suspect. |
| *Lane v. Rechfertig*, 2017 WL 5653870, at *5 (W.D. Tex., No. A-16-CA-00473-SS, Jan. 25, 2017). Defendant's Motion, pp. 6, 9 | Police officers responded to a residential alarm call, investigated a possible forced entry, and shot and killed plaintiff's dog while inside plaintiff's residence. |
| *Lawmaster v. Ward*, 125 F.3d 1341, 1344-46 (10th Cir. 1997). Defendant's Motion, pp. 8-9 | Federal agents physically damaged plaintiff's property by tearing out door jambs and removing pieces of interior trim from plaintiff's home while executing a search warrant. |
| *Bachmann v. United States,* 134 Fed. Cl. 694, 697 (Fed. Cl. 2017). Defendant's Motion, pp. 6-7 | Police used gunfire, smoke bombs, tear gas and battering ram while apprehending fugitive. |
| *Johnson v. Manitowoc County,* 635 F.3d 331, 332-33, 336 (7th Cir. 2011). Defendant's Motion, pp. 5-7, 9 | Police tore out carpet and wall paneling, cut up furniture, and jackhammered concrete garage floor while executing search warrant. |
| *Freeman v. Indiana,* 2019 WL 357051, at **12-13 (N.D. Ind., No. 1:17-CV-317, Jan. 29, 2019). | Police euthanized dogs seized while executing search warrant. |
| *Warburton v. County of Ulster,* 2018 WL 4567104, at **3, 5-6 (N.D.N.Y., No. 1:17-CV-1219, Sept. 24, 2018). | Police damaged apartment building while executing search warrant. |
| *Oliphant v. Villano,* 2012 WL 3544882, at **1, 5 (D. Conn., No. 3:07-CV-1435, Aug. 16, 2012). | Police damaged apartment while executing arrest warrant. |

Plaintiff's response is critical of the City's cite to non-published, out-of-circuit cases. *See, e.g.,* Plaintiff's Response, pp. 9-10. Although such cases may be technically not binding due to their being unpublished decisions (*see Gate Guard Servs., L.P. v. Perez*, 792 F.3d 554, 560 n. 3 (5th Cir. 2015) (citing 5th Cir. R. 47.5), the court should find the reasoning and conclusions in those cases on many of the same issues presented in this case persuasive and correct. *See Ballard*

*v. Burton*, 444 F.3d 391, 401 & n. 7 (5th Cir. 2006) (citing 5th Cir. R. 47.5.4).  Since Baker fails to provide any federal court authority which has accepted her novel Fifth Amendment claim to establish a federal question sufficient to invoke federal jurisdiction under these facts, Baker's case should be dismissed.

 2. The Complaint Fails to Establish Supplemental Jurisdiction.

 Plaintiff's Response does not refute or address this section of Defendant's Motion. *Compare* Defendant's Motion, pp. 10-11, *with* Plaintiff's Response.

 **B.** **Rule 12(b)(6) Motion: The Appropriate Legal Standards.**

 Plaintiff's Response does not refute or address the legal standards set forth in this section of Defendant's Motion.  *Compare* Defendant's Motion, pp. 11-13, *with* Plaintiff's Response.

 1. The Complaint Fails to Establish Municipal Liability Under Section 1983.

 Plaintiff's Response, at pp. 19-20, responds to this section of Defendant's Motion, pp. 13-16, by asserting that the requirements of *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), are inapplicable to this case.  In support of that argument, Baker refers to *Langdon v. Swain*, 29 Fed. Appx. 171, 172 (4th Cir. 2002) (per curiam).[1]  *See* Plaintiff's Response, p. 20 (quoting *Langdon*: "[T]akings actions sound against governmental entities rather than individual state employees in their individual capacities.").  Baker's reliance on *Langdon* is misplaced, as the full text of the quoted material reveals:

> Further, because takings actions sound against governmental entities rather than individual state employees in their individual capacities, *see Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 687, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see also Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), Langdon's second federal suit was properly subject to dismissal either based on res judicata, in light of the complete identity of the parties and issues involved, *see* [*Bockweg v. Anderson*, 428 S.E.2d 157, 161(N.C. 1993)]; [*Caswell Realty Assoc. I, L.P. v. Andrews Co.*, 496 S.E.2d 607, 610 (N.C. Ct.App. 1998)] or for failure to state a claim.

---

[1] Notably, *Langdon* is a non-published, out-of-circuit decision.

*Langdon*, 29 Fed. Appx. at 172.  The takings claim asserted in *Langdon* concerned a 1995 landslide on the plaintiff's property, not damage caused by police officers in apprehending criminal suspects. *Id.*  *Langdon* does not support Baker's assertion that the elements of *Monell* are inapplicable to Baker's takings claim under federal law.  *Cf.* Defendant's Motion, pp. 13-16.

Baker further asserts that if the *Monell* requirements are applicable, then the City's single "decision" to not compensate Baker, together with the City's opposition to Baker's claims in this case, satisfy the *Monell* policy, practice or custom requirement "*a fortiorari*."  Plaintiff's Response, p. 21.  Baker cites no authority for such an unsupportable proposition.  *Id.*  Nor could she.  A single event does not satisfy the *Monell* policy, practice or custom requirement. *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404-05 (1997) (single incident does not establish custom or policy); *Forgan v. Howard Cnty., Tex.*, 494 F.3d 518, 522 (5th Cir. 2007) (proof of single incident held insufficient to support finding of custom or policy).  Defending a lawsuit has never been held to satisfy *Monell's* policy, practice or custom requirement, either "*a fortiorari*" or otherwise.

As set forth in *Chavarin v. City of El Paso*, 2011 WL 13234975 (W.D. Tex., No. EP-10-CV-0339-KC, Apr. 25, 2011), cited on pages 15-16 of Defendant's Motion, the *Monell* requirements apply to a takings claim.  Plaintiff's Response is to simply aver in a footnote that the decision in *Chavarin* is "obviously incorrect," alleging that the decision conflicts with *Knick v. Township of Scott, Pennsylvania*, 139 S.Ct 2162 (2019), and that the plaintiffs in *Chavarin* did not respond to the *Monell* argument.  Plaintiff's Response, p. 21 n. 8.  Baker's argument does not meaningfully address the *Monell* issue.  Thus, Baker's § 1983 claim should be dismissed pursuant to Rule 12(b)(6) for her failure to state a claim upon which relief can be granted because, even assuming Baker has plausibly alleged an underlying constitutional violation, the Complaint neither

alleges an improper official policy or widespread custom, nor alleges how any City policy or custom directly caused Baker's injuries, or satisfy any other element of a *Monell* claim.

2. The Complaint Fails to Establish the Existence of a Fifth Amendment Violation.

Baker's alleged takings claim under the Fifth Amendment fails to state a cognizable claim of constitutional harm, and should be dismissed under Rule 12(b)(6). Plaintiff's Response simply asserts that the Complaint's allegations are sufficient. Plaintiff's Response, pp. 12-14. Rather than repeat its arguments from above here, the City adopts the argument and authorities from Section A.1, above, and in Defendant's Motion, as if repeated herein verbatim. Baker's Fifth Amendment takings claim should be dismissed for her failure to state a claim.

3. Baker's Takings Claim Under the Texas Constitution Should Be Dismissed.

Plaintiff's Response does not refute or address the legal standards set forth in this section of Defendant's Motion. *Compare* Defendant's Motion, pp. 17-20, *with* Plaintiff's Response. One element of state law takings jurisprudence is that there must be a lack of consent to the taking. *Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598 (Tex. 2011). Baker's daughter allowed the armed suspect to enter Baker's property, Baker called the City's police to respond to her property, and Baker gave the City's police the front door and garage door codes to enter her property. Complaint, ¶¶ 18-21; Plaintiff's Response, pp. 1-3. While Baker's actions are understandable, they fail to show a lack of consent to the City's police officers' entry into Baker's property. Thus, the Complaint fails to establish this necessary element of Baker's state claim.

A. *Baker Alleges a Tort Claim*

Plaintiff's Response asserts, with some apparent indignity, that Baker does not allege a mere tort claim. Plaintiff's Response, pp. 21-26. Baker does not refute or address the state standards set forth in Defendant's Motion, at pp. 20-21, but instead asserts that the City

"misunderstands" the law, and asserts factual matters that do not appear in the Complaint. Such matters should not be considered by the court. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (court should not look beyond face of pleadings in Rule 12 context). Rather than repeat its argument herein, the City refers the court to this section of Defendant's Motion, at pp. 20-21.

B. *Baker's Reliance on Steele v. City of Houston is Misguided*

Plaintiff's Response boldly asserts that *Steele v. City of Houston*, 603 S.W.2d 786 (Tex. 1980) "controls this case." Plaintiff's Response, pp. 14-18. As is set forth in Defendant's Motion, at pp. 21-23, Baker's reliance on *Steele* is misguided because of the stark factual differences between this case and the events in *Steele*. *Compare* the Complaint, pp. 2-5, *with Steele*, 603 S.W.2d at 789, 791-92. Plaintiff's Response attempts to draw parallels between *Steele* and the events at Baker's house. Plaintiff's Response, pp. 16-18. Baker's attempts to draw such parallels actually underscores the many differences between the two events. *Id*. Because of those factual differences, *Steele* should not guide the court's review of whether Baker has stated a claim upon which relief can be granted under the Texas Constitution. Further, given the approximately forty years since *Steele* was decided, Baker cites no subsequent state case with facts similar to Baker's that relies upon *Steele*. *See, generally*, Plaintiff's Response. *Steele* does not control this case.

4. The Court Should Decline to Exercise Supplemental Jurisdiction.

Plaintiff's Response does not refute or address this section of Defendant's Motion. *Compare* Defendant's Motion, pp. 23, *with* Plaintiff's Response.

WHEREFORE, PREMISES CONSIDERED, Defendant City of McKinney, Texas, prays that the court grant its motion and dismiss Plaintiff's Complaint for Compensatory Damages in its entirety. The City also prays for all other relief to which it may be entitled.

Respectfully submitted,

By:   /s/ *Edwin P. Voss, Jr.*
       Edwin P. Voss, Jr.
       State Bar No. 20620300
       evoss@bhlaw.net
       Michael L. Martin
       State Bar No. 24108956
       mmartin@bhlaw.net
BROWN & HOFMEISTER, L.L.P.
740 East Campbell Road, Suite 800
Richardson, Texas  75081
214-747-6100 (Telephone)
214-747-6111 (Telecopier)

ATTORNEYS FOR DEFENDANT
CITY OF MCKINNEY, TEXAS

## CERTIFICATE OF SERVICE

"No certificate of service is required when a paper is served by filing it with the court's electronic-filing system."  Rule 5(d)(1)(B) of the Federal Rules of Civil Procedure.  This paper is served upon all counsel of record, therefore, because it was filed with the court's electronic-filing system on May 5, 2021.  E.Dist.Loc.R. CV-5(c).

       /s/ *Edwin P. Voss, Jr.*
       Edwin P. Voss, Jr.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| VICKI BAKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-0176-ALM |
| | § | |
| CITY OF McKINNEY, TEXAS, | § | |
| | § | |
| Defendant. | § | |
| | § | |

### DEFENDANT CITY OF McKINNEY'S RESPONSE TO
### PLAINTIFF'S SUPPLEMENTAL AUTHORITY

Defendant City of McKinney, Texas (the "City"), submits the following response to Plaintiff's Notice of Supplemental Authority, filed June 21, 2021 (ECF Doc. No. 14) ("Plaintiff's Supplemental Authority"). In support hereof, the City respectfully shows the court the following:

### I. INTRODUCTION

On June 21, 2021, Plaintiff's Supplemental Authority was filed, with an attached copy of a recently decided case from the Fourth Circuit Court of Appeals, styled *Yawn v. Dorchester County*, __ F.3d __, 2021 WL 2385404 (4th Cir., No. 20-1584, June 11, 2021). *See* Court's Docket. A copy of the *Yawn* case is attached hereto for the court's convenience as **Exhibit 1**. Plaintiff Vicki Baker ("Baker") generally asserts that the *Yawn* decision favors her opposition to Defendant City of McKinney's Rule 12(b)1 and 12(b)(6) Motion to Dismiss, and Brief, filed on April 14, 2021, ECF Doc. No. 6 (the "City's Dismissal Motion"). *Id.* As set forth herein, Baker's reliance on the *Yawn* case is without merit.

### II. ARGUMENT AND AUTHORITIES

In the City's Dismissal Motion, the City asserts that Plaintiff's Complaint for Compensatory Damages fails to establish the existence of a federal question, notwithstanding

EXHIBIT
A (3)

Plaintiff's allegation of a takings claim under the Fifth Amendment.  City's Dismissal Motion, pp. 5-10.  Courts have consistently held that property damage caused by police action in apprehending a suspect or serving a warrant does not constitute a taking under the Fifth Amendment.  *Id.*  Baker asserts the *Yawn* case is nonetheless supportive of Baker's takings claim.  *See, generally*, Plaintiff's Supplemental Authority.  The *Yawn* case, however, is another inapposite case with incomparable facts that was decided upon disparate legal principles and does not support Baker's takings claim.

In *Yawn*, the plaintiffs were bee-keepers who brought suit against Dorchester County alleging a takings claim and state tort claims when the plaintiffs' bees were killed as a result of the county's pesticide spraying program to kill mosquitoes in response to the Zika virus outbreak in the county.  Despite issuing press releases, hiring an experienced agriculture pilot, and providing the pilot with maps where bee-keepers were located, and despite the pilot turning off the pesticide spray when in proximity to those bee-keeper locations, plaintiffs were unaware of the pesticide spraying schedule, failed to take measures to protect their bee hives, and their bees were killed. Both the district court and Fourth Circuit Court of Appeals held that plaintiffs' takings claim was without merit under established United States Supreme Court precedent, and dismissed the federal takings claim.  *See* **Exhibit 1**, *Yawn*, 2021 WL 2385404, at ** 1-2, 4.

The *Yawn* court found that the county's pre-spraying efforts (press releases, social media alerts, direct notification attempts with bee-keepers, and information provided to the pilot) established that the death of the plaintiffs' bees was neither intentional nor foreseeable.  *See* **Exhibit 1**, *Yawn*, 2021 WL 2385404, at * 4.  Baker argues that the same standards used by the court in *Yawn*, *i.e.*, intentionality and foreseeability, should be applied in the instant case to yield a result in Baker's favor, notwithstanding that the *Yawn* court found no unconstitutional taking using those standards.  *See, generally*, Plaintiff's Supplemental Authority.  Baker can point to no

case involving property damage caused by police and criminal suspect actions, involving a barricaded suspect, that found the damage to amount to an unconstitutional taking using those standards.  In short, the *Yawn* case and the instant case are apples to oranges.

As was true in Baker's response to the City's Dismissal Motion, Baker relies upon *Yawn* in an attempt to assert broad general takings principles from a factually distinct case and apply those principles to the facts of this police-damage case.  *Yawn* itself refused the temptation to create a bright-line categorical rule for takings claims, citing United States Supreme Court precedent: "Time and again in Takings Clause cases, the Court has heard the prophecy that recognizing a just compensation claim would unduly impede the government's ability to act in the public interest." *See* **Exhibit 1**, *Yawn*, 2021 WL 2385404, at *3 (quoting *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 36 (2012).  "As the Supreme Court has made clear, claims of an unconstitutional taking are fact-specific and not amenable to many bright-line rules."  *Id.*, at *5 (concurring opinion) (citing *Ark. Game & Fish Comm'n*, 568 U.S. at 31).  As set forth in the City's Dismissal Motion, and in the City's Reply to Plaintiff's Response, the federal courts who have addressed whether damage caused by police officer criminal enforcement actions constitute a taking under the Fifth Amendment have declined to so hold.  *See* the City's Dismissal Motion, pp. 4-10, 16-17; the City's Reply to Plaintiff's Response, ECF Doc. No. 10, pp. 3-7, 9.  *Yawn* does not change that analysis.  *Yawn* should be rejected by the court because it is a case that does not support Baker's takings claim in this case.

WHEREFORE, PREMISES CONSIDERED, Defendant City of McKinney, Texas, prays that the court grant its motion and dismiss Plaintiff's Complaint for Compensatory Damages in its entirety.  The City also prays for all other relief to which it may be entitled.

Respectfully submitted,

By: ___/s/ Edwin P. Voss, Jr.___
        Edwin P. Voss, Jr.
        State Bar No. 20620300
        evoss@bhlaw.net
        Michael L. Martin
        State Bar No. 24108956
        mmartin@bhlaw.net
BROWN & HOFMEISTER, L.L.P.
740 East Campbell Road, Suite 800
Richardson, Texas 75081
214-747-6100 (Telephone)
214-747-6111 (Telecopier)

ATTORNEYS FOR DEFENDANT
CITY OF McKINNEY, TEXAS

### CERTIFICATE OF SERVICE

"No certificate of service is required when a paper is served by filing it with the court's electronic-filing system." Rule 5(d)(1)(B) of the Federal Rules of Civil Procedure. This paper is served upon all counsel of record, therefore, because it was filed with the court's electronic-filing system on June 25, 2021. E.Dist.Loc.R. CV-5(c).

        ___/s/ Edwin P. Voss, Jr.___
        Edwin P. Voss, Jr.

Yawn v. Dorchester County | Cases | South Carolina | Westlaw

WESTLAW CLASSIC

2021 WL 2385404
Only the Westlaw citation is currently available.
United States Court of Appeals, Fourth Circuit.

**Yawn v. Dorchester County**
United States Court of Appeals, Fourth Circuit.   June 11, 2021   --- F.3d ----   2021 WL 2385404   *(Approx. 7 pages)*

and Supplies, Plaintiffs - Appellants,

v.

DORCHESTER COUNTY, Defendant - Appellee

and

Town of Summerville; Allen Aviation, Inc.; Al Allen, Defendants.

No. 20-1584
Argued: May 6, 2021
Decided: June 11, 2021

### Synopsis
**Background:** Beekeepers filed § 1983 action in state court alleging that county's aerial pesticide spray, which resulted in death of their bees, amounted to taking under Fifth Amendment and violation of state law The United States District Court for the District of South Carolina, Margaret B. Seymour, Senior District Judge, 446 F.Supp.3d 41, entered summary judgment in defendants' favor on Takings Claims claim, and plaintiffs appealed.

**Holding:** The Court of Appeals, Thacker, Circuit Judge, held that Takings Clause did not require compensation to beekeepers.

Affirmed.

Traxler, Senior Circuit Judge, concurred and filed opinion.

### West Headnotes (6)

Change View

1   **Federal Courts**
    Court of Appeals reviews district court's grant of summary judgment de novo.

2   **Eminent Domain**
    Takings Clause is designed to bar government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by public as a whole by requiring just compensation when private property is taken for public use. U.S. Const. Amend. 5.

3   **Eminent Domain**
    Government actions taken pursuant to police power are not per se exempt from Takings Clause. U.S. Const. Amend. 5.

4   **Eminent Domain**
    If injury complained of is only incidental to legitimate exercise of governmental powers for public good, then there is no taking of property for public use, and right to compensation, on account of such injury, does not attach under Takings Clause. U.S. Const. Amend. 5.



Yawn v. Dorchester County | Cases | South Carolina | Westlaw

5   **Eminent Domain**
If government's invasion of protected property interest is not intended or foreseeable, then it does not constitute taking. U.S. Const. Amend. 5.

6   **Eminent Domain**
Death of bees as result of county's aerial pesticide spray was unintentional, and thus Takings Clause did not require compensation to beekeepers, even though pesticide use instructions stated that substance was "highly toxic" to bees; county's stated objective was to abate mosquitoes in effort to prevent spread of Zika virus, county took specific measures to avoid killing bees, including issuing press release to wide array of media outlets before spraying and giving pilot maps with locations of beehives so that he could turn off sprayer when flying over those locations, and it was not foreseeable that press release would fail to reach beekeepers. U.S. Const. Amend. 5.

Appeal from the United States District Court for the District of South Carolina, at Charleston. Margaret B. Seymour, Senior District Judge. (2:17-cv-00440-MBS)

### Attorneys and Law Firms

ARGUED: J. David Breemer, PACIFIC LEGAL FOUNDATION, Sacramento, California, for Appellants. Amanda R. Maybank, MAYBANK LAW FIRM, LLC, Charleston, South Carolina, for Appellee. ON BRIEF: W. Andrew Gowder, Jr., AUSTEN & GOWDER, LLC, Charleston, South Carolina; Michael T. Rose, MIKE ROSE LAW FIRM, PC, Summerville, South Carolina; Kathryn D. Valois, PACIFIC LEGAL FOUNDATION, Palm Beach Gardens, Florida, for Appellants. Roy P. Maybank, Marshall A. Earhart, MAYBANK LAW FIRM, LLC, Charleston, South Carolina, for Appellee.

Before KING and THACKER, Circuit Judges, and TRAXLER, Senior Circuit Judge.

### Opinion

Affirmed by published opinion. Judge Thacker wrote the opinion, in which Judge King joined. Judge Traxler wrote a concurring opinion.

THACKER, Circuit Judge:

*[1] Juanita Stanley and Mitch Yawn ("Appellants") sued Dorchester County, South Carolina ("the County"), seeking compensation pursuant to the Takings Clause of the Fifth Amendment for the death of their bees. According to Appellants, because the bees died after the County sprayed pesticide in an effort to kill mosquitos, the bees' death amounted to a taking of Appellants' private property. The district court granted the County's motion for summary judgment, holding that there was no taking because the loss of Appellants' bees was only an incidental consequence of the County's action. We affirm.

I.

A.

In 2016, South Carolina state government officials from the Department of Health and Environmental Control ("DHEC") "urged local jurisdictions to bolster their mosquito control programs heading into the summer months in preparation for a possible Zika virus outbreak." J.A. 195. * The Zika virus is a mosquito born illness with the potential "to cause serious fetal brain defects" and was confirmed to be present in South Carolina as of May 2016. *Id.*

By August 2016, three cases of travel related Zika virus were reported in the County. The DHEC responded to the confirmed cases by directing the head of the County's Mosquito Abatement Division, Clayton Gaskins, to spray pesticide in targeted areas within a certain radius of the Zika-infected individuals' homes. As a result, Gaskins set about to deploy the County's two spray trucks to treat the areas with pesticide.

However, upon visiting the treatment areas, Gaskins determined that there were multiple heavily wooded places within the target areas that could not be reached by the spray trucks. Thus, Gaskins consulted with his supervisor and the County Administrator as to the best course of action. The three of them determined that aerial pesticide spray should be recommended to the County Council because of the inability of the trucks to fully access

*Response Ref. p. 2*

Yawn v. Dorchester County | Cases | South Carolina | Westlaw

the DHEC's target areas, as well as numerous citizen reports of excessive mosquitoes in the area. According to the 2016 County Council Chairman, the Council had heard from constituents favoring the use of aerial spray to combat the spread of the Zika virus. *See* J.A. 113 (describing the first Council discussion on aerial spraying where a constituent "begged and pleaded" for the aerial spray to be conducted). Ultimately, the County Council approved aerial spray and established a contract with Allen Aviation to conduct the spray.

The aerial spray was scheduled to take place on August 28, 2016, between the hours of 6:30 a.m. and 8:30 a.m. In accord with South Carolina law, the County issued a press release on August 26, 2016, to notify the citizens of the upcoming aerial spray. The press release was issued to numerous media outlets, including local television stations, newspapers, radio stations, and social media platforms. But Appellants were not aware of the press release prior to the aerial spray.

*2 Additionally, although not required by law or County policy, as a courtesy, Gaskins took it upon himself to call local beekeepers before the pesticide sprays. As local beekeepers, Appellants were on the call list, and had been previously called about upcoming sprays. However, they did not receive a call from Gaskins prior to the August 28 aerial spray. Thus, Appellants did not implement protective measures for their bees before the spray as they had successfully done in the past.

In preparing for the aerial spray, the County provided Allen Aviation with mosquito abatement zone maps, as well as a map that included the location of all beekeepers in the area. During discovery, the pilot who conducted the spray, an Air Force veteran and certified agriculture pilot, testified in a deposition that he used the maps provided by the County with markers to identify the beehive locations in order to determine when to turn off the sprayer during the flight. The pilot also testified that he specifically remembered turning off the sprayer as he approached the beehive locations marked on the map.

Nonetheless, the morning after the aerial spray, Appellants discovered mounds of dead bees surrounding their hives. Appellants contacted Clemson University, Department of Pesticide Regulation ("Clemson DPR"), the entity responsible for regulating and investigating pesticide use and complaints pursuant to state law. The Clemson DPR investigated and found "bees with behaviors consistent with pesticide exposure" as well as "very active bees flying around the yard." J.A. 150. The investigation included collecting and testing representative samples of dead bees and soil from around the hives, which the Clemson DPR discovered did not contain pesticide residue. However, the report indicated the lack of pesticide residue "likely occurred due to the time which elapsed between the application and when the samples were obtained, combined with [the pesticide]'s ability to rapidly degrade under typical environmental conditions." *Id.* at 152. Thus, although the investigation "found no [regulatory] violations occurred" during the August 28 aerial spray, it also did not rule out the aerial spray "as a cause for the loss of the bees." *Id.* at 152–53.

B.

Appellants filed a lawsuit against the County on January 27, 2017, alleging that the aerial spray of pesticide and subsequent death of the bees amounted to a taking pursuant to the Takings Clause of the Fifth Amendment. Appellants also brought claims pursuant to the South Carolina state constitution and the South Carolina Tort Claims Act. The County moved for summary judgment on December 16, 2019. Concluding there was no taking, the district court granted the County's motion for summary judgment on the Takings Clause claim.

The district court began its takings analysis by noting the distinction between the power of eminent domain and police power. *See* J.A. 249 (explaining police power "extends to all matters affecting the public health or the public morals" (quoting *Stone v. Mississippi*, 101 U.S. 814, 818, 25 L.Ed. 1079 (1879))). The district court held:

It is undisputed that the spray was conducted to prevent the spread of disease, a matter that would affect public health. Such an action fits squarely within the state's police power. "If the injury complained of is only incidental to the legitimate exercise of governmental powers for the public good, then there is not taking of property for the public use, and a right to compensation, on account of such injury, does not attach under the Constitution." *Chicago, B. & Q. Ry. Co. v. People of State of Illinois*, 200 U.S. 561, 593–94, [26 S.Ct. 341, 50 L.Ed. 596] (1906). The loss of [Appellants'] bees was unintentional; it was an unfortunate consequence to a proper exercise of [the County]'s police power. Because [the County] was exercising its police power, and not its power of eminent domain, the Takings Clause is not implicated

*Response Ref.*
*p. 2*

Yawn v. Dorchester County | Cases | South Carolina | Westlaw

U. A  252  Therefore, the district court concluded Appellants "are not entitled to federal compensation" and granted summary judgment in favor of the County on the Takings Clause claims. *Id.* Appellants' state law claims were remanded to state court for further consideration.

II.

1    "We review the district court's grant of summary judgment de novo ...." *Providence Square Assocs. v. G.D.F., Inc.*, 211 F.3d 846, 850 (4th Cir. 2000). Summary judgment "is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999)).

III.

A.

2    "The Takings Clause is 'designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole' " by requiring just compensation when private property is taken for public use. *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 31, 133 S.Ct. 511, 184 L.Ed.2d 417 (2012) (quoting *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960)). When reviewing Takings Clause jurisprudence, the Supreme Court has "recognized ... that no magic formula enables a court to judge, in every case, whether a given government interference with property is a taking." *Id.* Indeed, because of the "nearly infinite variety of ways in which government actions or regulations can affect property interests, the Court has recognized few invariable rules in this area." *Id.*

Appellants contend the district court erred because its ruling "amounts to the conclusion that, when government interferes with property to preserve public health, safety or welfare, it is immune from the Takings Clause." Appellants' Br. 19. In essence, Appellants argue that the district court adopted a per se rule excusing the Government from Takings Clause analysis when it acts pursuant to the police power. In Appellants' view, this violates the Supreme Court's caution against "the temptation to adopt what amount to per se rules in either direction[, which] must be resisted." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 342, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002) (internal quotation marks omitted).

3    That Government actions taken pursuant to the police power are not per se exempt from the Takings Clause is axiomatic in the Supreme Court's jurisprudence. "Time and again in Takings Clause cases, the Court has heard the prophecy that recognizing a just compensation claim would unduly impede the government's ability to act in the public interest." *Ark. Game & Fish*, 568 U.S. at 36, 133 S.Ct. 511. The Court has consistently "rejected this argument when deployed to urge blanket exemptions from the Fifth Amendment's instruction." *Id.* at 37, 133 S.Ct. 511 ("While we recognize the importance of the public interests the Government advances in this case, we do not see them as categorically different from the interests at stake in myriad other Takings Clause cases."); *see also Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1014, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) ("If, instead, the uses of private property were subject to unbridled, uncompensated qualification under the police power, the natural tendency of human nature would be to extend the qualification more and more until at last private property disappeared." (internal quotation marks omitted)). Nevertheless, we affirm the district court's grant of summary judgment because the death of Appellants' bees was neither intentional nor foreseeable.

*Response Ref. p. 3*

B.

4    5    "If the injury complained of is only incidental to the legitimate exercise of governmental powers for the public good, then there is no taking of property for the public use, and a right to compensation, on account of such injury, does not attach under the Constitution." *Chicago, B. & Q. Ry. Co. v. Illinois*, 200 U.S. 561, 593–94, 26 S.Ct. 341, 50 L.Ed. 596 (1906). Thus, we must determine "the degree to which the invasion is intended or is the foreseeable result of authorized government action." *Ark. Game & Fish*, 568 U.S. at 39, 133 S.Ct. 511. If the invasion is not intended or foreseeable, then it does not constitute a taking. *See id*; *see also Moden v. United States*, 404 F.3d 1335, 1342 (Fed. Cir. 2005) (explaining that a claim based on chemical contamination of real property "must show either that the government intended to invade a protected property interest or that the asserted invasion is the direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the activity").

Yawn v. Dorchester County | Cases | South Carolina | Westlaw

6    Here, the death of Appellants' bees was plainly unintentional. The County's stated objective was to abate mosquitos in an effort to prevent the spread of the Zika virus. More importantly, the County took specific measures to avoid the unfortunate death of the bees. The County issued a press release to a wide array of media outlets before spraying. The County also hired an experienced pilot and gave him maps with the locations of beehives so that he could turn off the sprayer when flying over those locations. The pilot testified to doing so.

Appellants argue that the death of the bees was nonetheless foreseeable because of an "explicit warning in the pesticide use instructions stating that dispersal of the substance is 'highly toxic' to bees." Appellants' Reply Br. 10 (citing J.A. 157). But this frames the foreseeability analysis too narrowly. The question is not simply whether applying the pesticide to bees would foreseeably result in their death, but rather, whether the bees would die despite the County's specific efforts to avoid exposing the bees to the pesticide. We conclude that it was not foreseeable that the press release would fail to reach Appellants, leaving Appellants and their bees unprepared for the spray. Appellants testified that they had previously successfully taken protective measures prior to sprays of which they were aware, such as closing the hive entrances and laying a damp bed sheets across the hives. Thus, previous sprays did not result in the death of Appellants' bees. And the fact that the spray in question was conducted aerially while previous sprays were conducted via truck is likewise not enough to conclude that the bees' death was foreseeable. This is because there is no evidence that Appellants' protective measures would have been ineffective in this instance had they known about the spray, especially given the pilot's effort to avoid direct exposure by turning off the sprayer. Indeed, this spray did not kill other local beekeepers' bees.

The death of Appellants' bees is undoubtedly a tragedy, but we cannot conclude that it was the foreseeable or probable result of the County's action when it is a clear outlier in terms of collateral damage arising out of the County's mosquito abatement effort. Ultimately, because we conclude the death of Appellants' bees was neither intended nor foreseeable, the Takings Clause does not require compensation.

*Response Ref. p. 2*

IV.

For the foregoing reasons, the decision of the district court is

*AFFIRMED.*

TRAXLER, Senior Circuit Judge, concurring:

Appellants Mitch **Yawn** and Juanita Stanley claim, in essence, that the death of their bees amounted to a taking by **Dorchester** County because the County forgot to call the Appellants personally to inform them about the impending aerial spraying, as it had done before other pesticide applications. However, "[a]ccidental, unintended injuries inflicted by governmental actors are treated as torts, not takings." *In re Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 799 F.2d 317, 326 (7th Cir. 1986). Accordingly, I concur in the judgment affirming the district court's grant of summary judgment in favor of the County.

I.

*5 In 2016, Dorchester County conducted aerial pesticide spraying in an effort to prevent the spread of the Zika virus. The County followed all required protocols before conducting the aerial sprays, including notifying the public through press releases issued to local news outlets, including newspapers, television and radio stations, and social media platforms. Because pesticides can affect beneficial insects as well as mosquitos, the County gave the pilot a map marked with the location of the known beekeepers in the targeted area, and the pilot turned off the sprayer before flying over those areas. The County's prior practice with truck-based mosquito spraying was to also call all known beekeepers in the area to give them an additional, personal warning about the upcoming treatment. The County followed that practice before the aerial spray, but either neglected to call the Appellants or was unable to reach them. The Appellants were also unaware of the various public notices given by the County. They did not cover their hives or take other precautionary steps before the aerial spraying, and their bees died. Other beekeepers who took precautions before the spraying did not lose their colonies.

II.

As the Supreme Court has made clear, claims of an unconstitutional taking are fact-specific and not amenable to many bright-line rules. *See Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 31, 133 S.Ct. 511, 184 L.Ed.2d 417 (2012) ("In view of the nearly

*Response Ref. p. 3*

Yawn v. Dorchester County | Cases | South Carolina | Westlaw

infinite variety of ways in which government actions or regulations can affect property interests, the Court has recognized few invariable rules in this area.") In cases like this one, involving the line between takings and torts, the analysis generally focuses on foreseeability.

"[A] property loss [is] compensable as a taking ... when the government intends to invade a protected property interest or the asserted invasion is the direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action." *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1355 (Fed. Cir. 2003) (internal quotation marks omitted); *Columbia Basin Orchard v. United States*, 132 F. Supp. 707, 709 (Ct. Cl. 1955) (For property loss to amount to a taking, "[t]here must have been an intent on the part of the defendant to take plaintiff's property or an intention to do an act the natural consequence of which was to take its property"); *see Ark. Game & Fish*, 568 U.S. at 39, 133 S.Ct. 511 ("Also relevant to the takings inquiry is the degree to which the invasion is intended or is the foreseeable result of authorized government action."). The Appellants do not contend that the County intentionally killed their bees; instead, they argue that, given the known toxicity to bees of the pesticide used, the deaths were the foreseeable result of the authorized governmental action. In my view, that is not the correct approach to the issue.

For purposes of the foreseeability inquiry, "authorized" governmental action refers to governmental action that is "properly carried out." *In re Chicago, Milwaukee*, 799 F.2d at 326. Thus, the question is not whether it is generally foreseeable that pesticide might kill bees; the question is whether it was foreseeable that bees would die if the County *properly implemented* its aerial spraying plan.

> For example, if planes owned by the government regularly overfly a farm, causing the chickens to kill themselves in fright, this planned operation may "take" an easement across the farm. But if a stray military plane crashes into a chicken coop, killing an equal number of fowl, this is a tort rather than a taking. ... [A] foul-up in the implementation of the program does not require compensation outside the scope of [any applicable Tort Claims Act].

*Id.*

In this case, the *authorized* governmental action was the aerial spraying of pesticides in a targeted area after the County (1) provided broadly aimed public notices of the operation; (2) provided the pilot with a map showing bee-keeping operations within the targeted area so the spraying could be stopped while flying over those areas; and (3) made personal phones calls to all known beekeepers to personally inform them of the operation. The death of bees would not be the natural consequence of that properly implemented plan, as demonstrated by the fact that Appellants had been able to protect their bees from earlier truck-based pesticide spraying and only the Appellants' bees were affected by the aerial spraying.

*6 Because the death of Appellants' bees was not the natural consequence of the County's mosquito-control plan, there was no taking. While the County may have erred in the *implementation* of the plan by failing to personally call the Appellants, "the government is not absolutely liable for mistaken implementation of a [plan] that does not otherwise take property." *In re Chicago, Milwaukee*, 799 F.2d at 327; *see Sanguinetti v. United States*, 264 U.S. 146, 148-50, 44 S.Ct. 264, 68 L.Ed. 608 (1924) (concluding that government's construction of canal that caused flooding of neighboring property during periods of high rains was a tort, not a taking, where flooding occurred because engineers designing the canal relied on inaccurate information when determining the carrying capacity of the canal); *cf. Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) ("We conclude that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property."). At most, the County was negligent in its implementation of the mosquito-control plan, which limits the Appellants to any remedy available to them under South Carolina's Tort Claims Act.

III.

Although the district court's approach to the takings claim was perhaps not as clear as it could have been, this court is not limited to the district court's reasoning when affirming the judgment. Because the death of their bees was not a natural or intended consequence of the County's mosquito-control plan, the Appellants' takings claim fails. I therefore concur in

Yawn v. Dorchester County | Cases | South Carolina | Westlaw

the majority's opinion affirming the district court's grant of summary judgment in favor of the
County

All Citations

--- F.3d ----, 2021 WL 2385404

## Footnotes

| * | Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal. |

End of
Document                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.