# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| VICKI BAKER, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § § | CIVIL ACTION NO. 4:21-CV-00176<br>Judge Mazzant |
| CITY OF MCKINNEY, TEXAS, | § § § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant City of McKinney's Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss (Dkt. #6). Having considered the motion and the relevant pleadings, the Court finds that Defendant's motion should be **DENIED**.

### BACKGROUND

This case arises from the uncompensated damages to Vicki Baker's ("Baker") home following the City of McKinney Police Department's (the "Department") standoff with an armed fugitive. To provide necessary context regarding the nature of this lawsuit, the Court lays out the pertinent facts, which are essentially undisputed.

On July 25, 2020, Baker's daughter, Deanna Cook ("Cook"), called the Department from a public location to report that an armed fugitive, later identified as Wesley Little ("Little"), had entered Baker's house with a teenage girl and had requested to hide his car in the garage.[1] When Department officers arrived at Cook's location, Cook provided the officers both the code to enter

---

[1] Baker was residing in Montana at the time of the occurrence, and Cook was preparing Baker's home in McKinney for sale.

the house and the garage door opener. Department officers then went to Baker's home where Little remained in hiding with the teenage girl.

Upon arrival, Department officers surrounded the house and attempted to negotiate with Little. Little released the fifteen-year-old girl unharmed, but the girl informed Department officers that Little possessed seven firearms and that he refused to leave the house alive.

Following unsuccessful negotiations, Department officers then attempted to draw Little out of the house through several forceful tactics, including the use of tear gas. Despite the Department's efforts, Little would not leave the home. Department officers then forcefully entered the home by breaking down both the front and garage door and running over the backyard fence with a tank-like vehicle known as a BearCat. Upon entry, Department officers found Little had taken his own life.

On March 3, 2021, Baker filed suit against the City of McKinney (the "City") for violations of the Takings Clauses of both the United States and Texas Constitutions. Baker alleges that extensive damage to her house resulted from the Department's standoff with Little. Specifically, Baker claims that: (1) every window needed replacing; (2) the house had to be cleaned by a hazmat remediation team due to the tear gas; (3) various appliances were destroyed; (4) the front and garage door needed replacing (5) tear gas cannisters had destroyed parts of the drywall; and (6) carpets, blinds, and ceiling fans needed replacing.

On April 14, 2021, the City filed the present motion (Dkt. #6). On April 28, 2021, Baker filed a response (Dkt. #9). On May 5, 2021, the City filed a reply (Dkt. #10). On June 21, 2021, Baker filed a Notice of Supplemental Authority (Dkt. #14). On June 25, 2021, the City filed a Response to [Baker's] Supplemental Authority (Dkt. #16).

**I.    12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction**

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction when the district court has neither statutory nor constitutional power to adjudicate the case. *Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In deciding the motion, the Court may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the [C]ourt's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The Court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to the plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

## ANALYSIS

The City asks the Court to dismiss Baker's claims for lack of subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367 (Dkt. #6 at p. 8). The City argues "[t]he Complaint fails to establish the existence of a federal question" (Dkt. #6 at p. 10). Specifically, the City contends "[t]here is no federal court decision at either the United States Supreme Court or in the federal Courts of Appeals which has recognized such a cause of action establishing Baker's claims

as one asserting a federal question under the Fifth or Fourteenth Amendments" (Dkt. #6 at p. 11). Further, the City asserts that "[t]he Complaint fails to establish supplemental jurisdiction" over Baker's state law claim (Dkt. #6 at p. 16).

Baker's response does not specifically address subject matter jurisdiction. Rather, Baker premises the Court's retention of the case on the plausibility of her takings claims under both federal and Texas law.

After considering both the motion and the response, it is clear the City conflates the appropriate Rule 12(b)(1) and Rule 12(b)(6) analyses and, accordingly, rendered Baker responsible for responding to the 12(b)(1) argument with the 12(b)(6) plausibility analysis. Because "whether the court lacks subject matter jurisdiction and whether the plaintiff fails to state a claim on which relief can be granted are distinct questions[,]" *Emp. Ins. of Wausau v. Suwannee River Spa Lines, Inc.*, 866 F.2d 752, 759 (5th Cir. 1989), the plausibility and viability of Baker's claims become relevant only upon a finding of subject matter jurisdiction. In other terms, "courts should analyze their own authority to hear a case as a separate matter from whether that case involves a viable claim." *In re KSRP, Ltd.*, 809 F.3d 263, 267 (5th Cir. 2015). Therefore, "a complaint that alleges the existence of a federal question establishes jurisdiction, even though the court ultimately decides that the plaintiff's federal rights were not violated." *Mobil Oil Corp. v. Kelley*, 493 F.2d 784, 786 (5th Cir. 1974) (citations omitted).

### A. Original Subject Matter Jurisdiction

Under the appropriate analysis, the City's argument that this Court lacks federal question jurisdiction to hear a Fifth Amendment takings claim is meritless in all aspects. Baker invokes the Court's federal question jurisdiction under 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution . . . of the

United States." 28 U.S.C. § 1331. Baker brings a federal takings claim under the Just Compensation Clause of the Fifth Amendment to the United States Constitution, made binding on the States through the Fourteenth Amendment. *See San Diego Gas & Elec. Co. v. City of San Diego*, 450 U.S. 621, 623 n.1 (1981) ("The Fifth Amendment's prohibition applies against the States through the Fourteenth Amendment."). Thus, under the plain language of § 1331, a federal cause of action exists on the face of Baker's Complaint. *See* 28 U.S.C. § 1331.

Recent Supreme Court precedent further bolsters this determination. In *Knick v. Township of Scott, Pa.*, the Court held "a government violates the Takings Clause when it takes property without compensation, and that property owner may bring a Fifth Amendment claim under § 1983 at that time." 139 S. Ct. 2162, 2177 (2019). Baker did exactly this—upon the City's refusal to compensate her for damages arising from the Department's standoff with Little, she filed a § 1983 action.

The City asserts that neither the Supreme Court nor a single Court of Appeals has recognized this cause of action "as one asserting federal question under the Fifth or Fourteenth Amendments." (Dkt. #6 at p. 11). Not so. Rather, neither the Supreme Court nor any federal appellate court in the country has dismissed a claim of this type for the district court's lack of federal question jurisdiction. This includes the courts presiding over certain cases the City cites in support of its erroneous assertion. *See, e.g.*, *Johnson v. Manitowoc Cnty.*, 635 F.3d 331 (7th Cir. 2011) (addressing the case on the merits); *Lech v. Jackson*, 791 F. App'x. 711 (10th Cir. 2019) (same); *Knick*, 139 S. Ct. 2162 (same); *John Corp. v. City of Hous.*, 214 F.3d 573 (5th Cir. 2000) (same); *Yawn v. Dorchester Cnty.*, 1 F.4th 191 (4th Cir. 2021) (same).

Because Baker's likelihood of recovery on her claim is not a proper consideration when assessing subject matter jurisdiction, the City's argument that the Court lacks subject matter

jurisdiction due to Baker's inability to prevail is unavailing. Such an argument belongs in a 12(b)(6), merit-based analysis.

In accordance with the foregoing, the Court finds it has original jurisdiction over Baker's Fifth Amendment takings claim. However, Baker also asserts a taking in violation of the Texas Constitution. The Court must therefore determine whether it may exercise jurisdiction over Baker's claim for a taking in violation of the Texas Constitution—a state law claim over which the Court does not have original jurisdiction.[2]

### B. Supplemental Jurisdiction

28 U.S.C. § 1367 governs supplemental jurisdiction. Under § 1367(a):

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).[3] "The question under section 1367(a) is whether the supplemental claims are so related to the original claims that they form part of the same case or controversy, or in other words, that they 'derive from a common nucleus of operative fact.'" *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

The City's supplemental jurisdiction argument is premised on the Court's dismissal of Baker's federal cause of action. Because the Court does not dismiss Baker's federal claim, the Court finds it unnecessary to address § 1367(a) supplemental jurisdiction in detail. Briefly, in this case "both the federal and state claims on the face of the pleadings concern the same core factual issue:" the uncompensated damage to Baker's home following a standoff between the Department

---

[2] The parties do not dispute that diversity jurisdiction under 28 U.S.C. § 1332 is unavailable, as Baker seeks an amount below the requisite $75,000 amount in controversy. Thus, absent supplemental jurisdiction under 28 U.S.C. § 1367, the Court cannot hear Baker's state law claim.

6

and an armed fugitive. *Id.* As such, "[t]he claims are sufficiently related for purposes of section 1367(a)[,]" and the Court may exercise supplemental jurisdiction over Baker's state law takings claim. *Id.*[4]

Accordingly, the Court finds it both can and should exercise jurisdiction over Baker's state law takings claim. The Court now moves to the City's alternative Rule 12(b)(6) challenge.

## II. Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted

### LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine

---

[4] The Court's inquiry does not end upon finding power to exercise supplemental jurisdiction. The Court must also decide whether it should exercise such jurisdiction under § 1367(c). As mentioned, however, the City's supplemental jurisdiction argument is premised on the Court's dismissal of Baker's federal cause of action. The City does not discuss the § 1367(c) factors: A district court should decline to exercise supplemental jurisdiction if: (1) the state claims raise novel or complex issues of state law; (2) the state claims substantially predominate over the federal claims; (3) the federal claims have been dismissed; or (4) there are exceptional circumstances or other compelling reasons for declining jurisdiction. § 1367(c). Under these factors, the parties do not offer, and the Court does not find, any reason to decline to exercise jurisdiction over Baker's state law claim.

whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

The City asserts that "Baker's lawsuit should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure" for three reasons: (1) "[t]he Complaint fails to establish municipal liability under Section 1983[;]" (2) "[t]he Complaint fails to establish the existence of a

8

Fifth Amendment violation[;]" and (3) "Baker's takings claim under the Texas Constitution . . . is a sheer attempt to allege tort recovery in a claim wearing takings claim clothing" (Dkt. #6 at pp. 17, 19, 22–23).

Baker contends that she "has pleaded a plausible federal claim for just compensation" because "[e]xercises of the police power are susceptible to a [t]akings analysis[,]" and "*Monell* is not applicable to [her] § 1983 claim" (Dkt. #9 at pp. 10, 24). In support of this, Baker points to the "'self-executing character' of the Takings Clause" (Dkt. #9 at p. 19 (quoting *First Eng. Evangelical Lutheran Church of Glendale v. L.A. Cnty.*, 482 U.S. 304, 315 (1987)). She additionally asserts that, even if *Monell* is applicable, she has alleged "the City made the official 'decision' not to compensate Ms. Baker for the destruction of her home." (Dkt. #9 at p. 21). Thus, Baker argues she "has alleged facts that plausibly establish a federal [t]akings claim" (Dkt. #9 at p. 17).

Further, according to Baker, she "has pleaded a plausible Texas claim for just compensation" because the Department "intentionally destroy[ed] [her] property in order to apprehend a dangerous, armed fugitive," resulting in property that was "'taken' and 'damaged' within the meaning of the Texas Constitution." (Dkt. #1 ¶ 38). Finally, Baker claims that "[t]he City mistakenly addresses [her] [state law] claim as if it alleged a tort" (Dkt. #9 at p. 24).

### A. Federal Law Takings Violation

Baker brings a claim under both the Fifth Amendment of the United States Constitution and 42 U.S.C. § 1983 for the City's purported violation of the Takings Clause, which raises unique constitutional questions that have not been squarely decided by the Supreme Court or the Fifth Circuit. Accordingly, the Court will provide detailed background on § 1983, *Monell* and its progeny, and the established scope of the Takings Clause. The Court will begin its analysis by

addressing the City's argument that Baker has not properly pleaded § 1983 liability and then determine whether Baker plausibly pleaded the existence of a Fifth Amendment violation.

### 1. Suit and Liability Under 42 U.S.C. § 1983

Section 1983 provides a cause of action for individuals who have been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person or entity acting under color of state law. 42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Though the Supreme Court at first "completely immunize[d] municipalities from suit under § 1983," *see Monroe v. Pape*, 365 U.S. 167 (1961), it later overturned this precedent, allowing municipality liability in particular circumstances. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 695, 701 (1978).

Under *Monell*, to establish § 1983 liability against a municipality, a plaintiff must show that the protected right was violated by the execution of the municipality's policy or custom. The theory of respondeat superior is insufficient to establish a municipality's liability in § 1983 cases. *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (citing *Monell*, 436 U.S. at 691). Liability may be imposed "only where [the government entity] itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Thus, to hold the City liable under § 1983, Baker must establish that the "execution of [the City's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Deville*, 567 F.3d at 170. A governmental entity may also be sued "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom

has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690–91.

However, in *Monell*, the Supreme Court "attempted only to sketch . . . the § 1983 cause of action against a local government," electing to "leave further development of this action to another day." *Id.* at 695. One such later development took place in *Pembaur v. City of Cincinatti*, 475 U.S. 469 (1986), when the Court confronted a contour of the official custom or policy requirement. It clarified *Monell*, stating "a municipality may be liable for a single *decision* by its properly constituted legislative body . . . because even a single decision by such a body constitutes an act of official government policy." *Id.* at 480. It is, subsequently, well established in the Fifth Circuit that "a single unconstitutional action by a municipal actor may give rise to municipal liability if that actor is a final policymaker." *Bolton v. City of Dall.*, 541 F.3d 545, 548 (5th Cir. 2008) (citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005)).

In the present case, Baker alleges a violation of her Fifth Amendment rights, made binding on the states via the Fourteenth Amendment. The City contends that "§ 1983 municipal liability may only attach through an official action in accordance with official policy or custom" (Dkt. #6 at p. 19). Baker argues that "*Monell* is not applicable to [her] § 1983 claim" because she "alleges an uncompensated [t]aking, not a tort" (Dkt. #9 at p. 26). Given the history and purpose of § 1983 and the questions left open in *Monell*, both arguments are compelling.

While the Court agrees with the City that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor[,]" *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997), the actions of the Department's officers are not what give rise to Baker's suit. Rather, Baker's claim arises from the *denial* of the City to compensate for such officers' actions. *See John Corp.*, 214 F.3d at 581 (recognizing that "a violation of the Takings

11

Clause does not occur until just compensation has been denied"). Had the City compensated Baker for the damage caused by the standoff, this lawsuit would not exist in its present form—despite the officers' actions. Because Baker seeks to hold the City liable for denying compensation, rather than to hold the City vicariously liable for the officers' actions in destroying the property, this specific reasoning behind the City's argument fails.

But Baker's assertion that *Monell* does not apply in takings cases is not obvious—particularly when the case is brought under § 1983.[5] Although "respondeat superior or vicarious liability will not attach under § 1983," *City of Canton*, 489 U.S. at 385, the Supreme Court has deemed the *Monell* official policy a "*requirement* [] intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479. Therefore, it is likely not enough for Baker to plead an intentional act. Under *Monell* and its progeny, it seems she must plead an official policy if she wishes to proceed under § 1983.[6]

Because at this stage the Court construes all well-pleaded facts in the light most favorable to Plaintiff, the Court finds Baker has plausibly alleged an official policy promulgated by the City of McKinney. As alleged in the Complaint, after the City's destruction of her property, Baker

---

[5] As mentioned *supra*, Baker, in support of her argument that *Monell* does not apply, cites to case law highlighting the "self-executing character" of the Fifth Amendment right to just compensation. *See* (Dkt. #9 p. 19 (quoting *First Eng.*, 482 U.S. at 315)). This argument has merit but is improperly placed in a § 1983 claim. If the Fifth Amendment is "self-executing" as Supreme Court jurisprudence suggests, it would seem a plaintiff could recover monetary damages without the § 1983 vessel. *See, e.g.*, *First Eng.*, 482 U.S. at 315 ("The Supreme Court has explained that a Fifth Amendment takings claim is self-executing and grounded in the Constitution, such that additional [s]tatutory recognition was not necessary." (quoting *Jacobs v. United States*, 290 U.S. 13, 16 (1933))); *United States v. Dickinson*, 331 U.S. 745, 748 (1947). "We have held that '[i]f there is a taking, the claim is 'founded upon the Constitution' . . . *United States v. Causby*, 328 U.S. 256, 267 (1946). And we have explained that 'the act of taking' is the 'event which gives rise to the claim for compensation.'" *Knick*, 139 S. Ct. at 2170 (quoting *United States v. Dow*, 357 U.S. 17, 22 (1958)).
[6] The Court recognizes cases such as *Knick* where the Supreme Court assessed a Fifth Amendment taking claim under § 1983 against a municipality without discussing an official custom or policy—or even mentioning *Monell* for that matter. 139 S. Ct. 2162. This Court speculates that either one or two circumstances lead to this result: (1) the custom or policy is explicitly stated in or obvious from the stipulated facts; or (2) the municipality fails to raise a *Monell* argument, and thereby waives it.

"requested compensation from the City of McKinney, but the City denied the request, stating that there was 'no liability on the part of the City or any of its employees.'" (Dkt. #1 ¶ 28). This assertion is sufficient to plausibly allege a "a single unconstitutional action by a municipal actor"—that is, a denial of the constitutionally mandated just compensation following a taking by the government. *Bolton*, 541 F.3d at 548.

However, the Court must still determine whether Baker has sufficiently pleaded a specific Fifth Amendment violation.

### 2. Fifth Amendment Violation

Regarding the existence of a constitutional violation, the City contends that "a legitimate exercise of the police power does not constitute a taking under the Fifth Amendment" (Dkt. #6 at p. 22). The City further alleges that "Baker's alleged takings claim under the Fifth Amendment fails to state a cognizable claim of constitutional harm[] and should be dismissed under Rule 12(b)(6)" (Dkt. #6 at p. 23). Baker does not contest that the Department's actions were valid exercises of the State's police power (*see* Dkt. #9 at p. 17). Instead, Baker responds that "[e]xercises of the police power are susceptible to a [t]akings analysis" and that a takings analysis applies to a broader ambit of situations than just the traditional eminent domain power. (Dkt. #9 at p. 10).

"[A] property owner has suffered a violation of [her] Fifth Amendment rights when the government takes [her] property without paying for it." *Knick*, 139 S. Ct. at 2167. A taking in violation of the Fifth Amendment may come in two forms—physical or regulatory. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 321 (2002) ("The text of the Fifth Amendment itself provides a basis for drawing a distinction between physical takings and regulatory takings."). A physical taking is a "direct government appropriation or

physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). Expanding the scope of a taking, "the [Supreme] Court [later] recognized that government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster—and that such 'regulatory takings' may be compensable under the Fifth Amendment." *Id.* Despite the established line between physical and regulatory takings, "[i]n view of the nearly infinite variety of ways in which government actions or regulations can affect property interests, the [Supreme] Court has recognized few invariable rules in this area." *Ark. Game and Fish Comm'n v. United States*, 568 U.S. 23, 31 (2012).

The City asks this Court to adopt what would constitute a per se rule—that destruction to private property resulting from the exercise of valid police power cannot constitute a Fifth Amendment Taking. Neither the Supreme Court nor the Fifth Circuit have directly found a taking that requires just compensation when destruction of property results from the exercise of valid police power. The City correctly points out that other circuits have foreclosed recovery under similar circumstances. *See Manitowoc Cty.*, 635 F.3d 331; *Lech*, 791 F. App'x. 711; *AmeriSource Corp.*, 525 F.3d 1149.

However, both the Fifth Circuit and the Supreme Court have suggested such action *could* amount to a taking. In *John Corp. v. City of Houston*, the Fifth Circuit asserted that "a distinction between the use of police powers and of eminent domain power . . . cannot carry the day" when assessing whether a taking has occurred. 214 F.3d at 578–79. Further "[t]he Supreme Court's entire 'regulatory takings' law is premised on the notion that a city's exercise of its police powers can go too far, and if it does, there has been a taking." *Id.* (citing *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)). In *Lucas v. S.C. Coastal Council*, the Supreme Court opined that if "the uses of private property were subject to unbridled, uncompensated qualification under the police power, the

14

natural tendency of human nature would be to extend the qualification more and more until at last private property disappeared." 505 U.S. 1003, 1014 (1992). It is for this reason the Supreme Court has cautioned against "the temptation to adopt what amount to per se rules in either direction" of the takings analysis. *Tahoe-Sierra*, 535 U.S. at 342.

The Court finds the Fifth Circuit and Supreme Court reasoning persuasive, particularly at this stage of litigation where it construes allegations in the light most favorable to Baker. At the motion to dismiss stage, it would be imprudent to foreclose Baker's ability to recover based on the shaky reasoning recited in non-binding cases from other circuits—especially when both the Fifth Circuit and the Supreme Court have alluded that a taking could result from destructive police power. Because Baker has plausibly alleged the City's destruction of her home resulting from the exercise of its police power *could* amount to a taking, the Court continues its takings analysis.

"[N]ot every destruction or injury to property by governmental action has been held to be a 'taking' in the constitutional sense[;]" however, difficulty exists in "trying to draw the line between what destructions of property by lawful governmental actions are compensable 'takings' and what destructions are 'consequential' and therefore not compensable." *Armstrong v. United States*, 364 U.S. 40, 48 (1960) (collecting cases). Baker pleaded that the City took her property and used it to further the public interest—that is, to apprehend an armed fugitive. In its pursuit of the fugitive and pursuant to its police powers, Baker alleges the City caused significant economic damage—over $50,000—to her home. Then, the City refused to compensate her for the damage. Therefore, Baker alleges, the City took her property without just compensation in violation of the Fifth Amendment. While the Court acknowledges that governmental bodies are not "liable under the Just Compensation Clause to property owners *every time* policemen break down the doors of buildings to foil burglars thought to be inside[,]" *Nat'l Bd. of Young Men's Christian Ass'ns v.*

15

*United States*, 395 U.S. 85, 92 (1969) (emphasis added), Baker has alleged damage to her private property—and the City's refusal to compensate for such damage—that plausibly amounts to a Fifth Amendment violation. Accordingly, Baker has pleaded a plausible right to relief sufficient to withstand a Rule 12(b)(6) challenge regarding her Fifth Amendment Takings Clause claim.[7]

### B. State Law Takings Violation

The City also contends that Baker's state law takings claim fails under the Texas Constitution. Specifically, the City argues that "Baker's claim under Texas law should be dismissed because it is a sheer attempt to allege tort recovery in a claim wearing takings claim clothing" (Dkt. #6 at p. 23). Baker responds that the Texas Supreme Court's decision in *Steele v. City of Houston*, 603 S.W.2d 786 (Tex. 1980), "allow[ed] a claim that is, for all relevant purposes, the very same as Ms. Baker's[,]" and "[t]ry as it might, the City cannot escape the application of that case to this one" (Dkt. #9 at p. 19).[8]

"The Texas Constitution provides that '[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made." *Sheffield Dev. Co. v. City of Glenn Heights*, 140 S.W.3d 660, 669 (Tex. 2004) (quoting Tex. Const. art. 1, § 17). "By their plain terms, the takings provisions of the state and federal constitutions do not limit the government's power to take private property for public use but instead require that a taking be compensated." *Id.* "Generally, plaintiffs seeking recovery for a taking must prove the government 'intentionally took or damaged their property for public use, or was substantially certain that would be the result.'" *Kerr*, 499 S.W.3d at 799 (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 807

---

[7] Whether the damage to Baker's home *does* amount to a constitutional taking that requires just compensation is better left to summary judgment. At present, the Court must only determine whether a plausible right to relief exists. *See Ashcroft*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (quoting *Twombly*, 550 U.S. at 556)).

[8] The applicability of *Steele*, which provides for potential recovery under the specific facts of this case, is best resolved at summary judgment—not at the present Rule 12(b)(6) motion where the Court is concerned only with plausibility of a cause of action.

(Tex. 2005)). In accordance with the intentionality requirement, "a taking cannot be established by proof of mere negligent conduct by the government." *Id.* (citation omitted). Rather, "the requisite intent is present when a governmental entity knows that a specific act is causing identifiable harm or knows that the harm is substantially certain to result." *Gragg*, 151 S.W.3d at 555 (citing *Brazos River Auth. v. City of Graham*, 354 S.W.2d 99 (Tex. 1961)). Importantly, "[o]nly affirmative conduct by the government will support a takings claim." *Kerr*, 499 S.W.3d at 799.

While negligence cannot serve as the basis for a takings claim under the Texas Constitution, Baker has not asserted mere negligence, and she "is the master of her Complaint" (Dkt. #9 at p. 4).[9] Rather, Baker pleaded that her home was intentionally destroyed in the government's effort to apprehend Little. The affirmative actions Baker alleges include Department officers: (1) storming the house; (2) breaking windows; (3) knocking down the garage door; (4) knocking down the backyard fence; and (5) firing dozens of explosive tear gas cannisters into the home. Such actions were intentional, even if the City's motives were to secure a threat to public safety. To be sure, the City itself indicates "the [Department] dr[ew] up plans" before busting into Baker's home to apprehend Little. (Dkt. #6 at p. 22). The resulting damage, therefore, can hardly be considered "incidental consequence[s] of the City's actions" (Dkt. #6 at p. 27). Lastly, Baker alleges the City took her property for a public use—apprehension of a dangerous fugitive whose freedom threatened the community and public as a whole.

Baker has sufficiently pleaded a takings claim under the Texas Constitution. The actions taken by the Department officers damaged Baker's home—that much appears undisputed. Even if

---

[9] The City's attempt to bring Baker's claims under *Ridge Line, Inc. v. United States*, 346 F.3d 1346 (Fed. Cir. 2003), is unavailing. The test promulgated by the Federal Circuit is not Texas law, and irrespective of the opinion's non-binding nature, the Court finds Baker has appropriately pleaded facts alleging a takings claim—not a tort action.

the government did not *intend* to damage Baker's property to apprehend Little, the City was substantially certain such damage would result. It is unreasonable for the City to suggest the Department officers stormed Baker's house, broke the windows, knocked down the garage door, rammed down the backyard fence with a tank-like vehicle, and fired dozens of explosive tear gas cannisters into the home without a degree of certainty that such actions would cause damage to the property. As such, and after considering the pleadings and case law cited above, the Court finds Baker has sufficiently pleaded a violation of Article I, § 17 of the Texas Constitution as to survive a Rule 12(b)(6) motion to dismiss.

## CONCLUSION

It is therefore **ORDERED** that Defendant City of McKinney's Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss (Dkt. #6) is hereby **DENIED**.

**IT IS SO ORDERED.**
**SIGNED this 18th day of November, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE