# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| VICKI BAKER, § | |
|     *Plaintiff*, § | |
| § | |
| v. § | Civil Action No. 4:21-CV-00176 |
| § | Judge Mazzant |
| CITY OF MCKINNEY, TEXAS, § | |
|     *Defendant*. § | |

### **ORDER**

Pending before the Court is Plaintiff's Motion in Limine (Dkt. #61). Having reviewed the motion, the response, and the applicable law, the Court finds the motion should be **GRANTED.**

### BACKGROUND

This case arises from the uncompensated damages to Plaintiff Vicki Baker's ("Baker") home following the City of McKinney Police Department's (the "Department") standoff with an armed fugitive that occurred on July 25, 2020.

Baker alleges that extensive damage to her home resulted from the Department's standoff. Department officers documented the damage to Baker's home in their police records. One officer documented the damage through photographs, which show "the toppled fence and battered front door; the broken windows; the damaged roof and landscaping; the blown-out garage door; and the garage ceiling, attic floor, and dry walls all torn through with gas canisters" (Dkt. #19 at p. 4). Much of the damage went beyond what could be captured visually:

> The explosions left [] Baker's dog permanently blind and deaf. The toxic gas that permeated the [H]ouse required the services of a HAZMAT remediation team. Appliances and fabrics were irreparable. Ceiling fans, plumbing, floors (hard surfaces as well as carpet), and bricks needed to be replaced—in addition to the windows, blinds, fence, front door, and garage door. Essentially all of the personal

> property in the [H]ouse was destroyed, including an antique doll collection left to [] Baker by her mother.

(Dkt. #19 at pp. 4–5). Baker requested Defendant City of McKinney (the "City") compensate her for the damages to her home. However, to this day, the City has refused to provide Baker any compensation.

On March 3, 2021, Baker filed suit against the City for violations of the Takings Clauses of both the United States and Texas Constitutions. On April 29, 2022, the Court granted partial summary judgment in favor of Baker, and determined that the City's conduct constituted a taking under the Fifth Amendment of the United States Constitution and under Article 1, Section 17 of the Texas Constitution (Dkt. #51). Notably, the Court found the City liable directly under the self-executing Fifth Amendment, holding that claims pursuant to the Takings Clause do not require the 42 U.S.C. § 1983 vessel necessary for other constitutional claims. However, because Baker also brought a claim under § 1983, the Court considered this claim as well, ultimately finding an issue of fact that the Court declined to resolve at summary judgment. Further, the Court did not determine the amount of just compensation to which Baker is entitled. Accordingly, damages and the City's liability under § 1983 are issues that have been reserved for jury determination at trial.

On May 5, 2022, counsel for the City took Baker's deposition. During that deposition, Baker attested that, in total, she is seeking $50,000 for the damages to her home and loss of personal property. She arrived at this amount based on the total cost of repairs she incurred, as well as the value of permanently destroyed personal property. While Baker did pay some of the repair costs out of her own pocket, she admitted that many of the repairs were either covered by charitable or private donations, or were paid for by her insurance (Dkt. #61, Exhibit 1, pp. 8–10).

On June 6, 2022, Baker filed the present motion, seeking to exclude any evidence of

2

donations or insurance proceeds she received to help repair her home (Dkt. #61). She argues that such evidence is not admissible at trial under the collateral source rule and, likewise, cannot be used to reduce the amount of just compensation to which she is entitled. On June 16, 2022, the City filed its response, generally arguing that it is inappropriate to apply the collateral source rule—a rule applicable in torts cases—to a takings case (Dkt. #62). Baker filed a reply the same day (Dkt. #63), and the City filed a sur-reply one day later (Dkt. #64). Jury trial in this case began on June 20, 2022.

## LEGAL STANDARD

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Harris v. BMW of N. Am., LLC*, No. 4:19-CV-00016, 2022 WL 125345, at *1 (E.D. Tex. Jan. 12, 2022) (quoting *Harkness v. Bauhaus U.S.A., Inc.*, 2015 WL 631512, at *1 (N.D. Miss. Feb. 13, 2015)). "The Fifth Circuit has observed that '[m]otions in limine are frequently made in the abstract and in anticipation of some hypothetical circumstance that may not develop at trial.'" *Brown v. Carr*, No. C-04-471, 2008 WL 167313, at *1 (S.D. Tex. Jan. 16, 2008) (quoting *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980)). "Evidentiary rulings, especially those addressing broad classes of evidence, should often be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in proper context." *Id*. (citing *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975)). Finally, "[t]he purpose of motions in limine is not to re-iterate matters which are set forth elsewhere in the Rules of Civil Procedure or Rules of Evidence, but, rather, to identify specific issues which are likely to arise at trial, and which, due to their complexity or potentially prejudicial nature, are best addressed in the context of a motion in

limine." *Maggette v. BL Dev. Corp.*, 2011 WL 2134578, at *4 (N.D. Miss. May 21, 2011) (emphasis in original).

## ANALYSIS

As an exercise of sovereignty, the government has the authority to take private property for a public purpose. "In England, when the king did so, payment for what was taken was, at least before the Magna Carta, a sometime thing, and largely at the discretion of the sovereign." *Hendler v. United States*, 952 F.2d 1364, 1371 (Fed. Cir. 1991) (*citing* 1 P. NICHOLS, *The Law of Eminent Domain* § 2 (1917)). But in the United States, compensation for a government taking is not left up "to the sovereign's good will"—it is an entitlement guaranteed by the Constitution. *Id.* One need look no further for confirmation than to the final clause of the Fifth Amendment: "nor shall private property be taken for public use, without just compensation." U.S. CONST. amend. V. The fundamental purpose of the Fifth Amendment is to ensure landowners are justly compensated by the government when their property is taken under sovereign authority. It is from this constitutional guarantee that the question presently before the Court arises: What compensation is just?

In answering this question, the City argues that because Baker received donations and insurance proceeds to cover her repair costs, she has already been at least partially compensated, and thus these amounts must be reduced from the "just compensation" owed by the City (Dkt. #62). On the other hand, Baker contends that the collateral source rule applies to exclude any evidence of compensation she received from third-party collateral sources (Dkt. #61). To this, the City makes two primary responses: (1) the collateral source rule is a tort concept meant to apply to tortfeasors and does not apply to a takings claim where the government acted under a valid police power; and (2) collateral benefits are relevant to determining just compensation (Dkt. #62 at p. 6).

The issue of whether the collateral source rule applies to a takings claim has not yet been

4

addressed by a Texas court or any court within the Fifth Circuit. In fact, as even the City admits, there is not a single court—state or federal—addressing the issue within the context of the instant action (Dkt. #64 at p. 3). Put differently, no court has discussed how just compensation should be determined in a takings case, arising out of law enforcement activities, where the plaintiff receives monetary funds from collateral third parties to repair property damages caused by the taking. The Court is, therefore, presented with an issue of first impression. However, based on the facts of this case, the Court finds it unnecessary to decide whether, as a matter of law, the collateral source rule applies to takings claims. Instead, regardless of the collateral source rule's applicability, the Court finds that the policies underlying the rule apply here to exclude any evidence of donations and benefits Baker received in repairing the damages to her home.

I.    **Whether the Collateral Source Rule Applies in Takings Claims**

The collateral source rule provides:

> [T]he fact that an injured person receives from a collateral source payments which may have some tendency to mitigate the consequences of the injury which he otherwise would have suffered may not be taken into consideration in assessing the damages or other recovery to which the claimant may be entitled.

*Traders & Gen. Ins. Co. v. Reed*, 376 S.W.2d 591, 593 (Tex. Civ. App.—Corpus Christi 1964, writ ref'd n.r.e.); *accord Sweep v. Lear Jet Corp.*, 412 F.2d 457, 459 (5th Cir. 1969).

When applied, this rule "bars a tortfeasor from reducing the damages it owes to a plaintiff 'by the amount of recovery the plaintiff receives from other sources of compensation that are independent of (or collateral to) the tortfeasor.'" *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 304–05 (5th Cir. 2008) (quoting *Davis v. Odeco, Inc.*, 18 F.3d 1237, 1243 (5th Cir.1994)); *see also Phillips v. W. Co. of N. Am.*, 953 F.2d 923, 929 (5th Cir. 1992) ("[T]he collateral source rule . . . generally denies to a tortfeasor a reduction in its liability by any amounts the plaintiff receives from a source collateral to, or independent of, the tortfeasor."). "Collateral source" refers

to a third-party who acts for the benefit of the plaintiff. It has traditionally been applied to third-party benefits like insurance and government benefits. *See, e.g.*, *Brown v. Am. Transfer & Storage Co.*, 601 S.W. 2d 931, 934–36 (insurance); *Twin City Fire Ins. Co. v. Gibson,* 488 S.W. 2d 565, 571 (Tex. Civ. App.—Amarillo 1972, writ ref'd n.r.e.) (government benefits).

There are several equitable policies underlying the collateral source rule. One purpose "is to ensure that tortfeasors bear the costs of their own conduct." *Johnson*, 544 F.3d at 304. "In its simplest form, the rule asks whether the tortfeasor contributed to, or was otherwise responsible for a particular income source." *Deperrodil v. Bozovic Marine, Inc.*, 842 F.3d 352, 358 (5th Cir. 2016). If the tortfeasor contributes to or pays for the benefit—for example, an employer-tortfeasor paying for part of an employee's health-insurance plan—the collateral source rule may not apply, and the plaintiff's damages may be reduced by the amount of the benefit provided. *Id.*; *see also Global Petrotech, Inc. v. Engelhard Corp.*, 58 F.3d 198, 202 (5th Cir. 1995) ("For the collateral source rule to apply, the source of the benefit must be truly 'collateral.'").

To elaborate further, the rule applies where the tortfeasor defendant, itself, is not the source of the plaintiff's benefits. "In those cases, deducting the third-party benefits would result in a windfall to the defendant, who did not provide the compensation, but who would benefit from the reduction in the damages award." *Wat Bey. v. City of New York*, No. 99-CV-03873, 2013 WL 12082743, at *23 (S.D.N.Y. Sept. 4, 2013); *Big Bird Tree Servs. v. Gallegos*, 365 S.W. 3d 173, 176 (Tex. App.—Dallas 2012) (stating the rule operates to "prevent a windfall to the defendant when the plaintiff's costs are paid by a third party for the benefit of the plaintiff."). This reflects "the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall to the tortfeasor." *Haygood v. De Escabedo*, 356 S.W. 3d 390, 395 (Tex. 2011); *see also Sweep*, 412 F.2d at 459 (stating that the collateral source rule sounds in equity—if

6

there must be a windfall "the injured party is more justly entitled to it than the wrongdoer."). Accordingly, "courts typically limit the 'collateral source rule' to cases in which the benefits that the plaintiff received were paid by the defendant." *Wat Bey*, 2013 WL 12082743, at *23.

"The rule also prevents tortfeasors from paying twice for the same injury—a result that would achieve both overdeterrence and overcompensation." *Phillips*, 953 F.2d at 930. Further, the policies supporting the rule's application increase where the plaintiff's eventual recovery will be used to repay the collateral source. *See Structural Metals, Inc. v. S & C Elec. Co.*, 2013 WL 870084, at *5 (W.D. Tex. Mar. 7, 2013) (stating the purpose of the collateral source rule was satisfied where insurance had a subrogation right to the plaintiff's recovery, thus removing any potential windfall to the plaintiff). In this scenario, because the plaintiff intends to return to the collateral source the value of any benefits the plaintiff received, there is no longer a risk of potential windfall to the plaintiff. *Id.*

While the Court finds it unnecessary to determine whether the collateral source rule as matter of law applies in a takings context, the Court disagrees with the City's assertion that the rule cannot apply here because Baker has not asserted a tort claim. True, the collateral source rule is generally applied in tort cases. However, even outside of the tort context, the rule has been applied where tort principles are present in the case and particularly where the plaintiff is seeking property damages. *See, e.g., Structural Metals*, 2013 WL 870084, at *5 (applied in contract case where claims for property damage were more akin to tort); *Metoyer v. Auto Club Fam. Ins. Co.*, 536 F. Supp. 2d 664, 669 (E.D. La. 2008) (same); *El Escorial Owners' Ass'n v. DLC Plastering, Inc.*, 154 Cal. App. 4th 1337, 1359 (2007) (same). Moreover, the oft-cited reason for not extending the collateral source rule in the standard contractual context is that a person should not benefit more from a contract's breach than its performance. *See* RESTATEMENT (SECOND) OF CONTRACTS

7

347 cmt. e (1981). This sentiment is appropriate where, in the absence of a breach, the parties have pre-determined a contracted-for benefit that each will receive. But the same logic does not apply in a takings claim, whereby the government, at its own will, uses its sovereign authority to take private property for public use and the owner is left with "just compensation." To be sure, the compensation or "benefit" is not always "just" in the eye of the private property owner at all because it does not account for the sentimental value often accompanied with a land parcel or a home. *See Kelo v. City of New London, Conn.*, 545 U.S. 469, 475 (2005) (property owners facing condemnation had lived in their homes for decades, some their entire lives).

Even so, regardless of whether the tort-based collateral source rule applies here, the principles underlying both the rule and the determination of "just compensation" lead to the same result: evidence of collateral benefits should be excluded in calculating the amount of just compensation to which Baker is entitled. In other words, it is unnecessary for the Court to hold that the collateral source rule applies here, because even if it did not, for equity reasons, the outcome would be the same.

**II.     The Principles Behind "Just Compensation" Require Exclusion of Baker's Collateral Benefits**

"When a court is called upon to determine what is just compensation . . . each case must be decided on its individual facts." *United States v. Lee*, 360 F.2d 449, 452 (5th Cir. 1966); *see also Clark v. White*, 185 F.2d 528, 530 (5th Cir. 1950) ("The Constitution requires that just compensation be made and the statutes charge the [ ] court with seeing that this is done."). "'Just compensation' invokes the equitable powers of the court, and courts must use their equity powers to put an owner of land being condemned in as good position as he would have been if his property had not been taken, or as nearly so as is possible under the given circumstances." *Lee*, 360 F.2d at 452. That said, "[i]t is well settled that in determining the compensation due for a taking, 'the

question is, [w]hat has the owner lost?'" *Wheeler v. City of Pleasant Grove*, 833 F.2d 267, 270 (11th Cir. 1987) (quoting *Boston Chamber of Com. v. City of Boston*, 217 U.S. 189, 195 (1910)). "The owner's loss is measured by the extent to which governmental action has deprived him of an interest in property." *Id.* (citing *United States v. Gen. Motors Corp.*, 323 U.S. 373, 378 (1945)); *see also United States v. Petty Motor Co.*, 327 U.S. 372, 377 (1946) (noting that while the Constitution does not define the meaning of just compensation, "it has come to be recognized that just compensation is the value of the interest taken.").

Like the collateral source rule, just compensation is founded from "ideas of fairness and equity." *United States v. Commodities Trading Corp.*, 339 U.S. 121, 124 (1950). At the core of the collateral source rule is the concept that the injury-causing party should be responsible for the costs of their conduct. *Johnson*, 544 F.3d at 304. The same concept underlies just compensation. As a preliminary matter, however, the City argues that it is not a "tortfeasor" or "wrongdoer" because it acted according to valid police power, and contends that it would be inappropriate to apply a rule like the collateral source rule which is designed for tortfeasors. The Court is not persuaded by the City's argument. Regardless of the terminology used, the City did wrong Baker in failing to provide her with just compensation. It is constitutionally mandated that the government pay just compensation for private property taken for public use. U.S. CONST. amend. V. Put differently, when the government takes property pursuant to a valid police power, as the City did here, the Constitution requires that the government compensate the owner so that the owner "will be put in as good position, pecuniarily, as he would have occupied if his property had not been taken." *Lee*, 360 F.2d at 452. Acting pursuant to a valid public purpose does not excuse the City's failure to provide Baker any compensation for the taking of her private property—much less *just* compensation.

As this Court has indicated on multiple occasions (Dkt. #23 at p. 5; Dkt. #51 at p. 11), and as the Supreme Court has likewise held, "a property owner [ ] suffer[s] a violation of [her] Fifth Amendment rights when the government takes [her] property without paying for it." *Knick v. Township of Scott, Pa.*, 139 S. Ct. 2162, 2167 (2019). Therefore, in failing to provide just compensation to Baker after taking her private property, the City injured Baker by violating her constitutional rights. *See* Gideon Kanner, *"Fairness and Equity," or Judicial Bait-and-Switch?*, 4 ALBANY GOV. L. REV. 38 (2011) ("'Compensation'—even without the qualifier 'just'—means that the aggrieved parties have suffered a legally cognizable detriment, and the law now requires that they be recompensed, i.e., made whole.").

Furthermore, in just compensation cases, courts have allowed the amount of compensation to be offset where the government is responsible for the collateral benefits. Just like the collateral source rule, the dispositive inquiry is whether the government contributed to or otherwise paid for the collateral benefit. *Deperrodil*, 842 F.3d at 358. For example, *In re Upstream Addicks and Barker (Texas) Flood-Control Reservoirs*, No. 17-9001, 2022 WL 1284465 (Fed. Cl. Apr. 29, 2022), involved a takings case where the court found the government liable for property damages caused by impounded floodwater derived from Hurricane Harvey in 2017. The defendant asserted that certain tax benefits were relevant to the determination of just compensation, in that the amount of compensation should be offset by the tax benefits plaintiffs received in claiming a casualty loss deduction. *Upstream Addicks*, 2022 WL 1284465, at *8. The court excluded the evidence, stating that it was not convinced such a collateral benefit was a relevant consideration in the calculation of just compensation. *Id.* (*citing Phillips*, 953 F.2d at 929 (noting there is no 'reduction in [ ] liability by any amounts the plaintiff receives from a source collateral to, or independent of, the tortfeasor')); *see also In re Upstream Addicks and Barker (Texas) Flood-Control Reservoirs*,

No. 17-9001, 2020 WL 3513551, at *2 (Fed. Cl. June 29, 2020). The court contrasted such benefits to "direct payments from federal programs," stating that the latter "may be relevant to the calculation of just compensation." *Upstream Addicks*, 2020 WL 3513551, at *3.

Thus, while the court did not apply the collateral source rule *per se*, the principles underlying the rule's application were applied to exclude evidence of collateral benefits in a takings context. Just like the collateral source rule aims to prevent tortfeasors from paying twice for the same injury, which would result in a windfall for the plaintiff, *Phillips*, 953 F.2d at 930, the court reasoned that where plaintiffs had received prior compensation or benefits from the government, the amount of such benefits could offset an award of just compensation. Specifically for directly-funded government benefits, the court stated these should be an offset to "prevent[] plaintiffs from receiving a double recovery from administrative processes and the judicial process." *Upstream Addicks*, 2022 WL 1284465, at *9 (citing *United States v. Va. Elec. & Power Co.*, 365 U.S. 624, 633 (1961)); *see also Miller v. Campbell Cnty.*, 901 P.2d 1107 (Wy. 1995) (holding that the collateral source rule did not apply in inverse condemnation suit where the collateral benefits were received from a government-funded program); *St. Bernard Parish Gov. v. United States*, 126 Fed. Cl. 707 (Fed. Cl. 2016) (holding that the collateral source rule did not apply in eminent domain suit where benefits received were FEMA grants).

Here, the benefits Baker received were in no way funded or paid for by the City. Neither the proceeds of Baker's insurance policy covering losses nor the charitable donations she received from the public constitute "just compensation" from the government. Thus, no argument can be made—nor has the City tried to assert as much—that Baker has already been compensated by the City for her losses. Accordingly, there is no risk that, were evidence of the benefits excluded, the City would be forced to compensate Baker twice for the same injury, resulting in a windfall for

11

Baker, as the City has yet to compensate Baker even once. Further, the risk that a plaintiff will enjoy a windfall is diminished where the plaintiff may be required to return the collateral source benefits. *See generally Structural Metals, Inc.*, 2013 WL 870084, at *5. Here, Baker has stated that she intends to reimburse the collateral sources for the benefits she received (Dkt. #61, Exhibit 1 at p. 8). Thus, on these facts, were the Court to exclude evidence of her collateral benefits, there is very little risk that Baker would be the recipient of a pecuniary windfall.

On the other hand, were the Court to admit evidence of Baker's collateral benefits, and thus permit her compensation to be reduced by the same, the City would once again benefit— entirely at Baker's expense. The Fifth Amendment is clear that "[i]t [is] the duty of the *government* to make just compensation as of the time when the owners [are] deprived of their property." *Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299, 305 (1923). Yet, what the City is asking the Court to do is reduce Baker's just compensation not based on funds she has received from the government, but on funds she has received from private citizens and her private insurance.

This would set a dangerous precedent, and at worst, would allow a workaround of the Fifth Amendment. The government could completely forego paying any compensation by taking private property then waiting for a collateral third party to cover the landowner's losses. Further, this, in turn, would allow the government to push the burden of paying compensation onto private individuals. But as stated, the obligation to provide just compensation belongs to the government— no one else. *See Am. Pelagic Fishing Co., L.P. v. United States*, 55 Fed. Cl. 475, 592 (Fed. Claims. 2003) (stating "[t]he government cannot be the beneficiary of an insurance policy for which it did not pay."); *Sid-Mar's Rest. & Lounge, Inc. v. State ex rel. Governor*, 182 So.3d 390, 402–03 (La. App. 2015) (noting that the collateral source rule does not allow the government to benefit from insurance proceeds received by plaintiffs for insurance purchased by plaintiffs). The

12

gratuitous acts of private citizens to provide Baker with some benefits does not divest Baker of her constitutional entitlement to just compensation, nor does it excuse the City from its obligation to provide just compensation. The City here had an obligation to pay Baker just compensation at or before the time the taking occurred. The City failed to do so. It would be inequitable to allow the City to now avoid its obligation simply because private individuals shouldered that obligation instead.

Nothing in this opinion should be taken to mean that in every eminent domain situation, income received by a collateral source cannot be considered in calculating what compensation is just. Rather, this holding is that under the facts of this case, this Court, in the exercise of its equity powers, has a right to determine the bounds of just compensation to be considered by the jury in order to give to Baker the compensation contemplated by the Fifth Amendment to the Constitution. *Lee*, 360 F.2d at 452–53. "[A]t bottom, what emerges is [ ] the basic notion that the government . . . cannot take from a property owner the core economic value of the property, leaving the owner with a mere shell of shambled expectations." *Hendler*, 952 F.2d at 1371.

## CONCLUSION

It is, therefore, **ORDERED** that Plaintiff's Motion in Limine (Dkt. #61) is **GRANTED.**

**IT IS SO ORDERED.**

**SIGNED this 21st day of June, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE