# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| VICKI BAKER, § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No. 4:21-CV-00176 |
| § | Judge Mazzant |
| CITY OF MCKINNEY, TEXAS, § | |
| *Defendant*. § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Renewed Motion for Judgment as a Matter of Law (Dkt. #84). Having reviewed the motion, responses, and applicable law, the Court finds that the motion should be **DENIED.**

### BACKGROUND

This case arises from the uncompensated damages to Vicki Baker's ("Baker") home following the City of McKinney Police Department's (the "Department") standoff with an armed fugitive. On July 25, 2020, Department officers attempted to draw a fugitive out of Baker's home. Despite the Department's efforts, the fugitive would not leave the home. Department officers then forcefully entered the home by breaking down both the front and garage door and running over the backyard fence with a tank-like vehicle known as a BearCat. Upon entry, Department officers found the fugitive had taken his own life. Baker requested the City compensate her for the damages to her home. The City refused.

On March 3, 2021, Baker filed the instant action against the City alleging violations of the Takings Clause of the United States and Texas Constitutions. Baker asserted her federal claim through both the Fifth Amendment to the United States Constitution and 42 U.S.C. § 1983. At the

summary judgment stage, the Court determined as a matter of law that the City's actions constituted a taking of Baker's property without just compensation in violation of her rights under the Fifth Amendment of the United States Constitution and Article I, Section 17 of the Texas Constitution (Dkt. #51). Consequently, the only issues remaining for a jury to decide were (1) whether the City was liable under § 1983, and (2) the amount of just compensation Baker was entitled to for the City's violation of her constitutional rights.

On June 20, 2022, this case went to trial. Two days later, the jury returned its verdict (Dkt. #74). The jury found the City was liable under § 1983 because it acted under color of state law when it violated Baker's constitutional rights under the Fifth Amendment of the United States Constitution by depriving her of her property without providing just compensation, and that this violation proximately caused Baker's damages. The jury awarded Baker $44,555.76 in just compensation for the cost of repairs to her real property, and $15,100.83 in just compensation for the loss in market value to her personal property. Baker elected to recover damages pursuant to § 1983.

During the trial, the City requested judgment as a matter of law on Baker's § 1983 claim. The City argued that Baker did not plead a § 1983 claim against the City, and that Baker did not establish § 1983 liability against the City (Dkt. #69). The Court orally denied the motion in full on June 22, 2022. On July 20, 2022, the City filed the present renewed motion for judgment as a matter of law (Dkt. #84). On August 3, 2022, Baker filed her response (Dkt. #90). On August 10, 2022, the City filed a reply in support of its motion (Dkt. #91).

## LEGAL STANDARD

After "a party has been fully heard on an issue during a jury trial," the court may "grant a motion for judgment as a matter of law against the party" so long as "the court finds that a

reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a)(1). Upon a party's renewed motion for judgment as a matter of law following a jury verdict, the Court should properly ask whether "the state of proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict." *Am. Home Assurance Co. v. United Space All.*, 378 F.3d 482, 487 (5th Cir. 2004); FED. R. CIV. P. 50(a). "The grant or denial of a motion for judgment as a matter of law is a procedural issue . . . reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Finisar Corp. v. DirectTV Grp., Inc.*, 523 F.3d 1323, 1332 (Fed. Cir. 2008). "A JMOL may only be granted when, 'viewing the evidence in the light most favorable to the verdict, the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at any contrary conclusion.'" *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1261 (Fed. Cir. 2013) (quoting *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838 (5th Cir. 2004)).

Fifth Circuit precedent requires a court be "especially deferential" to a jury's verdict. The court must not reverse the jury's findings unless substantial evidence does not support those findings. *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). "Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 891 (5th Cir. 2000). A motion for judgment as a matter of law must be denied "unless the facts and inferences point so strongly and overwhelming in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Baisden*, 693 F.3d at 498 (citation omitted). However, "[t]here must be more than a mere scintilla of evidence in the record

to prevent judgment as a matter of law in favor of the movant." *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606 (5th Cir. 2007).

In evaluating a motion for judgment as a matter of law, a court "cannot substitute other inferences that [the court] might regard as more reasonable." *E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 451 (5th Cir. 2013) (citation omitted). Further, "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses.'" *Id.* at 151 (citation omitted).

## ANALYSIS

The City moves for judgment as a matter of law on two grounds: (1) Baker did not adequately plead a § 1983 claim against the City, and (2) Baker did not establish § 1983 liability against the City because she failed to show that her alleged constitutional injury was caused by an official City policy, practice, or custom promulgated by a City policymaker (Dkt. #84). The Court will address each issue in turn.

### I.    Whether Baker Adequately Pleaded a § 1983 Claim

On this issue, the City first contends that Baker did not adequately plead a claim under § 1983 in her complaint. Baker responds that the sufficiency of allegations made in a complaint becomes irrelevant after the issues have been tried and decided by a jury. However, the Court need not decide whether the sufficiency of the claims raised in Baker's complaint holds any relevance at this stage as this issue was definitively decided by the Court's Order on the City's Motion to Dismiss (Dkt. #23). There, the Court held that Baker's complaint adequately stated a claim for

relief under § 1983 (Dkt. #23 at pp. 10–13). The Court will briefly summarize the grounds on which that decision was made.

Section 1983 provides a cause of action for individuals who have been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person or entity acting under color of state law. 42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), to establish § 1983 liability against a municipality, a plaintiff must show that the protected right was violated by the execution of the municipality's policy or custom. A "policy" can be established by (1) "a policy statement formally announced by an official policymaker," or (2) a "persistent widespread practice of city official or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 168–69 (5th Cir. 2010) (quoting *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc.)).

The Supreme Court and the Fifth Circuit have recognized that many different forms of conduct and action can constitute a policy, practice, or custom depending on the circumstances. For example, "a single unconstitutional action by a municipal actor may give rise to municipal liability if that actor is a final policymaker." *Bolton v. City of Dall.*, 541 F.3d 545, 548 (5th Cir. 2008) (citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005) (emphasis added)); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("A municipality may be liable for a *single decision* by its properly constituted legislative body . . . because even a single decision by

5

such a body constitutes an act of official government policy."). A policy can also be indicated by "formal rules and understandings . . . that . . . establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur*, 475 U.S. at 469. Or the policy could be "conduct that has become a traditional way of carrying out policy and has acquired the force of law." *Bennett v. City of Slidell*, 728 F.2d 762, 758 (5th Cir. 1984). Similarly, a custom includes unlawful acts that are "so widespread as to have the force of law," even if the acts have never been "formally approved by an appropriate decisionmaker." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997).

Baker stated in her complaint that she was bringing a constitutional claim for violation of her rights guaranteed by the Takings Clause of the Fifth Amendment under both the Fifth Amendment itself and § 1983. Baker then alleged that after the City's destruction of her property, she "requested compensation from the City of McKinney, but the City denied the request, stating that there was 'no liability on the part of the City or any of its employees'" (Dkt. #23 at pp. 12–13). The Court found these assertions sufficient to plausibly allege a "single unconstitutional action by a municipal actor"—that is, a denial of the constitutionally mandated just compensation following a taking by the government. *Bolton*, 541 F.3d at 548.

To warrant reconsideration of an issue, the movant must do something more than simply restate, recycle, or rehash arguments that were previously made. *Krim v. pcOrder.com, Inc.*, 212 F.R.D. 329, 331 (W.D. Tex. 2002) (citations omitted). Yet in the present motion, the City has not raised any arguments related to whether Baker adequately pleaded a claim under § 1983 in her complaint that the Court did not already consider and deny in its Order on the City's Motion to Dismiss. Accordingly, the Court finds reconsideration of this issue is not warranted.

6

Next, and presumably in the alternative, the City contends that Baker failed to assert a claim under § 1983 in the Pretrial Order (Dkt. #56). Specifically, the City argues that because the Pretrial Order takes the place of the parties' underlying pleadings, and because Baker failed to assert a § 1983 claim or allege that her § 1983 injury was caused by a City custom or policy, the claim was waived and should be dismissed (Dkt. #84 at p. 12). The Court disagrees.

"A court may instruct the jury on an issue only if the issue has been properly tried by the parties." *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013) (citing *Thrift. v. Estate of Hubbard*, 44 F.3d 348, 355 (5th Cir. 1995)). It is well-settled that "a joint pretrial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial." *McGehee v. Certainteed Corp.*, 101 F.3d 1078, 1080 (5th Cir. 1996). As a result, "once the pretrial order is entered, it controls the course and scope of the proceedings under Federal Rule of Civil Procedure 16(e), and if a claim or issue is omitted from the order, it is waived, even if it appeared in the complaint." *In re Katrina Canal Breaches Litig.*, 309 F. App'x 836, 838 (5th Cir. 2009) (quoting *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998)). "An issue or theory not even implicitly included in the pretrial order is barred unless the order is later amended 'to prevent manifest injustice.'" *Morris v. Homco Int'l, Inc.*, 853 F.2d 337, 332 (5th Cir. 1988).

Here, Baker's claim under § 1983 was not artfully pleaded in the Pretrial Order, but the Pretrial Order was not completely devoid of its mention either. On the first page of the Pretrial Order under the heading "Statement of Jurisdiction," Baker stated:

> Plaintiff brings this action under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution, and under Article I, § 17 of the Texas Constitution

(Dkt. #56 at p. 1). Further, as included in the "contested issues of fact and law" in the Pretrial Order, the parties' agreed that at trial, the following contested factual and legal issues would be decided:

> 7. Whether there is an unlawful City policy, practice or custom that was the moving force behind any constitutional or statutory right violation alleged by Plaintiff
>
> 8. Whether the acts or omissions complained of by Plaintiff were proximately caused by any constitutionally defective policy, practice or custom of the City
>
> . . .
>
> 13. Whether the City of McKinney has a policy, practice or custom of compensating owners for property damage foreseeably resulting from lawful police activities

(Dkt. #56 at p. 5). Whether Baker could demonstrate the existence of a lawful City policy, practice, or custom was relevant only to her claim under § 1983. *See generally United States v. Shanbaum*, 10 F.3d 305, 312–13 (5th Cir. 1994) ("Whether the parties recognized that an unpleaded issue entered the case at trial often depends on whether the evidence that supports the unpleaded issue is also relevant to another issue in the case."). Thus, while Baker's allegations in the Pretrial Order related to her § 1983 claim were admittedly scant, the Pretrial Order more than implicitly indicated that Baker intended to pursue a claim under § 1983 at trial. *Morris*, 853 F.2d at 332; *see also Homoki*, 717 F.3d at 402 (quoting *Dussouy v. Gulf Cost Inv. Corp.*, 660 F.2d 594, 604 (5th Cir. 1981) ("So long as a pleading alleges facts upon which relief can be granted, it states a claim even if it 'fails to categorize correctly the legal theory giving rise to the claim.'")).

Moreover, a pretrial order is intended to "recit[e] the action taken" by the parties and the Court at the pretrial conference. FED. R. CIV. P. 16(d); *see also Trinity Carton Co. v. Falstaff Brewing Corp.*, 767 F.2d 184, 192 n.13 (5th Cir. 1985) ("Each party has an affirmative duty to allege at the pretrial conference all factual and legal bases upon which the party wishes to litigate the case."). Accordingly, the Fifth Circuit has examined exchanges between the court and counsel

during a pretrial conference to provide further support for the appropriate interpretation of a pretrial order. *Flannery v. Carroll*, 676 F.2d 126, 130 (5th Cir. 1982).

Here, discussions at the pretrial conference with Baker's counsel, Jeffrey Redfern, demonstrate that Baker intended to pursue her § 1983 claim:

> The Court: . . . And, then, how much time do you want for opening statements?
>
> Mr. Redfern: I think, your Honor that depends on what issues there are to be tried. It's still not clear to us whether the *Monell* issue is open or if it's been mooted. . . . We believe we get all the relief we need under the Fifth Amendment and under the Texas Constitution. We don't want to end up in a situation where we go up to the Fifth Circuit and the Fifth Circuit says, you know what, we don't think the Fifth Amendment is self-executing and you've waived your 1983 claim because you didn't try that.
>
> The Court: Well, I think that's really your choice because - - I mean, the Court held it was self-executing; but if the Fifth Circuit disagrees, you've alleged both in the alternative. So that's really up to you whether - -
>
> Mr. Redfern: Okay.
>
> The Court: - - you want to rest on it being self-executing and hope you win that.
>
> Mr. Redfern: If it's our choice, your Honor, then we'll try the *Monell* issue as well.

(Dkt. #58 at pp. 3:24–4:23). Further, based on statements from the City's counsel, Ed Voss, the City clearly understood this to be the case, despite disagreeing with the Court's decision on the matter:

> Mr. Voss: . . . And if I could, just for the record, go ahead and lodge an objection on the *Monell* issues. I don't - - the City doesn't believe they've been adequately pled or presented in this case, so I just wanted to let the Court know we are objecting to the *Monell* issue and we think that the only thing left to try, as presented in the motion for partial summary judgment after the takings claim determination, is - -
>
> The Court: Well - -
>
> Mr. Voss: - - the question of damages.

| | | |
|---|---|---|
| The Court: | | - - I mean, they pled in the alternative, so they pled a *Monell* claim. |
| Mr. Voss: | | Well, it's - - I'm just letting the Court know our position is they have not adequately pled a *Monell* claim. |
| The Court: | | Well - - and did you file a 12(b)(6) challenging it? |
| Mr. Voss: | | It wasn't pled so - - |
| The Court: | | No, it most certainly was pled. Without question, it's pled in the alternative. I mean, I pulled the Complaint; and they basically - - paragraph 36 says, "This constitutional claim is brought under both 28 USC, Section 1983, and the Fifth Amendment itself." So they have asserted, and the only way to assert 1983 is a *Monell* claim. |
| Mr. Voss: | | Thank you, your Honor. I have nothing else to add to that. |

(Dkt. #58 at pp. 7:9–8:10).

Based on these statements made by counsel at the pretrial conference, it cannot be argued that Baker no longer intended to pursue her claim under § 1983 at trial, or that the City lacked awareness that this claim would be adjudicated at trial. Thus, when the Pretrial Order is read in conjunction with the representations of the parties at the pretrial conference, it is evident that Baker did not waive her claim under § 1983 and that the City was on notice of it. *See, e.g.*, *Excel Modular Scaffold & Leasing Co. v. O.S.H.A.*, 943 F.3d 748, 755 (5th Cir. 2019) (holding defendant waived affirmative defense where defendant omitted defense from the pretrial order and repeatedly failed to mention its desire to pursue the defense at the pretrial conference despite being afforded multiple opportunities); *SRSB-IV, Ltd. v. Cont'l Savs. Ass'n*, 33 F.3d 1379, 1994 WL 487239, at *3 (5th Cir. 1994) (unpub.) (holding that party waived issues of liability and damages where party did not include the issues in the pretrial order *and* subsequently failed to raise the issues at the pretrial conference).

Furthermore, while it is true that pretrial orders generally control the course and scope of the issues presented at trial, *In re Katrina*, 309 F. App'x at 838, "[t]he decision to bind the parties

10

to the [pretrial] order is viewed as a matter of judicial discretion." *Aker Sols., Inc. v. Shamrock Energy Sols., LLC*, No. CV 16-2560, 2019 WL 7288942, at *4 (E.D. La. Dec. 30, 2019), *aff'd sub nom.*, 820 F. App'x 243 (5th Cir. 2020) (quoting 6A CHARLES WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1527 (3d ed. 2010 & Supp. 2018)); *Emmons v. S. Pac. Transp. Co.*, 701 F.2d 1112, 1118 (5th Cir. 1983) (recognizing that "[a] trial court has broad discretion in deciding whether to admit evidence on an issue not included in the pretrial order."). The "proper treatment of the pretrial order after entry requires an appropriate balance between firmness to preserve the essential integrity of the order, and adaptability to meet changed or newly discovered conditions or to respond to the special demands of justice." *Central Distribs., Inc. v. M.E.T., Inc.*, 403 F.2d 943, 944 (5th Cir. 1968). Thus, in appropriate cases, a district court may require less than strict adherence to a pretrial order where, for example, an omission from the pretrial order was based upon a misunderstanding. *SRSB-IV, Ltd.*, 33 F.3d at *3.

Such is the case here. As represented at the pretrial conference, it was unclear to Baker's counsel whether Baker's § 1983 claim was fully resolved by the Court's Order on Plaintiff's Motion for Partial Summary Judgment. As soon as the Court confirmed that her § 1983 claim had not been fully resolved, Baker's counsel unambiguously indicated their intent to present the claim to the jury (Dkt. #58 at p. 4:22–23 ("If it's our choice . . . then we'll try the *Monell* issue")). Accordingly, to the extent the allegations in the Pretrial Order insufficiently pleaded Baker's claim under § 1983, the Court finds that the "special demands of justice" necessitate a less than strict adherence to the Pretrial Order. *Central Distribs., Inc.*, 403 F.2d at 944; *SRSB-IV, Ltd.*, 33 F.3d at *3. The Court finds, therefore, that the City is not entitled to judgment as a matter of law on this issue.

## II.     Whether Baker Established § 1983 Liability

The City makes two arguments on this point—(1) that Texas state law, not a City policy, required the City to deny Baker compensation, and (2) that Baker did not establish the City had a policy, custom, or practice promulgated by a City policymaker that led to the denial of her claim. The Court addresses each of these arguments below.

### A. Whether Texas law precluded the City from justly compensating Baker under § 1983

The City first argues that any § 1983 injury to Baker was not caused by a policy, practice, or custom of the City because Texas law, not City policy, required the City to deny compensation to Baker (Dkt. #69 at pp. 14, 16 ("The City denied her property damage claim because state law required non-payment.")). Baker responds that this Court correctly held that Texas law obligates the City to compensate Baker, and thus the denial of compensation to Baker is attributable to a City policy, not state law (Dkt. #90 at p. 2).

Throughout the pendency of this ligation, the City has maintained—and continues to do so—that it cannot compensate Baker for her damages without violating the Texas state law. First, the City maintains that the Texas Tort Claims Act shields a municipality from claims like Baker's. *See* TEX. PRAC. & REM. CODE § 101.025. Specifically, the City posits that where a municipality has not consented to being sued, the municipality is immune from liability for certain intentional torts, including "tortious intentional law enforcement actions" (Dkt. #84 at p. 14). Further, the City points to Article III, § 52 of the Texas Constitution, which states that "the Legislature shall have no power to authorize any county, city, [or] town . . . of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation, whatsoever." Based on these provisions, the City contends that because Baker's damages were caused by the intentional torts of Department officers, and the City did not consent to liability, the Texas Tort

12

Claims Act precludes a liability finding against the City under § 1983. Further, the City claims that were it to use public funds to compensate Baker anyway for a claim on which the City is not liable, this would constitute a gift or donation in violation of Article III, § 52 of the Texas Constitution.

The Court discussed the City's obligations under Texas law in its Order denying Defendant's Motion to Dismiss (Dkt. #23 at pp. 10–11). There, the Court rejected the very same argument the City now puts forth. The Texas Tort Claims Act is inapplicable to this case for a simple reason—Baker sought recovery not for the Department's entry into and damage of her home but, instead, from the City's denial of compensation for those damages which constituted a taking. *See John Corp. v. City of Hous.*, 214 F.3d 573 (5th Cir. 2000) (recognizing that "a violation of the Takings Clause does not occur until just compensation has been denied."). Put differently, Baker did not sue the City under § 1983 to recover for damages to her home on the grounds that the City was vicariously liable for the officers' actions. Had Baker brought such a claim, not only would that claim fall within the scope of the Texas Tort Claims Act, the claim would not be actionable under § 1983. *See Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (citing *Monell*, 436 U.S. at 691) (recognizing that the theory of *respondeat superior* is insufficient to establish a municipality's liability in § 1983 cases). But as the Court explained, because Baker sought to hold the City liable for denying compensation under the Fifth Amendment, rather than to hold the City vicariously liable for the officers' actions in destroying her property, the City could be held liable under § 1983. Consequently, because the City is not immune from liability under the Texas Tort Claims Act, the City's argument that compensating Baker would violate Article III, § 52 of the Texas Constitution also fails.

### B. Whether the City denied compensation based on a City policy, custom, or practice promulgated by a City policymaker

The City contends that Baker failed to establish that a policymaker of the City implemented

13

or executed a policy, practice, or custom. Specifically, the City argues that "[c]ompliance with state law is not an actionable municipal 'policy' sufficient to satisfy § 1983 requirements" (Dkt. #84 at p. 14), and thus no City employee can be considered a final policymaker for the City on this issue. As made clear above, Texas state law did not mandate the City deny Baker's claim. Accordingly, the Court finds this argument is wholly without merit.

Regardless, Baker responds that she presented sufficient evidence at trial that the City's denial of just compensation was based on a City policy promulgated by a City policymaker. The Court agrees. During her case-in-chief, Baker called Tami Levens ("Levens") to testify, a senior risk analyst for the City. Levens testified that she is the only City official who handles claims brought against the City for property damages, and thus is the only employee of the City who would have information on the City's policies and practices for handling such claims (Dkt. #87 at p. 119:4–13). Additionally, Levens stated that once she decides to deny a claim, there is no other individual or official at the City that is designated to review or question her decision (Dkt. #87 at p. 123:22–25). Therefore, once Levens denies a claim, that denial operates as the City's final decision on the claim.

Levens described the City's standard practice for processing claims. If an individual has a potential claim against the City for property damage, they are directed to contact Levens (Dkt. #87 at p. 120:8–22). Once Levens is contacted, Levens sends the claimant a claim form to fill out (Dkt. #87 at pp. 120:23–121:6). Once the claimant returns the claim form, Levens sends the form, as well as any associated police reports, to the City's insurance carrier, TML (Dkt. #87 at p. 121:11–17). However, the City's policy with TML only provides coverage for instances of non-intentional property damage (Dkt. #87 at p. 122:9–15). As a result, if a claimant submits a claim for damages intentionally caused by the City or its employees, TML will not cover the claim

(Dkt. #87 at p. 122:13–16). If TML does not cover the claim, the City will not compensate the claimant for their damages (Dkt. #87 at p. 124:1–9). In other words, if TML does not cover the claim, the City will not otherwise examine whether it is liable for the claimant's losses. This has been the City's unwavering custom for at least fifteen years—that is, the entire time that Levens has worked for the City (Dkt. #87 at p. 121:19–22).

Levens then explained that these are the same policies she followed in processing, and ultimately denying, Baker's claim (Dkt. #87 at pp. 126:2–129:13). Levens admitted that in her first communication with Baker—before Baker's claim form had even been submitted to TML—Levens stated that she did not think the City would pay for the damages to Baker's home (Dkt. #87 at pp. 126:22–127:2). Later in the process, TML notified Levens that Baker's claim was not covered under the City's policy with TML (Dkt. #87 at p. 129:19–20). Upon receiving this information, Levens filed the denial in Baker's case file and closed the claim (Dkt. #87 at p. 129:7–17).

According to Levens, the City denies claims like Ms. Baker's based on the City's belief that it is immune from liability under the Texas Tort Claims Act:

> Q:   . . . I just want to clarify whatever the reason is for the City's policy, the City has a policy and practice of not compensating for intentional property damages. We do agree with that?
>
> A:   Yes, sir. We do not pay for anything that we are not liable for.
>
> Q:   And you never have.
>
> A:   No, sir. We do not pay for anything that we are not liable for. Anything that we are immune from, we do not pay.
>
> Q:   Anything the City thinks it's immune from, it doesn't pay for; correct?
>
> A:   Anything that we think we are immune from, we do not pay for.

(Dkt. #87 at p. 133:6–20). Levens then concluded her testimony with an all-too-willing admittance that the City *never* pays claims like Ms. Baker's. In fact, Baker's counsel asked Levens if, according to the City's standard practice, should a claim identical to Ms. Baker's be filed tomorrow, whether the City would pay a dime (Dkt. #87 at pp. 133:25–134:3). Levens confidently and simply responded, "No, sir" (Dkt. #87 at pp. 133:25–134:4).

As the Court previously established, municipal liability under § 1983 can arise under many different types of a policy, practice, or custom depending on the surrounding circumstances. Levens' testimony sufficiently demonstrates that her conduct was taken in accordance with a City policy, practice, or custom. For example, a policy can be "formal rules and understandings . . . that . . . establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur*, 475 U.S. at 469. Levens testified that for the past fifteen years, the City's standard policy applied to every claim for intentional damages is to request a claim form, open a file on the claimant, send the claim form to TML, then deny the claim and close the claimant's file once TML states coverage is lacking. A policy can be "conduct that has become a traditional way of carrying out policy and has acquired the force of law." *Bennett*, 728 F.2d at 758. Levens testified that if TML states coverage is lacking on a claim for intentional damage, the City will never assess whether it is liable or should pay the claim anyway. Instead, the City will *always* deny the claim.

A policy can also arise from a single unconstitutional action by a municipal actor if that actor is a final policymaker. *Bolton*, 541 F.3d at 548; *Woodard*, 419 F.3d at 352; *Pembaur*, 475 U.S. at 480. However, "[t]he Supreme Court has cautioned that the existence of a policy or custom should not be inferred from a single act of a lower level [city] officer, but should only be found on evidence of wrong which can be fairly attributed to municipal policymakers." *Wooden v. City of*

*Longview*, 683 F. Supp. 1108, 1114 (E.D. Tex. 1987) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808 (1985)). But Levens was no low-level officer. Levens was the *only* City official with knowledge of the City's policies and practices for handling claims for property damage (Dkt. #87 at p. 119:4–13). Levens was the *only* City official responsible for intaking and processing claims for property damage caused by the City, including Baker's claim (Dkt. #87 at p. 121:3–22). And Levens was the *only* City official designated to make a final decision on these claims (Dkt. #87 at pp. 129:14–130:2). Thus, Baker's evidence sufficiently established at trial that, related to the City's denial of Baker's claim, Levens was the municipal policymaker. Therefore, Levens' actions taken in that role may properly be considered a policy, practice, custom for purposes of establishing § 1983 liability. *Bolton*, 541 F.3d at 548; *Woodard*, 419 F.3d at 352; *Pembaur*, 475 U.S. at 469

Levens unquestionably established that the City's policy or practice is to deny claims like Ms. Baker's based on the City's *belief* that it is immune from liability for these claims under Texas state law. But as the Court has concluded time-and-time again, Texas state law does not shield the City from liability under § 1983 in this case. Thus, the only reasonable conclusion left remaining is that it is simply the City's policy to refuse compensation for claims like Ms. Baker's, regardless of the circumstances. Such a policy flies in the face of the just compensation demands of the Fifth Amendment, and therefore, satisfies the requirements of § 1983. Accordingly, the City's motion for judgment as a matter of law on this issue is denied.

## CONCLUSION

It is, therefore, **ORDERED**, that Defendant's Renewed Motion for Judgment as a Matter of Law (Dkt. #84) is **DENIED.**

**IT IS SO ORDERED.**
**SIGNED this 26th day of August, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE