# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| VICKI BAKER, <br>    *Plaintiff*, <br><br> v. <br><br> CITY OF MCKINNEY, TEXAS, <br>    *Defendant*. | § § § § § § § § § § § § Civil Action No. 4:21-CV-00176 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion for New Trial (Dkt. #85). Having reviewed the motion, responses, and applicable law, the Court finds that the motion should be **DENIED.**

### BACKGROUND

This case arises from the uncompensated damages to Vicki Baker's ("Baker") home following the City of McKinney Police Department's (the "Department") standoff with an armed fugitive. On July 25, 2020, Department officers attempted to draw a fugitive out of Baker's home. Despite the Department's efforts, the fugitive would not leave the home. Department officers then forcefully entered the home by breaking down both the front and garage door and running over the backyard fence with a tank-like vehicle known as a BearCat. Upon entry, Department officers found the fugitive had taken his own life. Baker requested the City compensate her for the damages to her home. The City refused.

On March 3, 2021, Baker filed the instant action against the City alleging violations of the Takings Clause of the United States and Texas Constitutions. Baker asserted her federal claim through both the Fifth Amendment to the United States Constitution and 42 U.S.C. § 1983. At the

summary judgment stage, the Court determined as a matter of law that the City's actions constituted a taking of Baker's property without just compensation in violation of her rights under the Fifth Amendment of the United States Constitution and Article I, Section 17 of the Texas Constitution (Dkt. #51). Consequently, the only issues remaining for a jury to decide were (1) whether the City was liable under § 1983, and (2) the amount of just compensation Baker was entitled to for the City's violation of her constitutional rights.

On June 20, 2022, this case went to trial. Two days later, the jury returned its verdict (Dkt. #74). The jury found the City was liable under § 1983 because it acted under color of state law when it violated Baker's constitutional rights under the Fifth Amendment of the United States Constitution by depriving her of her property without providing just compensation, and that this violation proximately caused Baker's damages. The jury awarded Baker $44,555.76 in just compensation for the cost of repairs to her real property, and $15,100.83 in just compensation for the loss in market value to her personal property. Baker elected to recover damages pursuant to § 1983.

On July 20, 2022, the City filed the present motion for new trial (Dkt. #85). On August 3, 2022, Baker filed her response (Dkt. #89). On August 10, 2022, the City filed a reply in support of its motion (Dkt. #92).

**LEGAL STANDARD**

Under Rule 59(a) of the Federal Rules of Civil Procedure, a new trial can be granted to any party to a jury trial on any or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith*

2

*v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). However, "[u]nless justice requires otherwise, no error in admitting or excluding evidence – or any other error by the court or a party— is grounds for granting a new trial . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." FED. R. CIV. P. 61.

To be entitled to a new trial, the movant must show that the verdict was against the great weight of the evidence, not merely against the preponderance of the evidence. *Taylor v. Seton Healthcare*, No. A-10-CV-650, WL 2396880, at *2 (W.D. Tex. June 22, 2012) (citing *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838–39 (5th Cir. 2004); *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982)). A jury verdict is entitled to great deference. *Dresser-Rand Co.*, 671 F.2d at 839. "Weighing the conflicting evidence and the inferences to be drawn from that evidence, and determining the relative credibility of the witnesses, are the province of the jury, and its decision must be accepted if the record contains any competent and substantial evidence tending fairly to support the verdict." *Gibraltar Savings v. LDBrinkman Corp.*, 860 F.2d 1275, 1297 (5th Cir. 1988). Ultimately, the propriety of granting a motion for new trial is a matter left to the sound discretion of the trial court.

## ANALYSIS

Pursuant to Rule 59(a), the City moves for a new trial on the following grounds: (1) Baker's takings claims are invalid as a matter of law; (2) the Court improperly excluded evidence under the collateral source rule; (3) errors in the Court's charge caused the jury to render an improper verdict; and (4) the amount the jury awarded as damages for Baker's loss of personal property was not supported by evidence (Dkt. #85). The Court will address each of these issues in turn.

**I.      Baker's Takings Claims**

As noted, the City argues the Court should have dismissed Baker's takings claims

(Dkt. #85 at p. 3). The City contends Baker has not established a takings claim as a matter of law under either the Fifth Amendment to the United States Constitution or Article I, § 17 of the Texas Constitution. Baker responds that the Court has already heard, and rejected, the City's arguments (Dkt. #89 at p. 1). Baker is correct. Indeed, the bulk of the City's arguments simply attack the Court's analysis contained in its Order on Baker's Motion for Partial Summary Judgment (Dkt. #51). Despite the fact that mere disagreement with a district court's order does not warrant reconsideration of that order, *see Krim v. pcOrder.com, Inc.*, 212 F.R.D. 329, 331 (W.D. Tex. 2002), the Court will nonetheless address and dispose of the City's arguments the same as it has before.

First, the City takes issue with the Court's reliance on *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021) (Dkt. #85 at p. 4). The City correctly points out that *Cedar Point* did not involve physical damage from law enforcement action. The Court was well aware of this point at the time it rendered its opinion. That said, the Court merely drew general principles from the Supreme Court's opinion to guide in the Court's own analysis. Moreover, the City emphasizes the Supreme Court "confirmed that the common law authorizes law enforcement to enter private property to avert public or private harm, arrest a suspect, or enforce criminal law without compensation to the property owner" (Dkt. #85 at p. 3 (citing *Cedar Point*, 141 S. Ct. at 2079)). Cherry-picking this one quote from *Cedar Point*, the City makes the leap that "the Fifth Amendment does not apply to property damage caused by law enforcement when reasonably performing law enforcement tasks" (Dkt. #85 at p. 4). However, the Supreme Court in *Cedar Creek* confirmed law enforcement could lawfully *enter* property pursuant to the public interest—not *destroy* it, as law enforcement did to Baker's property. For these reasons, the Court is not persuaded to re-evaluate its prior reading of *Cedar Point* or change its holding that the Fifth Amendment applies here. Thus, the City is liable

for Baker's takings claim under the Fifth Amendment, and the City is not entitled to a new trial on this ground.

Second, the City argues Baker's takings claim under the Texas Constitution fails because Baker's daughter consented to the taking, and lack of consent is an element of a valid state law takings claim (Dkt. #85, at p. 5). The City again ignores the distinction between entering property and taking property. As the Court explained in its opinion, issues of consent are irrelevant to Baker's claims regarding the City's liability. Baker claims that a taking occurred not from the entry into her home, but, instead, from the destruction of it. To be sure, Baker's daughter consented to law enforcement's entry onto the property, not the total destruction of the property. Thus, the evidence does show a lack of consent to the taking, and the Court will not reconsider its opinion on this basis.

Further, the City argues the evidence shows the City is immune under state law from Baker's claim for damages. The City contends Baker's takings claim under the Texas Constitution is merely an attempt to "circumvent municipal liability" (Dkt. #85 at p. 6). The City relies on a two-part test outlined by the Federal Circuit for determining whether a claim constitutes a takings or tort claim (Dkt. #85 at p. 11 (citing *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1356–57 (Fed. Cir. 2003))). The Court is not persuaded to rely on *Ridge Line* to determine matters of Texas state law. Because Baker brought this takings claim under the Texas Constitution, Texas law is controlling.[1] The City argues that the controlling Texas law Baker relies on—*Steele v. City of Houston,* 603 S.W.2d 786 (Tex. 1980)—cannot be used to establish Baker's takings claim under the Texas Constitution. *Steele* recognized that a claim for the "taking, damaging or destruction of

---

[1] Further, the Federal Circuit in *Ridge Line* conducted this two-part analysis for determining whether the plaintiff had proven a claim of inverse condemnation. *See Ridge Line*, 346 F.3d at 1355. Baker's claim here arises under the Texas Constitution.

5

property for public use" constitutes a waiver of governmental liability, as contemplated by Article I, § 17 of the Texas Constitution. 603 S.W.2d at 791. Here, the Court has already ruled law enforcement destroyed Baker's property for the public use: apprehension of a dangerous fugitive whose freedom threatened the public (Dkt. #51 at p. 33). Therefore, *Steele* will not save the City from takings liability under the Texas Constitution. *Id.* Finally, the City asserts that law enforcement did not intentionally damage Baker's property in an "abusive manner" "as was the case in *Steele*" (Dkt. #85 at p. 7). In reading *Steele*, however, the Court does not find any requirement that law enforcement act abusively. *See* 603 S.W.2d 786. The Court has already found *Steele* is controlling here and finds no reason to deviate from its position now (Dkt. #51 at p. 32). Accordingly, the City does not have immunity from Baker's takings claim under the Texas Constitution, and the City is not entitled to a new trial on this ground.

**II.     The Court's Order on Collateral Source Evidence**

Prior to trial, Baker filed a motion in limine seeking to exclude any evidence of donations of items, money, and insurance proceeds that reduced the out-of-pocket expenses she incurred in repairing her home. The Court granted Baker's motion (*see* Dkt. #66). The City contends the Court granted this motion because it "found[ ] the application of the collateral source rule reasonable" (Dkt. #85 at p. 12). The City claims that this ruling "incorrectly and inconsistently applied tort principles despite previously ruling that this is not a tort case," and determined the City to be a tortfeasor in this takings case (Dkt. #85 at pp. 12, 14). The City further claims that the ruling prejudiced the City by "allowing Baker to testify about financial losses she did not suffer, then prevented the City from providing contrary evidence" (Dkt. #85 at p. 12). The City entirely misconstrues the Court's order.

6

First and foremost, the Court did *not* find the collateral source rule applied to this case. In fact, the Court expressly declined to opine on the matter: "the Court finds it unnecessary to determine whether the collateral source rule as matter of law applies in a takings context" or specifically to Baker's claims (Dkt. #66 at pp. 7, 8). What the Court actually held is that the principles underlying the collateral source rule and the principles underlying just compensation in a takings context shared similar equitable principles, and both would have led the Court to exclude evidence of collateral benefits during the trial. Because of this, the Court did not need to decide whether the collateral source rule applied, nor rely on the collateral source rule in this case.

Like the collateral source rule, just compensation is founded on the idea that, in fairness and equity, the injury-causing party should be responsible for the costs of their conduct. *United States v. Commodities Trading Corp.*, 339 U.S. 121, 124 (1950); *United States v. Lee*, 360 F.2d 449, 452 (5th Cir. 1966). And under the Fifth Amendment, it is constitutionally mandated that the government pay just compensation for private property taken for public use. U.S. CONST. amend. V. Should the government fail to do so, the government is—at the very basic core meaning of the term—an injury-causing party. *See Knick v. Twp. of Scott, Pa.*, 139 S. Ct. 2162, 2167 (2019) (recognizing that "a property owner [ ] suffer[s] a violation of [her] Fifth Amendment rights when the government takes [her] property without paying for it."). Therefore, as the Court indicated, the City is an injury-causing party because it violated Baker's constitutional rights by denying her just compensation after taking her private property for a public purpose.

Finally, the City was not prejudiced by the Court's decision. In just compensation cases, courts have allowed the amount of compensation to be offset where the government is responsible for the collateral benefits. *Deperrodil v. Bozovic Marine, Inc.*, 842 F.3d 352, 358 (5th Cir. 2016); *In re Upstream Addicks and Barker (Texas) Flood-Control Reservoirs*, No. 17-9001, 2022 WL

1284465 (Fed. Cl. Apr. 29, 2022). Where the government has contributed to or otherwise paid for the collateral benefit, denying the government an offset would result in the government paying twice for the injuries it caused and thus, on the flip side, a windfall to the plaintiff. But here, Baker received charitable or private donations, as well as insurance proceeds that she used to pay for some of the repairs to her home. These benefits were entirely voluntary and from private third-party payments or services. They were in no way funded or paid for by the City, nor has Baker ever been compensated by the City for her losses through any means. Thus, and as the Court so held, no argument can be made that excluding evidence of the benefits prejudiced the City by forcing the City to compensate Baker twice for the same injury.

On the other hand, that Court noted the injustice that would result to Baker if the City were allowed to admit evidence of private collateral benefits. Were the Court to adopt the City's position, government actors could completely forego paying any amount in just compensation by taking private property then waiting for a collateral third party to cover the owner's losses. But the plain language of the Fifth Amendment is clear that "[i]t [is] the duty of the *government* to make just compensation as of the time when the owners [are] deprived of their property." *Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299, 305 (1923) (emphasis added). Thus, the gratuitous acts of private citizens to provide Baker with collateral benefits does not divest Baker of her constitutional entitlement to just compensation, nor does it excuse the City from its obligation to provide just compensation.

In sum, the City's interpretation of the Court's order is just that—an interpretation. The Court's order speaks for itself. Because the City has not presented any valid grounds for reconsideration of this order, the City is not entitled to a new trial on this basis.

**III.	Charge Errors**

Under Federal Rule of Civil Procedure 51, a party may not later assert that there is an error in a given jury instruction if that party failed to properly object to it during trial. *See* FED. R. CIV. P. 51(d)(1); *see also Turner v. Baylor Richardson Med. Cir.*, 476 F.3d 337, 347 (5th Cir. 2008) (affirming the district court's denial of a motion for new trial on an issue that was not raised until the motion for new trial). Any objections to a court's jury instructions must be done on the record and must "stat[e] distinctly the matter objected to and the grounds for [the] objection." FED. R. CIV. P. 51(c)(1). A general objection to the court's jury instructions is insufficient. *Bolton v. Tesoro Petroleum Corp.*, 871 F.2d 1266, 1272 (5th Cir. 1989). Further, "[a] party cannot satisfy the requirements of Rule 51 by merely submitting to the court a proposed instruction that differs from the instruction ultimately given to the jury." *Russell v. Plano Bank & Trust*, 130 F.3d 715, 719 (5th Cir. 1997).

"Where the party challenging the district court's instructions has failed to raise the objection before the district court," the objection is consider waived absent a showing of plain error. *Id.* at 721. To demonstrate plain error, the movant has the burden of showing: "(1) that an error occurred; (2) that the error was plain, which means clear or obvious; (3) the plain error must affect substantial rights; [and] (4) not correcting the error would 'seriously affect the fairness, integrity, or public reputation of the judicial proceedings.'" *Highland Ins. Co. v. Nat'l Union Fire Ins. Co.*, 27 F.3d 1027, 1032 (5th Cir. 1994) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)). "The requirements of plain error are exacting and the plain error exception is a narrow one that applies only where 'the error is so fundamental as to result in a miscarriage of justice.'" *Id.* (quoting *Johnson v. Helmerich & Payne, Inc.*, 892 F.2d 422, 424 (5th Cir. 1990)); *see also* 9A CHARLES WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2558 (2d ed. 1995) ("If there is to be a plain error exception to Rule 51 at all, it should be confined to the exceptional

9

case when the error seriously has affected the fairness, integrity, or public reputation of the trial court's proceedings."); *Highland Ins. Co.*, 27 F.3d at 1032 (noting that "at a minimum" an alleged error must be "clear under the law.").

At trial, the City raised several objections to the Court's Final Instructions. First, the City objected to the submission of Baker's § 1983 claim on the grounds that Baker failed to sufficiently plead a § 1983 claim against the City, and that Baker failed to present sufficient evidence to warrant submission of this claim to the jury (Dkt. #87 at pp. 213:18–214:5). Second, the City objected to the submission of a question on Baker's personal property damages on the ground that Baker did not present sufficient evidence to support this submission (Dkt. #87 at p. 214:6–12). Third, the City objected to the omission and failure to include a number of instructions provided in the City's proposed jury instructions. This included City proposed instruction number 25 on municipal liability; number 26 on takings claims brought under the Fifth Amendment; number 27 on takings claims brought under the Texas Constitution; number 28 on takings involving police action; numbers 30 and 32 regarding emergencies and the emergency exception; number 31 regarding government immunity under state law; number 33 regarding no liability under state law for intentional harm; number 34 regarding the Texas Constitution on prohibition when a city promises to indemnify future harms and create unfunded debt; and number 35 regarding the Texas Constitution's prohibition on government-funded gifts (Dkt. #87 at pp. 214:13–215:6). Fourth, the City objected to the failure to include its requested interrogatory number 1 from its proposed jury instructions and verdict form (Dkt. #87 at p. 215:12–17). The City made no other objections to the charge. Baker made no objections to the charge.

In the present motion, the City alleges the Court's charge was erroneous because it (1) improperly instructed the jury to not consider any actions taken by the Department, (2) failed

10

to include an instruction on the Texas Tort Claims Act and illegal donations under Texas state law, and (3) failed to properly state the law on municipal liability under § 1983. The Court addresses each of these arguments below.

### A. Instructions on Texas State Law

In Court's Final Jury Instructions on Baker's § 1983 claim, the jury was instructed that the Court had already determined City violated Baker's constitutional rights by taking her property without just compensation (Dkt. #70 at pp. 7–8). The Court further instructed that "[a]ny actions taken by the McKinney Police Department are not relevant to your deliberations" (Dkt. #70 at p. 8). The jury was then told that it was tasked with determining whether the City was liable for this taking based on a City policy or custom. The City argues that it was error to instruct the jury to not consider actions taken by the Department, and that this instruction confused the jury and led to an erroneous verdict. The reason given by the City is that "the actions taken by the McKinney Police Department were the foundation of the City's denial of Baker's property damage claim" (Dkt. #85 at p. 15).

The City did not object to the inclusion of this instruction during trial; instead, the City raised an objection to this instruction for the first time in its present motion for new trial. A party challenging a jury instruction that failed to object to the instruction at trial has waived the objection absent a showing of plain error. *Russell*, 130 F.3d at 719. Therefore, the City's objection is properly considered waived unless the City has satisfied the exacting requirements to establish plain error. *See Highland Ins. Co.*, 27 F.3d 1032. The City made no attempt to establish plain error. The City, therefore, waived any objection to this instruction.

Further, it is not "clear or obvious" that this instruction was plainly erroneous. *Id.* As this Court has explained, the City's liability for Baker's § 1983 claim is not premised on the officers'

11

actions in destroying her property, but on the City's refusal to provide her with just compensation. Thus, as to § 1983 liability—which the jury was charged with deciding—the actions taken by the officers are not directly relevant to the determination of this issue.[2] Whether the jury could consider the impact of the officers' actions on the City's decision to deny Baker just compensation is a different question altogether, and the City did not request an instruction on that issue. Thus, because the City waived this objection and failed to make any showing of plain error, the City is not entitled to a new trial on this basis.

### B. Instructions on Municipal Liability Under § 1983

The Court's Final Jury Instructions did not include any instructions about the Texas Tort Claims Act, or instructions about Article III, § 52 of the Texas Constitution which generally prohibits a municipality from making unconstitutional donations. The City claims this omission was error because it was Texas law, not City policy, that required the City deny compensation to Baker (Dkt. #85 at pp. 15–16).

As the Court has discussed at length in its previous orders (Dkt. #23; Dkt. #51), as well as at trial (Dkt. #87 at pp. 143:7–145:3), there is no tort being asserted in this case. Rather, Baker brought constitutional claims under the United States and Texas Constitutions and § 1983. And, again, Baker did not bring her claim under § 1983 based on any tortious conduct, intentional or otherwise, taken by Department officers. Thus, the Texas Tort Claims Act and Article III, § 52 of the Texas Constitution are not applicable to this case and do not operate to bar the City from providing just compensation to Baker. Accordingly, it was not error for the Court to refuse to

---

[2] As the City acknowledged in its proposed instructions, the jury "may not consider the liability of any other person or entity" in this case other than that of the City or Baker (Dkt. #37 at p. 10). The City's risk manager and corporate designee in this case, Tami Levens also acknowledged during her testimony at trial that Baker "is not asserting the police did anything wrong in going into the house" (Dkt. #87 at p. 143:1–6).

include instructions on these laws in its Final Jury Instructions. The City is not entitled to a new trial on this basis.

### C. Instructions on Official Policy, Custom, or Practice Under § 1983

The City claims that the Final Instructions omitted two key elements of applicable law about municipal liability under § 1983. First, the City claims the Final Instructions "ignored that the word 'policy' implies a conscious choice among various alternatives" (Dkt. #85 at p. 16). Second, the City claims the Final Instructions "ignored that for a single act to give rise to § 1983 liability, the act must be a deliberate choice to follow a course of action made from various alternatives made by a final policymaker with authority over the subject area" (Dkt. #85 at p. 17).

The Court's Final Instructions accurately recited the law and were generally based on language taken from the Fifth Circuit's Pattern Jury Instructions. A "policy" can be a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the City's officers. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A "custom" is a persistent, widespread practice of City officials or employees that, although not formally adopted, is so common and well-settled that it fairly represents City policy. *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002). But to show a custom, the plaintiff must prove that either the municipality's governing body or some official with policymaking authority knew or should have known about the custom. *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381–82 (5th Cir. 2005). Finally, a plaintiff may also establish a custom or policy based on an isolated decision made in the context of a particular situation if the decision was made by an authorized policymaker in whom final authority rested regarding the action ordered. *City of Saint Louis v. Praprotnik*, 485 U.S. 112, 124–25 (5th Cir. 1992); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996). This is the law applicable to the determination of a policy, practice, or custom

under § 1983. The Court recited this law exactly as worded above in its Final Instructions (*see* Dkt. #70), and the City has not sufficiently demonstrated that any of the above language constitutes an erroneous misstatement of the law. While the City may prefer the law be worded differently, "parties are not entitled to have the jury instructed in the precise language or form they suggest." *Wilson v. Zapata Off–Shore Co.*, 939 F.2d 260, 270 (5th Cir. 1991). Accordingly, the City is not entitled to a new trial on this basis.

### IV.  Baker's Personal Property Damages Award

In this case, the jury was asked to determine the amount of just compensation Baker was entitled to for the loss of her personal property that resulted from the City's taking. The Court instructed the jury that just compensation for personal property is measured by the "fair market value" of the property at the time of taking (Dkt. #70 at pp. 11–12). The Final Instructions defined "fair market value" as "[t]he amount that would be paid in cash by a willing buyer who desires to buy, but is not required to buy, to a willing seller who desires to sell, but is under no necessity of selling, and both sides are fully informed about all the advantages and disadvantages of the property" (Dkt. #70 at p. 12). The Court explained that "[t]he burden is on the property owner to prove, by a preponderance of the evidence, the fair market value of the property on the date of the taking" (Dkt. #70 at p. 12). On these instructions, after hearing the testimony and evidence put on at trial, the jury awarded Baker $15,100.83 in just compensation for the loss in market value to her personal property, and the Court entered a final judgment in accordance with the jury's verdict (Dkt. #71).

In the present motion, the City claims Baker "provided absolutely no evidence to the jury about the fair market value of her alleged personal property damage" and thus asks the Court to set aside the jury's verdict and grant a new trial because "the verdict awarding Baker $15,100.83

14

for the loss of personal property was against the weight of the evidence because it is not supported by any evidence of fair market value" (Dkt. #85 at p. 18).

In response, Baker first argues that "it is doubtful that 'fair market value' is really the proper measure of damages for destroyed household goods" (Dkt. #89 at p. 8). However, prior to her response to the present motion, Baker never objected to the Court's charge, nor so much as even expressed concern that fair market value was an incorrect measure for her personal property damages. *See G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 953 (5th Cir. 1981) (recognizing that a party generally must object to a jury instruction at trial to preserve its ability to challenge it at a later stage); *Henry's Marine Serv., Inc. v. Fireman's Fund Ins. Co.*, 193 F. App'x 267, 277 (5th Cir. 2006) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (recognizing that Rule 59 motions "cannot be used to raise arguments which could, and should, have been made before the judgment issued.")). In fact, neither party objected to the Court's use of "fair market value" as the proper measurement for Baker's personal property damages, nor did either party object to the definition and instructions on "fair market value" provided in the Final Instructions. Thus, the question presently before the Court is not whether fair market value is the best measure of damages to calculate the monetary equivalent of just compensation for Baker's personal property losses. Rather, the Court need only consider whether the evidence on the record reasonably supports the jury's finding. The Court finds it does.

In the Fifth Circuit, "the owner of property is qualified by his ownership alone to testify as to its value." *LaCombe v. A-T-O-, Inc.*, 679 F.2d 431, 433 (5th Cir. 1982). This rule applies equally to testimony about real and personal property. *See, e.g.*, *Meredith v. Hardy*, 554 F.2d 764, 765 (5th Cir. 1977) (vehicles and personal property); *Berkshire Mut. Ins. Co. v. Moffett*, 378 F.2d 1007, 1011 (5th Cir. 1967) (personal property); *Unites States v. 329.73 Acres of Land*, 666 F.2d 281, 284

15

(5th Cir. 1982) (land); *see also Horne v. Dep't of Agric.*, 576 U.S. 350, 359 (2015) (holding that "nothing in the history" of the Fifth Amendment's Takings Clause "suggests that personal property was any less protected against physical appropriation than real property.").

In this case, Baker, as the owner, testified about the destruction of the personal property in her home. Baker stated that when the destruction of her home happened, she was out of town. She learned that due to the tear gas the Department used, the home could not even be entered until the damage from the tear gas was remediated (Dkt. #87 at p. 70:13–21). The tear gas had "permeated the walls, the floors . . . there were canisters stuck in the walls; those sections had to be removed[, a]nd the insulation on the inside had to be taken out and replaced" (Dkt. #87 at p. 74:11–15). Baker lamented that the hazmat team had to throw out "everything in that house"—including all of her furniture and other personal belongings—because the tear gas "seep[ed] into everything" (Dkt. #87 at pp. 74:21–75:5). By the time Baker was permitted to enter her home, "all the stuff that was in it had been thrown out" (Dkt. #87 at p. 75:6–9). No post-event photographs of her damaged personal property were taken before the items were removed from her home, and Baker was not provided an itemized list of everything that the hazmat team disposed of (Dkt. #87 at pp. 103:15–20, 108:17–24). As a result, Baker's testimony about the furniture and possessions in the home was based on her recollection of the home before the damage occurred.

Baker then detailed the personal property that had been destroyed and showed the jury pre-destruction photographs of each item she discussed. She went through the home room-by-room, offering the jury relevant testimony from which they could award damages, candidly admitting the limits of her own knowledge. In some cases, she told the jury what she had initially paid for items, and how old the items were. For example, she testified that she lost two refrigerators that, when she bought them a few years prior, were worth between $2,500 and $2,700 each (Dkt. #87 at

p. 84:1–12). In her bedroom, she lost a bedroom set including a dresser, nightstands, and a bed frame worth around $6,000 when purchased, bedding worth around $500 when purchased, and a twelve-year-old mattress worth around $4,000 when purchased (Dkt. #87 at pp. 86:21–87:8, 88:19–89:2). She also lost three TVs, one worth $800 when purchased and the others around $400 (Dkt. #87 at p. 84:15–25). In her living room, she lost a table worth around $1,000 when purchased, an entertainment center worth around $3,600 when purchased, two side tables worth around $400 to $500 each when purchased, a love seat worth around $600 when purchased, and barstools worth around $300 each when purchased (Dkt. #87 at pp. 85:19–86:20). From the other bedrooms in the home, she lost furniture worth at least $3,300 total when purchased, including multiple queen mattresses and bedding sets (Dkt. #87 at pp. 87:9–88:14). She also lost two bikes worth around $800 and $600 when purchased, several hundred dollars' worth of clothes, and several hundred dollars' worth of various knickknacks and personal items (Dkt. #87 at pp. 91:7–92:3).

For other items, she testified about the current replacement market value. For example, from her kitchen, she testified that she lost coffee makers, waffle makers, pots, pans, dish sets, and many other utensils and kitchen appliances that, in the present day, would cost around $1,500 to $2,000 to replace (Dkt. #87 at pp. 89:3–90:13). She also lost two antique books that would sell today for around $500 each (Dkt. #87 at pp. 90:14–91:6). Thus, based on Baker's testimony, the personal property she lost was worth, at a minimum, over $30,000 total when purchased.

Finally, for many of the items she lost, she informed the jury as to the quality of the items, so that the jurors might assess which items were likely to retain value over time. For example, she described her living room table as being "all wood" and having "granite on the top as all the pieces did" (Dkt. #87 at p. 85:16–17). For her living room side table, she stated she "got it at Ashley Furniture" and that it was "all wood" designed to look like "tomorrow's antiques" (Dkt. #87 at

17

p. 86:9–12). And when speaking about the items she lost in her kitchen, she explained how four of her plates were 150-year-old "antique Bavarian plates that had belonged to [her] great aunt" that had a "beautiful pink and blue rim to them" (Dkt. #87 at pp. 89:19–90:3).

The City is correct that the general rule of just compensation measures the loss to the owner "as of the time of the taking." *Knick*, 139 S. Ct. at 2170 (citing *Jacobs v. United States*, 290 U.S. 13 (1933)). However, it is a well-established principle of law that a plaintiff need not prove her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. *See Lowe v. Southmark Corp.*, 998 F.2d 335, 337 (5th Cir. 1993). The Supreme Court has held that, "when, from the nature of the case, the amount of the damages cannot be estimated with certainty, or only a part of them can be so estimated, [the plaintiff can] plac[e] before the jury all the facts and circumstances of the case, having any tendency to show damages, or their probable amount; so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit." *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 564 (1931) (citation omitted). And particularly "in those cases where exact loss is unascertainable, a just and reasonable estimate of the damage based on relevant data may be made and the verdict rendered accordingly." *Daniels Towing Serv., Inc. v. Nat Harrison Assocs., Inc.*, 432 F.2d 103, 106 (5th Cir. 1970). Such is the case here.

Because of the circumstances surrounding the destruction of her home, Baker had no opportunity to create an inventory of or take photographs of the personal items in her home before they were destroyed and removed, or to determine the exact value of those items as of the date the destruction occurred. By the time she was allowed to enter her home, all of her items were gone. The only method left available to her to rely on to describe the value of her losses was her own recollection of her items before they were destroyed. While Baker is required to put on sufficient

18

evidence of her losses, to require Baker to prove the precise value of her property on the day it was unexpectedly and completely destroyed would impose a greater burden on Baker than the law requires. *Story Parchment Co.*, 282 U.S. at 564; *Daniels Towing*, 432 F.2d at 106; *see also Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 478 (1973) (citing *United States v. Commodities Trading Corp.*, 339 U.S. 121, 124; *United States v. Fuller*, 409 U.S. 488, 490 (1973) ("The constitutional requirement of just compensation derives as much content from the basic equitable principles of fairness, as it does from technical concepts of property law.")).

Based on this recollection, Baker provided testimony—to the best of her ability—about the value of her personal property at the time the taking occurred. True, Baker generally told the jury the value of the items when she first purchased them. But she made this fact clear to the jury, even on cross-examination (Dkt. #87 at p. 99:8–10). Moreover, she provided details about her items that would allow the jury to determine for themselves how the items would depreciate over time, such as how old the items were and the type of material the items were made of. And notably, as Baker points out in her response to the present motion, none of the property at issue in this case was exotic, or beyond the experience of the average juror. Rather, the destroyed property was mostly common household goods that the jurors could use their own common sense and experience to assign value to. *See Schulz v. Penn. R.R. Co.*, 350 U.S. 523, 527 (1956) ("Jurors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence consisting of direct statements by witnesses or proof of circumstances from which inferences can fairly be drawn.").

Additionally, the Court's Final Instructions made clear that the jury's duty was to determine Baker's losses as of the date of the taking. The jury was instructed that "'just compensation' is based on the fair market value of the property *at the time the taking occurred*"

19

(Dkt. #70 at pp. 11–12). Further, the jury was instructed that it could "consider any aspect of the property that could affect the amount a reasonable buyer would pay" (Dkt. #70 at p. 12). And finally, the Court provided an instruction on depreciation to assist the jury in calculating the fair market value of Baker's personal property. The Court instructed that "[i]n calculating the fair market value of Ms. Baker's personal property," the jury could "consider any reasonable depreciation that would impact the property's value at the time of the taking" (Dkt. #70 at p. 12). These instructions and the evidence Baker presented were sufficient to permit the jury to conclude, based on common sense and reasonable inferences, the value of Baker's personal property as of the date of the taking.

"Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999). The City has not met that burden here. Further, after a thorough review of the record, considering the overall setting of the trial, the character of the evidence, and the nature of legal principles involved, the Court finds that the jury was presented with sufficient information that would allow it to properly determine the value of Baker's personal property as of the date of the taking. Thus, the City is not entitled to a new trial on this ground.

## CONCLUSION

It is, therefore, **ORDERED**, that Defendant's Motion for New Trial (Dkt. #85) is **DENIED.**

**IT IS SO ORDERED.**

**SIGNED** this 26th day of August, 2022.

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE